No. 24-1712
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

Karen Collyer

*Plaintiff-Appellant*,

v.

Catalina Snacks Inc.

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Northern District of California
No. 3:23-cv-00296-AMO
Hon. Araceli Martínez-Olguín
_____

**EXCERPTS OF RECORD**
Volume 1 of 1
_____

Benjamin Gubernick
Waldo Gubernick
Law Advocates LLP
717 Texas St., Suite 1200
Houston, TX 77002
623-252-6961
ben@wglawllp.com

*Attorneys for Appellant*
Karen Collyer

# INDEX

**Page**

Judgment, Dkt No. 41 (filed 2/23/24) ..........................................................................3

Order of Dismissal, Dkt No. 30 (filed 2/23/24) ...........................................................4

Pl. Notice of Intent Not to Amend, Dkt. No. 38 (filed 2/22/24)...............................5

Order on Motion to Dismiss, Dkt. No. 37 (filed 1/18/24) ........................................7

Transcript of Hearing on Def. Motion to Dismiss (held 9/14/23 . ........................22

Pl. Oppositon to Motion to Dismiss, Dkt. No. 20 (filed 4/4/23). ..........................53

Def. Motion to Dismiss, Dkt. No. 16 (filed 3/21/23). .............................................82

Complaint, Dkt. No. 1 (filed1/20/23) ....................................................................110

Notice of Appeal ......................................................................................................129

Docket Sheet ............................................................................................................132

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN COLLYER, | Case No.23-cv-00296-AMO |
| Plaintiff, | |
| v. | **JUDGMENT** |
| CATALINA SNACKS INC., | |
| Defendant. | |

The issues having been duly heard and the Court having granted Defendant's motion to dismiss the Complaint with leave to amend and Plaintiff having elected not to amend her Complaint, the Court hereby ENTERS judgment in favor of Defendant and against Plaintiff. The Clerk of Court shall close the file in this matter.

**IT IS SO ORDERED.**

Dated: February 23, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

1

2

3

4                            UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    KAREN COLLYER,                              Case No.23-cv-00296-AMO

8              Plaintiff,

9         v.                                     **ORDER OF DISMISSAL WITH
                                                 PREJUDICE**
10   CATALINA SNACKS INC.,                       Dkt. No. 38

11             Defendant.

12

13        Before the Court is Plaintiff Karen Collyer's notice of intent not to amend and request for

14   dismissal.  The notice follows this Court's order granting Defendant's motions to dismiss

15   Collyer's Complaint.  ECF 37.  In the order granting Defendant's motion to dismiss, the Court

16   granted leave to amend certain claims.  *Id.*  In light of Plaintiff's notice and request, the Court

17   hereby DISMISSES the entirety of the Complaint with prejudice.  *See* Fed. R. Civ. P. 41.

18        **IT IS SO ORDERED.**

19   Dated: February 23, 2024

20                                               _____

21                                               **ARACELI MARTÍNEZ-OLGUÍN**
                                                 **United States District Judge**
22

23

24

25

26

27

28

United States District Court
Northern District of California

1  Benjamin Gubernick (SBN 321883)
**GUBERNICK LAW P.L.L.C.**
2  10720 W. Indian School Rd.,
Suite 19, PMB 12
3  Phoenix, AZ 85037
623-252-6961
4  ben@gubernicklaw.com

5  *Attorneys for Plaintiff*

6

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN COLLYER, an individual; | CASE NO.: 4:23-cv-00296-AMO |
| Plaintiff, | |
| v. | **PLAINTIFF'S NOTICE OF INTENT NOT TO AMEND COMPLAINT** |
| CATALINA SNACKS INC., a Delaware Corporation; | Date: June 29, 2023<br>Time: 2:00 p.m.<br>Place: Courtroom 2 |
| Defendant. | Hon. Araceli Martínez-Olguín |

Plaintiff, through undersigned counsel, provides that, based on the Court's ruling on Defendant's Rule 12(b)(6) motion, she will not be filing an amended complaint in this matter. Plaintiff respectfully requests that the Court enter a final judgment so that she may initiate an appeal.

Respectfully submitted,

Date: February 22, 2024

By: /s/ Benjamin Gubernick
Benjamin Gubernick (SBN 321883)
**GUBERNICK LAW P.L.L.C.**
10720 W. Indian School Rd.,
Suite 19, PMB 12
Phoenix, AZ 85037
623-252-6961
ben@gubernicklaw.com

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing was served to the following via the CM/ECF system on February 22, 2024:

AMIN TALATI WASSERMAN, LLP
William P. Cole
Matthew R. Orr
Richard L. Hyde
515 South Flower St., 18th Floor
Los Angeles, CA 90071

Attorneys for Defendant

By: /s/ Benjamin Gubernick
Benjamin Gubernick

United States District Court
Northern District of California

1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    KAREN COLLYER,                        Case No.  23-cv-00296-AMO

                    Plaintiff,
8
                                           **ORDER GRANTING IN PART AND
9        v.                                DENYING IN PART DEFENDANT'S
                                           MOTION TO DISMISS**
10   CATALINA SNACKS INC.,
                                           Re: Dkt. No. 16
                    Defendant.
11

12

13          Defendant Catalina Snacks, Inc.'s motion to dismiss was heard before this Court on

14   September 14, 2023.  Having read the papers filed by the parties and carefully considered their

15   arguments therein and those made at the hearing, as well as the relevant legal authority, the Court

16   hereby GRANTS in part and DENIES in part Defendant's motion, for the following reasons.

17                                **BACKGROUND[1]**

18          This is a putative consumer fraud class action.  Defendant Catalina Snacks, Inc.

19   ("Catalina") sells Catalina Crunch Keto Friendly Cereals in numerous varieties, including

20   Chocolate Banana, Honey Graham, Mint Chocolate, and Apple Cider Donut.  Compl. ¶ 2.

21   Plaintiff Karen Collyer purchased the Chocolate Banana and Honey Graham flavors of the

22   Catalina Crunch Keto Friendly Cereals from grocery stores in Monterey County in 2022.  Compl.

23   ¶ 49.  Collyer complains that the packaging of the four cereals deceive and mislead reasonable

24   consumers because the cereals do not contain a characterizing ingredient pictured and referred to

25   on the principal display panel.  Compl. ¶ 40.  Reasonable consumers are damaged by paying a

26

27   _____

28   [1] As it must when considering a motion to dismiss, the Court accepts as true the Complaint's (ECF 1) allegations of material fact.  *See Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 938 (9th Cir. 2023).

price premium for the cereal that lacks the healthful characterizing ingredients.  Compl. ¶¶ 38-41.

The front and back sides of the Chocolate Banana packaging are depicted below:

 

Compl. ¶¶ 31, 33.  Collyer complains that the product does not include real bananas; rather, the banana taste appears to come from "natural flavors."  *Id.*

The front and back sides of the Apple Cider Donut product are depicted below:



Compl. ¶ 34.  Collyer complains that the Apple Cider Donut variety contains no apple or apple cider; rather, the apple cider taste appears to come from "natural flavors."  *Id.*

United States District Court
Northern District of California

The front and back sides of the Mint Chocolate product are depicted below:



Compl. ¶ 35.  Collyer complains that the Mint Chocolate variety contains no mint; rather, the mint taste appears to come from "natural flavors."  *Id.*

The front and back sides of the Honey Graham product are depicted below:



Compl. ¶ 36.  Collyer complains that the Honey Graham variety contains no honey; rather, the honey taste appears to come from "natural flavors."  *Id.*

United States District Court
Northern District of California

On behalf of herself and a proposed class of California consumers, Collyer asserts the following claims:

1.   violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.;

2.   violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.;

3.   violation of California's False Advertising Law ("FAL"), Cal Bus. & Prof. Code §§ 17500, et seq.; and

4.   breach of implied warranty.

She simultaneously seeks damages and equitable restitution. Compl. ¶¶ 71, 76.

## DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(1), Catalina challenges Collyer's standing to bring claims related to products she never purchased: the Apple Cider Donut or Mint Chocolate flavors of the Keto Friendly Cereals. Additionally, Catalina moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Further, Catalina additionally seeks dismissal of Plaintiff's claim for punitive damages, which Collyer does not oppose. *See* ECF 20 at 8 n.1. Because standing is a threshold issue, the Court addresses it first. *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

## A.     Rule 12(b)(1) – Article III Standing

Collyer seeks to represent a class of consumers who purchased any of the four flavors of the Catalina Crunch cereal, but Collyer only purchased two of the four flavors: Chocolate Banana and Honey Graham. Compl. ¶ 49. Catalina argues that Collyer lacks standing to bring claims as to the products she did not purchase, the Apple Cider Donut and Mint Chocolate cereals.

An assertion that the requirements of standing are not satisfied is properly raised in a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(1) because standing relates to a federal court's subject matter jurisdiction. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Cetacean Community v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court

4

therefore lacks subject matter jurisdiction over the suit.").  To have standing under Article III of the Constitution, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Article III "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).  In the Ninth Circuit, "[t]here is no controlling authority on whether [p]laintiffs have standing for products they did not purchase." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012).  Several courts in this district have held that a named plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase "'so long as the products and alleged misrepresentations are *substantially similar*.'" *Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 WL 4951435, at *2 (N.D. Cal. Oct. 25, 2021) (emphasis added) (quoting *Miller*, 912 F. Supp. 2d at 869). "Courts have found substantial similarity for purposes of standing where (1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer are the same; and (3) both the products and the legal claims and injury are similar." *Yamasaki*, 2021 WL 4951435, at *2 (citation omitted).

Here, the products pass the three-part test for "substantially similar."  First, the products are physically similar, with the pieces of cereal depicted on the front of the packages being small, flat, slightly concave squares, and differentiated merely by their color.  Compl. ¶¶ 31, 33-36.  The Court agrees with Collyer that the products are nearly identical in their ingredient lists. *Id.*  And importantly, none of these ingredient lists include the showcased flavors on the front of the packages, with such flavors apparently included among the non-specific "natural flavors" in the ingredient lists. *Id.*  This satisfies the second prong because the distinction between the showcased flavors and their absence in the ingredient lists appears to be the alleged defect that gives rise to Collyer's fraud-based claims.  Finally, "both the products and the legal claims and injury are similar" where Collyer alleges that the same absence of ingredients presented on the front of the packaging gives rise to the same consumer fraud claims. *See Yamasaki*, 2021 WL 4951435, at *2 (citation omitted).  Therefore, the Court concludes that Collyer has standing to assert claims

United States District Court
Northern District of California

5

1    related to the two cereal varieties she did not purchase because they are substantially similar to the

2    ones she did purchase.

3    **B.      Rule 12(b)(6) – Failure to State a Claim**

4           Catalina also moves to dismiss the Complaint for failure to state a claim.  Catalina argues

5    that: (1) Collyer has failed to state a claim under the "reasonable consumer" standard; (2) the

6    California Unfair Competition Law, particularly the "unlawful" prong, is preempted; (3) Collyer

7    has not stated a claim for breach of the implied warranty of merchantability; and (4) Collyer may

8    not pursue equitable relief.  After setting forth the relevant legal standard, the Court addresses in

9    turn the parties' arguments.

10          **1.      Legal Standard**

11          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

12   sufficiency of the claims alleged in the complaint.  *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th

13   Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a

14   "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ.

15   P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a

16   cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.

17   *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

18          While the court is to accept as true all the factual allegations in the complaint, legally

19   conclusory statements, unsupported by actual factual allegations, need not be accepted.  *Ashcroft

20   v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The complaint must proffer sufficient facts to state a claim

21   for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59

22   (2007) (citations and quotations omitted).  "A claim has facial plausibility when the plaintiff

23   pleads factual content that allows the court to draw the reasonable inference that the defendant is

24   liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "[W]here the well-

25   pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

26   complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Id.* at 679.

27   If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint

28   cannot be saved by any amendment.  *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005).

United States District Court
Northern District of California

Because Plaintiff's claims sound in fraud, her complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake.  To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted).

### 2.   Sufficiency of Allegations Under the UCL, FAL, and CLRA ("Reasonable Consumer" Standard)

Plaintiff's first three causes of action are brought under California statutes: the Unfair Competition Law ("UCL"), the False Advertising Law ("FAL"), and the Consumer Legal Remedies Act ("CLRA").  Cal. Bus. & Prof. Code § 17200 (UCL), Cal. Bus. & Prof. Code § 17500 (FAL); Cal. Civ. Code § 1770 (CRLA).  Catalina argues that Collyer fails to state a claim under the CLRA, UCL, and FAL because she fails to allege facts establishing that the challenged representations on the product label are likely to deceive a reasonable consumer.

"Under the consumer protection laws of California[,] . . . claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation."  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021); *see Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003).  "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived."  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  *Id.* at 938 (internal quotation marks omitted) (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002)).  The reasonable consumer test requires more than a mere possibility that defendant's product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Lavie v. Procter & Gamble Co.*, 105

United States District Court
Northern District of California

1    Cal. App. 4th 496, 508 (2003). Rather, the test requires a probability "that a significant portion of

2    the general consuming public or of targeted consumers, acting reasonably in the circumstances,

3    could be misled." *Id.*; *see also Moore*, 4 F.4th at 881.

4         Generally, "whether a reasonable consumer would be deceived . . . [is] a question of fact

5    not amenable to determination on a motion to dismiss." *Ham v. Hain Celestial Grp., Inc.*, 70 F.

6    Supp. 3d 1188, 1193 (N.D. Cal. 2014); *see Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th

7    Cir. 2015). "However, in rare situations a court may determine, as a matter of law, that the alleged

8    violations of the UCL, FAL, and CLRA are simply not plausible." *Ham*, 70 F. Supp. 3d at 1193.

9         Collyer relies heavily on the Ninth Circuit's opinion in *Williams v. Gerber Products Co.* to

10   argue that the Complaint satisfies the reasonable consumer test. In *Williams*, the court determined

11   that a reasonable consumer could be deceived by images on a fruit snack label depicting a number

12   of different fruits, "potentially suggesting (falsely) that those fruits or their juices are contained in

13   the product." *Williams*, 552 F.3d at 939. The Ninth Circuit rejected the argument that a

14   misrepresentation on the front of the package could be cured by a disclaimer on the back of the

15   package, instead concluding "reasonable consumers expect that the ingredient list contains more

16   detailed information about the product that confirms other representations on the package." *Id.* at

17   939-40.

18        Collyer asserts that the characterizing flavors of the four cereals and their primary display

19   panels mislead consumers who would otherwise not pay a price premium for products lacking

20   bananas, mint, honey, and apples. *See* Compl. ¶¶ 31-41. However, Collyer acknowledges in her

21   Opposition brief that she does not claim to have believed the cereals contained whole banana,

22   apple, mint, or honey. ECF 20 at 18 n.3. This distinguishes the cold cereal at issue here from the

23   fruit snacks in *Williams* because Collyer acknowledges that a reasonable consumer would not

24   interpret the packaging to suggest that the products included, for instance, dried banana or mint.

25   The product labels here are further distinguishable given the full context of the labels – though

26   they include images of the characterizing flavors, immediately adjacent to those images are the

27   words "serving suggestion." Compl. ¶¶ 31, 33, 34, 35. Reasonable consumers are aware that

28   cereals depict images of fresh fruit as a serving suggestion, and reasonable consumers do not

United States District Court
Northern District of California

1    invariably expect to receive such fruit in their cereal – particularly when the contents of that cereal

2    are prominently and adequately described in the ingredient list.

3           Though a reasonable consumer is not expected to look to the back of a product label to

4    dispel a misleading claim on the front of a product label, *see Williams*, 552 F.3d at 939, Collyer

5    fails to show any deceiving statements.  Collyer does not argue that the product labels

6    misrepresent the ingredients, sugar, or carbohydrates.  The Catalina Crunch product labels contain

7    no assertion that the products are "made with" or "made from" any of the characterizing flavors.

8    Nothing on the product labels state or imply that the cereal flavors are derived entirely or

9    predominantly from banana, apple, mint, or honey.  Thus, this is not a case in which Defendant

10   misled consumers and then relied on a small-print "ingredient list" on the alternate side of the

11   packaging in an attempt "to correct those misinterpretations and provide a shield for liability for

12   the deception."  *Cf. Williams*, 552 F.2d at 939.  Where "there is no deceptive act to be dispelled

13   and no other statement or other depiction that could mislead the reasonable consumer, then it is

14   not plausible that a significant portion of the general consuming public could be deceived."  *Ebner*

15   *v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (citing *Williams*, 552 F.3d at 936) (internal

16   quotation mark omitted); *see also Truxel v. General Mills Sales, Inc.*, No. C 16-04957 JSW, 2019

17   WL 3940956, at *1, 4 (N.D. Cal. Aug. 13, 2019) (finding no deception where "the actual

18   ingredients were fully disclosed and it was up to the Plaintiffs, as reasonable consumers, to come

19   to their own conclusions about whether or not the sugar content was healthy for them.").  A

20   reasonable consumer would not be deceived by the representations on these cereal product labels.

21          Collyer's interpretation of the product labels as misleading for omitting the characterizing

22   flavors of banana, apple, mint, or honey is further rendered implausible by additional statements

23   on the packaging describing the cereal as keto-friendly.  The context in which Catalina markets its

24   products is relevant.  *See Moore*, 4 F.4th at 884 (considering contextual inferences from the

25   product (Manuka Honey) in concluding that plaintiffs' interpretation of a label was unreasonable

26   or fanciful).  Here, the front labels on the Catalina Crunch products state these are *keto*-friendly

27   cereals containing 0g sugar, which reasonable consumers shopping for the cereals would

28   understand to specifically exclude banana, apple, and honey, all of which contain sugar.  Like the

9

1    consumers paying a price premium for Manuka honey in *Moore*, consumers purchasing a "niche,

2    specialty product" like keto-friendly cereal at $7 to $10 per nine-ounce bag "are undoubtedly more

3    likely to exhibit a higher standard of care" in their review of the product label and the ingredient

4    lists. *Moore*, 4 F.4th at 884; Compl. ¶ 27. Collyer fails to plausibly allege that the product labels

5    at issue are likely to deceive reasonable consumers.

6         Plaintiff's California statutory claims all fail on this basis and must be DISMISSED.

7    However, in light of the Ninth Circuit's authority discouraging dismissal of consumer deception

8    claims at the pleadings stage, the Court finds it appropriate to grant leave to amend these claims.

9    *See Williams*, 552 F.3d at 939 (emphasizing that it is a "rare situation in which granting a motion

10   to dismiss is appropriate" for these kinds of claims).

11        **3.**      **Preemption of UCL "Unlawful" Claim**

12        Collyer brings her cause of action for violation of California's UCL under all three prongs,

13   alleging that Catalina's product labeling practices are simultaneously (1) unlawful, (2) fraudulent,

14   and (3) unfair. Compl. ¶¶ 66-69. Catalina contests as preempted Collyer's argument that the

15   product labels are unlawful because they violate the Food, Drug, and Cosmetic Act ("FDCA") as

16   incorporated in California's Sherman Law. Collyer counters that her UCL "unlawful" claim is

17   premised on violation of the Sherman Law, which is not preempted because it expressly

18   incorporates and effectively parallels the labeling requirements of the FDCA.

19        "Express preemption exists when a statute explicitly addresses preemption." *Reid v.*

20   *Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015). Conflict preemption occurs when it

21   would be "impossible for a private party to comply with both state and federal requirements,"

22   *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990), or where the state law "stands as an obstacle to

23   the accomplishment and execution of the full purposes and objectives of Congress," *Hines v.*

24   *Davidowitz*, 312 U.S. 52, 67 (1941).

25        Defendants in food labeling cases frequently assert that claims brought pursuant to the

26   UCL, CLRA, and FAL are preempted by the FDCA – even where state law imposes identical

27   requirements as the FDCA. Catalina follows that pattern here and argues that Plaintiff's UCL

28   "unlawful" prong claim is preempted by the FDCA as amended by the Nutrition Labeling and

*United States District Court*
*Northern District of California*

1   Education Act ("NLEA").  "The [FDCA] . . . forbids the misbranding of food, including by means

2   of false or misleading labeling."  *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 106

3   (2014) (citing §§ 301, 403, 52 Stat. 1042, 1047, as amended, 21 U.S.C. §§ 331, 343).  The NLEA

4   establishes national uniformity in nutrition labeling, and it expressly preempts state law that is

5   inconsistent with its requirements.  21 U.S.C. § 343-1(a).  In addition, there is no private right of

6   action under the FDCA.  21 U.S.C. § 337(a).

7          California expressly incorporates the provisions of the FDCA in the state's Sherman Law.

8   *See* Cal. Health & Safety Code § 110100.  State laws are not preempted if they "are equal to, or

9   substantially identical to, requirements imposed by or under" federal law.  21 C.F.R.

10  § 808.1(d)(2).  Accordingly, the NLEA "has been repeatedly interpreted not to preempt

11  requirements imposed by state law that effectively parallel or mirror the relevant sections of the

12  NLEA."  *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2013 WL 675929, at *3 (N.D.

13  Cal. Feb. 25, 2013) (collecting cases); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 573 (N.D.

14  Cal. 2013) ("Courts in this district have repeatedly refused to find preemption 'where a

15  requirement imposed by state law effectively parallels or mirrors the relevant sections of the

16  FDCA.'") (citations and internal punctuation omitted).  A district court split has developed,

17  however, over whether plaintiffs can state a UCL claim by relying on an averred violation of

18  California's Sherman Law.  *See Effinger v. Ancient Organics LLC*, No. 22-CV-03596-RS, 2023

19  WL 2214168, at *3-5 (N.D. Cal. Feb. 24, 2023) (discussing split).

20          Catalina argues that Collyer's UCL unlawful claim is impliedly preempted under *Buckman*

21  *Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001), as explained in *Nexus*

22  *Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F.4th 1040, 1050 (9th

23  Cir. 2022), and *Chong v. Kind LLC*, 585 F. Supp. 3d 1215 (N.D. Cal. 2022).  In *Nexus*, the

24  plaintiff brought a state law claim that the defendant, a competitor, violated the FDCA by

25  producing and marketing compounded pharmaceuticals that were "essentially a copy" of an FDA-

26  approved pharmaceutical.  *Nexus*, 48 F.4th at 1044.  The Ninth Circuit, relying in part on

27  *Buckman*, concluded that state law false advertising claims should be precluded when they "would

28  require litigation of the alleged underlying FDCA violation in a circumstance where the FDA has

United States District Court
Northern District of California

11

1    not itself concluded that there was a violation." *Id.* at 1048 (quoting *PhotoMedex, Inc. v. Irwin*,

2    601 F.3d 919, 924 (9th Cir. 2010)).

3            In *Chong v. KIND, LLC*, 585 F. Supp. 3d 1215 (N.D. Cal. 2022), the court determined that

4    *Buckman* preemption applied to bar a UCL claim brought (for a violation of the Sherman Law) for

5    similar mislabeling allegations.  As explained, the FDCA "does preempt state-law claims that

6    ultimately are dependent on the existence of violations of federal law."  585 F. Supp. 3d at 1219

7    (citation omitted).  It additionally concluded that the Sherman Law's adoption of the FDCA left it

8    preempted because the FDCA impliedly preempts state law claims that originate from federal law.

9    *Id.* at 1219-20.

10           Here, Collyer disclaims violation of the FDCA, advancing her UCL unlawful claim instead

11   on violation of the Sherman Law, which incorporates the FDCA, on the basis that Defendant's

12   products fail to disclose that they are flavored.  Collyer alleges that Catalina's product

13   representations are misleading under California law, not that the product representations are

14   misleading under FDA regulations.  But while the FDCA does not preempt preexisting state

15   common-law duties that "parallel federal requirements," it does preempt state-law claims that

16   ultimately are dependent on the existence of violations of federal law.  *Stengel v. Medtronic, Inc.*,

17   704 F.3d 1224, 1228, 1235 (9th Cir. 2013).  That is the case here.  Collyer's claim that the cereal

18   labels at issue are unlawful is based on violation of the Sherman Law, which expressly

19   incorporates the FDCA and regulations as state law.  *See* Cal. Health & Safety Code § 110100(a).

20   Accordingly, to the extent Collyer's claims rely on violation of the FDCA, they are preempted.

21   *See Stengel*, 704 F.3d at 1230 (finding that FDCA impliedly preempts state law claim that

22   "originates from, is governed by, and terminates according to federal law" (quotation marks

23   omitted)).  The unlawful prong portion of Collyer's UCL claim, most notably included in

24   paragraph 67 of the Complaint, is therefore DISMISSED with prejudice.

25           **4.      Breach of Implied Warranty of Merchantability**

26           Collyer alleges that Defendant's products do not conform to the promises or affirmation of

27   fact advertised on the label.  Defendant's product label representations created implied warranties,

28   Collyer contends, that the product contained premium ingredients such as banana, apple or apple

United States District Court
Northern District of California

12

1    cider, mint, or honey.  Compl. ¶ 88.

2         Catalina argues that this claim fails because there is no privity between it and Collyer.

3    Collyer counters that privity between the parties is not required because California law exempts

4    foodstuffs from the privity requirement.  *See Mexicali Rose v. Super. Ct.*, 1 Cal. 4th 617, 621

5    (1992) ("foodstuffs do not fall within the general rule of privity between the manufacturer and the

6    consumer, even though the purchase is made through a retailer") (citation omitted).  Catalina

7    responds that privity is required, as the "foodstuffs" exception applies only to claims for breach of

8    the implied warranty of fitness for human consumption, which Collyer does not assert here.

9         Under California law, the implied warranty can be violated if (1) the product is not "fit for

10   the ordinary purposes for which such good [is] used," or (2) does not "[c]onform to the promises

11   or affirmations of fact made on the container or label if any."  Cal. Com. Code § 2314(2); *Hauter*

12   *v. Zogarts*, 14 Cal. 3d 104, 118 (1975).  Further, a plaintiff "must stand in vertical contractual

13   privity with the defendant."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir.

14   2008).  However, for implied warranty claims, an exception to the privity requirement has been

15   made "in cases involving foodstuffs, where it is held that an implied warranty of fitness for human

16   consumptions runs from the manufacturer to the ultimate consumer."  *Burr v. Sherwin Williams*

17   *Co.*, 42 Cal. 2d 682, 695 (1954).

18        Here, Catalina Crunch cereals are intended for human consumption.  Collyer does not

19   claim that the cereals were not fit for human consumption, only that the cereals did not include all

20   the ingredients she expected.  This does not implicate the foodstuffs exemption to the requirement

21   of privity between purchaser and producer.  Therefore, the claim for breach of the implied

22   warranty of merchantability cannot stand.  Amendment cannot cure this defect, and the cause of

23   action is DISMISSED with prejudice.

24        **5.    Equitable Relief**

25        Citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), Catalina argues

26   that Collyer's claims for equitable relief must be dismissed pursuant to federal common law

27   because equitable claims cannot stand where a plaintiff has an adequate remedy at law.  In *Sonner*,

28   the panel considered whether the district court properly dismissed a plaintiff's equitable claim for

1    restitution following the voluntarily dismissal of her sole legal claim on the eve of trial. *Id.* at 837.

2    The Ninth Circuit clarified that a plaintiff "must establish that she lacks an adequate remedy at law

3    before securing equitable restitution for past harm under the UCL and CLRA." 971 F.3d at 844.

4    The court ultimately held that the plaintiff failed to show that she lacked an adequate legal remedy

5    because, in large part, she conceded that she sought "the same sum in equitable restitution . . . as

6    she requested in damages to compensate her for the same past harm." *Id.*

7          This case, however, is at the pleading stage, and the Court is persuaded by decisions in this

8    district which allow the pursuit of alternative remedies at the pleadings stage. *See, e.g.*, *Harris v.*

9    *McDonald's Corp.*, No. 20-cv-06533-RS, 2021 WL 2172833, at *3 (N.D. Cal. Mar. 24, 2021)

10   ("[Defendant's] argument that *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)

11   requires rejection of the equitable claims at the pleading stage is not persuasive."); *Snarr v. Cento*

12   *Fine Foods Inc.*, No. 19-cv-02627-HSG, 2019 WL 7050149, at *5 n.32 (N.D. Cal. Dec. 23, 2019)

13   ("The Court further rejects Defendant's argument that Plaintiffs may not seek equitable remedies

14   given that they have alleged claims for damages under the CLRA and for breach of warranty.");

15   *Madani v. Volkswagon Group of America, Inc.*, No. 17-cv-07287-HSG, 2019 WL 3753433, at *9

16   (N.D. Cal. Aug. 8, 2019) ("[T]he Court is persuaded that, at the pleading stage, theories of

17   equitable remedies are not barred by a plaintiff adequately pleading theories supporting monetary

18   relief."); *Luong v. Subaru of America, Inc.*, No. 17-cv-03160-YGR, 2018 WL 2047646, at *7

19   (N.D. Cal. May 2, 2018) ("The availability of monetary damages does not preclude a claim for

20   equitable relief under the UCL and CLRA based upon the same conduct."); *Aberin v. Am. Honda*

21   *Motor Co., Inc.*, No. 16-cv-04384-JST, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018) ("This

22   Court joins the many other courts, however, that have reached the opposite conclusion, finding no

23   bar to the pursuit of alternative remedies at the pleadings stage."); *Adkins v. Comcast Corp.*, No.

24   16-cv-05969-VC, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017) ("[T]his Court is aware of no

25   basis in California or federal law for prohibiting the plaintiffs from pursuing their equitable claims

26   in the alternative to legal remedies at the pleadings stage."). Accordingly, Defendant's Motion to

27   Dismiss is DENIED on this basis.

28

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Catalina's

Motion to Dismiss.  Collyer's claims under the reasonable consumer standard of the UCL, FAL,

and CLRA are all DISMISSED with leave to amend except for the preempted portion of the UCL

unlawful prong claim that relies on the Sherman Law, which is DISMISSED with prejudice.

Collyer's cause of action for breach of implied warranty of merchantability is DISMISSED with

prejudice.  Collyer's amended pleading, if any, shall be filed no later than February 22, 2024.  No

additional parties or claims may be added without leave of court or stipulation of Defendant.

    **IT IS SO ORDERED.**

Dated: January 18, 2024

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

Pages 1 - 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Araceli Martínez-Olguín, Judge

| | |
|---|---|
| KAREN COLLYER, an individual, ) | |
| ) | |
|         Plaintiff, ) | |
| ) | |
|   VS. ) | **NO. 23-cv-00296 AMO** |
| ) | |
| CATALINA SNACKS INC., a ) | |
| Delaware Corporation, ) | |
| ) | |
|         Defendant. ) | |
| _____) | |

San Francisco, California
Thursday, September 14, 2023


**TRANSCRIPT OF PROCEEDINGS**


**APPEARANCES**:

For Plaintiff:

        GUBERNICK LAW P.L.L.C.
        10720 West Indian School Road
        Suite 19, PMB 12
        Phoenix, Arizona 85037
  BY: **BENJAMIN GUBERNICK, ATTORNEY AT LAW**


For Defendant:

        AMIN TALATI WASSERMAN, LLP
        515 South Flower Street, 18th Floor
        Los Angeles, California 90071
  BY: **MATTHEW R. ORR, ATTORNEY AT LAW**




REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
        CSR No. 7445, Official United States Reporter

```
1   Thursday - September 14, 2023                    2:08 p.m.

2                     P R O C E E D I N G S

3                          ---o0o---

4        THE CLERK:  Calling Civil Matter 23-cv-296, Collyer

5   v. Catalina Snacks Incorporated.

6        Counsel, please come up to the podiums and state your

7   appearances for the record, starting with the plaintiff.

8        MR. GUBERNICK:  Good afternoon, Your Honor.  Benjamin

9   Gubernick appearing for plaintiff.

10       THE COURT:  Would you pull the mic up?  You're much

11  taller than that microphone is.  Thank you.

12       MR. ORR:  Good afternoon, Your Honor.  Matthew Orr on

13  behalf of defendant.

14       THE COURT:  Thank you, Counsel.

15       What I'd like to do today -- you all know we're here on

16  defendant's motion to dismiss.  What I'd like to do is give

17  Mr. Orr an opportunity to kick us off.

18       I have questions for both of you.  I might actually --

19  you know what?  Let me start with the one question I have for

20  both of you, and then if you could both address it.  And then

21  if you'd like, Mr. Orr, to present a little further.  I will

22  have some questions for each of you.

23       But let me start with just one, what feels like,

24  foundational question here.  I'd like to hear each of you speak

25  to whether the inclusion of "Keto Friendly" on the label
```

1  matters to the reasonable consumer analysis.  And what I'm

2  asking is:  Would a reasonable consumer understand that sugars

3  like those in apples, bananas, and honey, that those would

4  render the cereal keto unfriendly?

5          **MR. ORR:**  Great.  I'll kick it off.

6      Your Honor, welcome to the Bench.  It's great to have the

7  opportunity to argue.  It's been a while.  I hope I don't pop

8  an Achilles on the first argument that I make, but appreciate

9  the opportunity.

10     In answer to your question, I think that that's a really

11 pertinent question, and it really goes to the heart of the

12 reasonable consumer standard.

13     And we use the term "reasonable consumer standard" as a

14 proxy, and really what the reasonable consumer standard is --

15 and I'll read it -- it's whether it's probable that a

16 significant portion of the general consuming public or of

17 targeted consumers -- and that's key -- acting reasonably could

18 be misled.

19     And so as we look at the reasonable consumer standard --

20 and that's really the key issue in this case at this stage --

21 it's whether that reasonable consumer -- it's probable that a

22 significant portion of targeted consumers would be misled by

23 these label claims.

24     And certainly, the targeted audience here, as alleged in

25 the complaint, are consumers of keto friendly cereals.

1    And it's certainly within this Court's purview to

2  understand and to apply your own knowledge and common knowledge

3  about the keto diet and the ketogenic diet.  You know, we cited

4  the *McGinity* case in our supplemental authority, and *McGinity*

5  goes into detail on another case, which is the

6  *Moore vs. Trader Joe's* case.  And I think that case is somewhat

7  instructive in connection with this specific issue.

8    And in the *Moore vs. Trader Joe's* case, it involved the

9  manuka honey.  And the Court in that case -- and, again, here,

10  the label claim and the zero-gram sugar representation is on

11  the front of the label.  So it doesn't really get into the

12  *McGinity* back of the label or the rest of the label, but it is

13  instructive in that in the *Moore vs. Trader Joe's* case,

14  the court took into account quite a few things about the

15  reasonable consumer.

16    And that case, if you recall, was about a really high-end

17  honey.  It was manuka honey.  It's not honey that you use on a

18  peanut butter and jelly -- or peanut butter and honey sandwich.

19  It's some sort of an antimicrobial that can be incredibly

20  expensive, hundreds of dollars per ounce, something like that.

21    And the court saw that the label claim there was

22  "100 Percent New Zealand Manuka Honey."  And the court said:

23  Well, what is the targeted group of consumers here?  These are

24  not consumers who are buying honey for a sandwich.  These are

25  consumers who are familiar with the manuka honey, and so they

1    understand certain aspects of that product.

2        And they noted that consumers would understand the pricing

3    of manuka honey, that the price of the manuka honey at issue in

4    that case was really low.

5        And so the *Trader Joe's* court, Ninth Circuit, said:  Well,

6    you know, consumers will understand that something that's this

7    cheap is not going to be 100 percent pure manuka because that's

8    something that's sold at Harrods in London for $200 for a

9    container.

10       They made certain other recognitions as to the consumers

11   of manuka honey.  They obviously said:  Hey, reasonable

12   consumers, they understand that honeybees are free agents; that

13   they're not strapped to a manuka flower; that they're able to

14   go from flower to flower; and that you can't have a 100 percent

15   manuka honey without keeping honeybees in captivity, or

16   something along those lines.

17       And I think that's similar here, which is, can you have a

18   zero-gram sugar cereal and have it include honey?  Can you have

19   it include donuts?  Can you have it include, you know, some of

20   these other ingredients that clearly would cause the product to

21   have more than 1 gram of sugar?

22       And so I think that you can and should take that into

23   account.  I think that even if you don't take that into

24   account, I don't think it's necessary for you to reach a

25   conclusion that a reasonable consumer -- forget about the keto

6

1  aspect.  I think it's common knowledge, and consumers can

2  understand, that a zero-gram sugar claim is not going to

3  include honey.

4       **THE COURT:**  Thank you for that, Mr. Orr.

5       Mr. Gubernick, could I ask you to address the same

6  question?

7       **MR. GUBERNICK:**  Yes, Judge.  So a couple of things on

8  this.

9       **THE COURT:**  Get a little closer to the mic, please.

10 Thank you so much.

11      **MR. GUBERNICK:**  Is that good, Judge?

12      Okay.  So a couple of things on this point -- on this

13 issue, Your Honor.

14      The first is that I do think the term "keto friendly" is

15 relevant for the reasonable -- to the reasonable consumer

16 analysis because it reinforces this idea that this is a healthy

17 product, that this is -- this isn't like Cinnamon Toast Crunch

18 or something.  This is a product that is healthier, has more

19 nutritional value than competing products, and that's what

20 you're paying a premium for.  And that -- and consistent with

21 that would be the idea that it actually has these premium

22 healthy ingredients in the product as opposed to a

23 laboratory-concocted, simulated thing that tastes like them but

24 has zero nutritional value.

25      At bottom, though, Judge, the second thing here, this is

1    really no different than the zero-sugar argument that the

2    defense makes in their motion.  The idea that a consumer will

3    be presented with a false statement, let's say Apple Cider --

4    Apple Cider Cinnamon flavor -- or not -- or, I'm sorry.  Let's

5    say Chocolate Banana Crunch, the variety.  Let's say a consumer

6    will be presented with that, and that statement is not true.

7    That is a false statement.  Chocolate Banana Crunch means

8    something different than Chocolate Banana-Flavored Crunch.

9    That's just basic semantics.

10        But the argument is that people will be presented with

11   that and then see, elsewhere on the packaging, it says

12   zero sugar and then make an inferential leap that this first

13   statement wasn't true.  Right?  That's the core of the

14   argument, that it's okay to have a false statement, provided

15   that there's something else that a -- not even a contradictory

16   statement, but something else that -- a trail of bread crumbs

17   that a consumer may be able to follow to determine that they

18   are being misled.  Right?  And that argument has been -- that

19   exact argument has been rejected by many courts.

20        And I think I actually, in my brief, Your Honor, cite a

21   case that deals exactly with this zero-sugar issue; and this

22   was the defendant's argument there:  Well, everyone's going to

23   know that if it has zero sugar, it can't have these ingredients

24   in it.

25        But the court's like, well, that's not at all obvious.

1  Right?  It's not clear -- it wouldn't be obvious to any

2  consumer that you couldn't have some version or perhaps --

3  like, of these premium ingredients, perhaps with the sugar

4  removed, for instance.  I don't know if that's possible, but

5  that's the point.

6       A reasonable consumer could very well arrive at this

7  conclusion that maybe it's still in there.  After all, why are

8  they telling me this ingredient is in there if it's not.

9       The point that -- I believe the case, Your Honor, was

10 *Fitzhenry-Russell v. Coca-Cola*.  The point that the Court made

11 there is that that's a fact question.  That ultimately is

12 something you put to a jury.  Right?

13      If you were presented with all of these different items on

14 the principal display panel, what inferences is a reasonable

15 consumer going to draw from that, if any?  What is a reasonable

16 consumer going to believe?

17      What the defense is saying is:  Well, we should just usurp

18 that role and just decide at the pleading stage what a

19 reasonable consumer would take from all this.

20      And that's -- as in *Fitzhenry v.* -- as in

21 *Fitzhenry-Russell v. Coca-Cola*, Your Honor, that's not the

22 correct approach here.  This is, again, an argument for the

23 defense to make to a jury way down the line.

24      So, and I guess I would also just say, Your Honor, on the

25 cases that the defense mentioned here of *McGinity* and

1    *Trader Joe's*, the problem with both of these cases for the

2    defendant's argument is that these are based on the premise

3    that the consumer has been presented with something ambiguous.

4    That's the difference between *Williams v. Gerber* and *McGinity*.

5    *Williams v. Gerber*, there's ambiguity here.  Right?  *McGinity*,

6    there's ambiguity.  What does this mean?

7        And the same thing is true in *Trader Joe's*.  The Court

8    says that it's not at all clear what this "100 Percent Manuka

9    Honey" means.  Does this mean this is geographically where it's

10   from?  Does it mean they're all from these flight -- it doesn't

11   add up.

12       And so that's the point.  When you have an ambiguity

13   that's presented to the consumer, at that point it makes sense

14   to look beyond that to say:  Well, okay, what is a reasonable

15   consumer going to do to cure that ambiguity to figure out what

16   this product actually contains?

17       Under *Williams v. Gerber*, which I would contend is really

18   just on point here and controlling, we don't get to that.

19       The defense decided to call this product -- these products

20   something that they are not.  If they'd had the word

21   "flavored," it would have been a true statement.  There

22   wouldn't be an issue.  They didn't leave it ambiguous or open

23   to interpretation.

24       If someone has cherry cola versus cherry-flavored cola,

25   those are different things.  One has -- one, people hearing

1   that would think it has cherry in it; the other would hear it

2   and think, well, it has -- it just tastes like cherry.  Right?

3       That's really the problem here.  The defendant didn't use

4   the word "flavored."  Instead, they essentially just called it

5   cherry cola without -- without using the word "flavored."  And

6   then they're saying:  Well, maybe there's some other stuff on

7   the front of the -- on the principal display panel that a

8   consumer could -- again, the trail of bread crumbs that a

9   consumer could use to figure out they're being misled.

10      And under *Williams v. Gerber*, that's not a reasonable

11  expectation.  That's not something consumers are supposed to

12  do.  That's why *Williams v. Gerber* rejects the idea that you

13  should have to -- that consumers should be expected to turn the

14  product over, scrutinize the ingredients list to make sure that

15  everything on the front is actually there.  That is the

16  underlying holding in *Williams v. Gerber*, and that applies here

17  as well.

18      **THE COURT:**  Mr. Orr, let me ask you another -- well,

19  do you want to address -- I'll give you a few minutes to

20  address anything Mr. Gubernick may have said.  I have other

21  questions for you all on different matters.

22      **MR. ORR:**  Sure.  Yeah.  I mean, I guess, honey without

23  sugar?  That's a natural flavor.  I'm not sure -- you know, if

24  you remove sugar from honey, I'm not sure what you have left,

25  and I think that's probably the same case with respect to

1    Apple Cider and some of the other ingredients.  A donut, for

2    example.  I mean, donuts generally include sugar and

3    carbohydrates.  And in terms of these premium ingredients, I

4    mean, that phrase keeps popping up.

5        But if there is any price premium associated with these

6    products -- and this is, again, where the ketogenic consumer

7    comes into play -- they're paying a premium to avoid sugars and

8    to avoid honey and to avoid donuts.  They're -- these products

9    are specifically tailored to avoid Cinnamon Toast Crunch, which

10   is loaded with sugar and everything else.

11       There's no allegation here that there's any artificial

12   flavorings in these products, and I think that's key.  As my

13   colleague on the other side keeps talking about, artificial

14   flavors are these Frankenstein-type natural flavors, but

15   there's no allegation that the natural flavors in this case are

16   how they're derived.

17       He -- plaintiff and plaintiffs' counsel goes on to make a

18   host of terribles and allege a host of terribles as to natural

19   flavorings in general, but there's no allegation that the

20   products -- that these natural flavors in the products are

21   anything other than derived from natural sources, including

22   potentially, you know, bananas and mint and honey.  There's

23   just no allegation there.

24       And it's notable, again, the argument that these are false

25   and clearly false and/or misleading statements, if you look at

1   paragraph 23 of plaintiffs' complaint, the FDA requirement --

2   or the FDA -- which, again, as we've set forth, is not

3   particularly relevant in the Court's analysis as plaintiffs are

4   not entitled to enforce the regulations of the FDA.  But under

5   paragraph 23, which plaintiff cites, if a product does not

6   include artificial ingredients, they don't need to put

7   "flavored" next to the title of that product unless it's the

8   type of product that is commonly expected to contain a

9   characterizing food ingredient.  And the FDA regulation cites

10   strawberry shortcake, for example.

11      Well, this circles back, really, to the reasonable

12   consumer standard, Your Honor.  But at the end of the day, do

13   reasonable consumers expect -- and, again, I'll say that

14   whether you take into account the ketogenic customer or not,

15   I think the result is the same.  But do customers who are

16   purchasing a dry cereal, you know, at the store, at Whole Foods

17   or elsewhere, is it commonly expected for donuts or apple cider

18   or bananas to be in that dry cereal?

19      This is a different case, I think, if it's a salad and

20   it's a mint julienne salad.  I think that's a different case.

21   I think a consumer in that case might -- a reasonable consumer

22   might expect there to be mint leaves or mash in that salad.

23      Is a reasonable consumer who's buying a dry cereal

24   expecting mashed-up mint -- and, again, mint can be a flavor;

25   mint can be a leaf -- are they expecting crushed or ground mint

1    in these products?  And the reasonable consumer is not.

2        And it flows through each and every one of these products

3    in terms of what the reasonable consumer would expect.

4        So I guess I'll leave it with that.

5            **THE COURT:**  Let me ask you both some questions about

6    the UCL claims.

7        I guess I'll start with you for a moment, Mr. Gubernick.

8        Is the UCL cause of action based solely on the alleged

9    unlawfulness of Catalina's packaging?  Is the UCL claim

10   entirely derivative of proving a violation of the Sherman Law?

11           **MR. GUBERNICK:**  No, Your Honor.  The UCL actually --

12   the claim -- the claim is viable under either of the three

13   prongs here.

14       The unlawful prong, as you just said, is -- yeah, the

15   predicate for that is the violation of the Sherman Law, but it

16   also works under the fraudulent theory.  That uses the same

17   reasonable consumer standard as a lot of these other claims do.

18       And the idea that the defendant is making a false

19   statement or a statement that is likely to mislead a reasonable

20   consumer about what these products are and is -- and people are

21   paying a premium for that, it bears emphasis how expensive the

22   cereal is, Your Honor.  I mean, this is, like, 7 to 10 bucks a

23   bag.  People are paying a heavy premium to get this product,

24   and it follows logically that they're expecting it to have

25   premium ingredients in it.

1    So under UCL fraudulent theory, yeah, it would be whatever

2    portion of the price is attributable to that misrepresentation,

3    that's the amount that's recoverable in restitution by

4    plaintiff and the class.

5    It also works under an unfair theory, and that's -- and

6    that's -- admittedly, that prong is litigated a lot less, and

7    there is some confusion about what exactly it entails here.

8    But I think the best way, and I think the way we allege in the

9    complaint, Your Honor, is that this actually works just under a

10   traditional unfair competition approach.  Right?

11   Catalina Crunch is labeling their cereals differently than

12   all these competing products that they're right next to on the

13   shelf.  Right?  The ones it's literally right next to, they say

14   "flavored."  Right?  And Catalina Crunch's products don't.

15   Again, it's using -- it is using a misleading approach to gain

16   a competitive advantage over competitors.  And then that

17   competitive advantage, in turn, is allowing Catalina Crunch to

18   profit from consumers.

19   So under the unfair prong, the percent -- yeah, the amount

20   of profit or revenue or price paid that's attributable to that

21   unfair competitive advantage that Catalina Crunch gains over

22   competing brands, that would be recoverable.

23   So our position is that the UCL claim works under any of

24   the three prongs.

25          **THE COURT:**  I'll let you come back to this, but while

1    we're on the topic of the equitable relief, is there any

2    distinction between the calculation of the monetary damages and

3    the restitution you're seeking?  If they're the same, does that

4    weigh in favor or against dismissing the claims for equitable

5    relief?

6           **MR. GUBERNICK:**  I think at this juncture, Your Honor,

7    the core -- the core damages are equitable restitution.  What

8    we're going for here is, again, that price premium, sure, and

9    that's going to be true under all these different claims.  And

10    the basic damages model is the same.

11         Our view on this, Your Honor, is that, you know,

12    regardless of which of these claims ultimately at trial end up

13    being presented to a jury -- or I guess in the case of a UCL

14    claim, a judge -- at the pleading stage, the case law is pretty

15    clear on this, that they can be alleged in the alternative,

16    which is -- which is, like, very, very common practice, is to

17    have all of these claims, even if they -- yeah, they're based

18    on the same basic concept and they seek the same basic remedy,

19    although I would say, Your Honor, for the UCL unlawful theory

20    claim, that is -- that is -- it does seek the same damages, but

21    that is under a different theory because the unlawful claim

22    does not require the reasonable consumer standard.  So that one

23    is different so far as that goes.

24           **THE COURT:**  Go ahead, Mr. Orr.

25           **MR. ORR:**  Yeah.

1    **THE COURT:** I'm happy to repeat them if it would be

2 helpful.

3    **MR. ORR:** Yeah, that'd be great.

4    **THE COURT:** The first question I asked Mr. Gubernick

5 related to the UCL cause of action and whether it's based

6 solely on the alleged unlawfulness of the packaging.

7    **MR. ORR:** Yeah. I think, as I -- I wasn't quite sure

8 I understood the response, but it seems like he said that it

9 was. The unlawful prong -- again, UCL claim has three prongs:

10 unfair, unlawful, and fraudulent. It seems like he had

11 indicated that -- and, again, I don't know that the unlawful

12 prong is premised on the Sherman Law.

13  If it -- again, our motion goes to the unlawful prong as

14 it relates to the Sherman Law. So our position is that to the

15 extent that their unlawful claim is premised on a Sherman

16 violation, under Ninth Circuit precedent in the *Nexus* case and

17 a couple of subsequent cases, that claim is preempted.

18  In terms of --

19    **THE COURT:** Can I --

20    **MR. ORR:** Go ahead.

21    **THE COURT:** -- stop you there for just a moment,

22 because I have a --

23    **MR. ORR:** Sure.

24    **THE COURT:** -- separate question for you on

25 preemption; so --

1      **MR. ORR:**  Sure.

2      **THE COURT:**  -- you've walked right into it.

3      **MR. ORR:**  No.  I love it.  Yeah.

4      **THE COURT:**  So let's talk about that for a moment.

5      **MR. ORR:**  Yeah.

6      **THE COURT:**  So courts in this district have

7  consistently determined that UCL unlawful claims based on

8  Sherman Law are not impliedly preempted.

9      So talk to me about -- well, I get, from your motion and

10 reply, that you think *Nexus Pharmaceuticals* really changed the

11 landscape; but I would like to -- I would like for you to say a

12 little bit more about that and why parallel state laws -- why

13 would they be necessarily preempted by the --

14     **MR. ORR:**  Yeah.  I don't --

15     **THE COURT:**  -- FDCA.

16     **MR. ORR:**  I don't know that there's been a ton of case

17 law after *Nexus*.  So *Nexus* is clearly -- I think to the extent

18 that there was any ambiguity or hesitance, I think *Nexus*

19 governs.

20     I mean, *Nexus* involved -- it's pretty straightforward.  I

21 mean, *Nexus* involved a UCL claim.  The underlying violation was

22 a violation of the Sherman Law.  And *Nexus* specifically says

23 that that claim is preempted.  And I don't think it matters

24 what the underlying UCL claim is related to.  I mean, I think

25 it's pretty straightforward.

1    And so -- and there has been, I think, one subsequent case

2  that kind of follows *Nexus*.  And I don't -- I didn't cite it;

3  so I hesitate to bring it up here, Your Honor.  I don't want to

4  be accused of sandbagging.  But there is one Ninth Circuit case

5  that followed *Nexus* and kind of reinforced that.

6    But really, this Court doesn't need to go any farther than

7  looking at the holding from *Nexus* and saying:  Do we have a --

8  is this a case where there's a narrow gap between what

9  plaintiff is trying to enforce and the underlying Sherman Law

10  claim?

11    And here, plaintiffs' unlawful claim is based solely and

12  exclusively on a violation of the Sherman Law; so *Nexus* comes

13  squarely into play.  All of the pre-*Nexus* case law, it really

14  goes out the window.  And I'm not sure, frankly, even on some

15  of the post-*Nexus* cases, how many of those briefs cited *Nexus*.

16    I know there is -- I'm involved in an implied preemption

17  case that's on Ninth Circuit appeal right now, and maybe it

18  gets some additional insight on that.  I think it's a *Davidson*

19  *Nacarino* case involving implied preemption, *Buckman* preemption

20  in a protein case.

21    But Your Honor doesn't need to go further than *Nexus* to

22  rule that plaintiffs' unlawful claim is preempted in terms

23  of -- and I'll circle back to the inadequacy of legal remedies.

24  You know, plaintiff concedes that these two remedies are

25  identical, and in that respect, there's no inadequate legal

1    remedy at issue here, and plaintiff hasn't tried to even plead

2    that. So, again, to the extent that anything goes past the

3    pleading stage, which I don't think it should, certainly those

4    equitable remedies and equitable restitution should not.

5         And just to address one more point, which is the idea that

6    the UCL claim is premised on a different theory than the rest

7    of the claims, at heart, it's not. At the heart of their UCL

8    claim, they're not seeking injunctive relief. If they were

9    seeking injunctive relief under the UCL, it's conceivable that

10    that could be a different analysis. But at the heart of their

11    claim, the UCL claim is for equitable restitution.

12         And in order to prevail and to get restitution, they still

13    have to show the exact same underlying conduct, injury, and

14    harm that they're alleging with respect to all their other

15    claims. So that's a red herring.

16         **THE COURT:** Mr. Gubernick, would you like to address

17    *Nexus*?

18         **MR. GUBERNICK:** Yes, Judge.

19         So, Your Honor, I apologize if, in my opposition, I didn't

20    quite get what the defense was going at with *Nexus*; but in my

21    defense, I still don't think I understand it.

22         The core idea behind preemption is to -- it's about

23    congressional intent. Right? I remember Judge Orwick in --

24    Orrick, in *Brown v. Van's International Foods*, which is a case

25    we cite, pointed this out and pointed out, also, that when the

1    FDCA was enacted, for this labeling stuff, Congress expressly

2    contemplated that states would be enacting identical versions

3    of these requirements.  That was the idea.

4         So not only would defendant's reading of *Nexus* -- it would

5    be inconsistent with that congressional intent.  It would

6    actually invalidate the -- it would invalidate the Sherman Law,

7    essentially, and that doesn't make any -- any sense here.

8         Again, the issue is -- we're not alleging a violation of

9    the FDCA.  If we were alleging a violation of the FDCA and that

10   was the basis for our claim, then, yeah, I agree preemption

11   would apply there, but that's not what we're doing because the

12   California Legislature enacted the Sherman Law.

13        And I guess I sort of understand what defendant's saying

14   here.  Well, hey, the California Legislature essentially just

15   cut and pasted all this stuff from the FDCA.  But Congress said

16   they could do that.  Congress expected them to do that.  And

17   it's just a very strange reading of *Nexus* to say that the

18   Ninth Circuit wants to override Congress and nuke this statute.

19        And I would also point out, Your Honor, that there are a

20   lot of statutory regimes in California that take this approach

21   of incorporating by reference federal statutory schemes.  So

22   like, for example, the Rosenthal Fair Debt Collection Practices

23   Act has a provision that says that if there's a violation of

24   the FDCA, then that gets ported over here, and you can use that

25   as a predicate under Rosenthal.

1       Again, under defendant's reading of *Nexus*, it would kill

2 Rosenthal as well and any other time that the California State

3 Legislature has incorporated by reference language used in

4 federal statutes.  And that just -- there's just not a lot in

5 *Nexus* to even suggest that that's what the Ninth Circuit had in

6 mind here.

7       And I would point out, Your Honor, that Judge Seeborg, who

8 is the -- you know, essentially the lone champion of this

9 minority position in this District, he issued a decision after

10 *Nexus* came down.  And this was -- it's *Guerra v. Kind LLC*.

11 I think this postdates our briefs, so it's not cited.  But the

12 citation on it is 2023 WL 3436093.  And it discusses *Nexus*

13 briefly.

14       And then right after that, Judge Seeborg, again, says:

15 Hey, I'm -- you know, I know people disagree with me, but I'm

16 still going to keep doing this.  He does not treat *Nexus* as:

17 Oh, okay.  This was validation for me; this has resolved the

18 split; this is the law.  He doesn't -- even Judge Seeborg

19 doesn't read *Nexus* that way, apparently, because it doesn't say

20 that.

21       So I think -- unless I'm missing something fundamental

22 about the defendant's argument here, I don't think this changes

23 the underlying landscape.

24       And as the Court noted, with the exception of

25 Judge Seeborg, most judges in this building have taken the view

1  that as long as the requirements that are being imposed for

2  labeling are identical to what's required by the FDCA, then

3  there's no preemption issue here.  And that's what we're

4  dealing with here.

5       THE COURT:  One more question for you about the

6  preemption interplay, but I want to come back to you for a

7  moment.

8       Mr. Orr, I believe earlier in argument, you did not cite

9  to me a Ninth Circuit case because it hadn't been in your

10  briefs, but I think you should be given an opportunity to do

11  so.

12      So if there's something else you want to point me to --

13  because I think it was on the preemption topic.  I think it was

14  post-*Nexus*.  So if you would like --

15      **MR. ORR:**  Yeah, it follows *Nexus*, and it really just

16  reinforces *Nexus*.  And I'll just cite the case.  I'm not going

17  to make the argument, just a supplemental authority, oral

18  supplemental authority.

19      It's *Hope Medical Enterprises, Inc. vs. Fagron Compounding

20  Services*, filed on July 26, 2023; 2023 Westlaw 4758454.

21      **THE COURT:**  Thank you.

22      I wanted to give -- since I got --

23      **MR. ORR:**  I appreciate that, Your Honor.

24      **THE COURT:**  -- a little bit of supplemental authority

25  from you, I wanted to give you a chance to stick yours in there

```
 1   too.
 2         All right.  So here's, maybe -- I think it's my last
 3   preemption question for you, which is simply this,
 4   Mr. Gubernick:  If the Court -- do I need to address preemption
 5   if the UCL claims are otherwise dismissed on their merits?
 6         MR. GUBERNICK:  So if -- I'll just make sure I
 7   understand your question, Your Honor.  So if the UCL claim was
 8   dismissed on all three prongs?
 9         THE COURT:  Yes.  Do you think I need to reach
10   preemption?
11         MR. GUBERNICK:  I think you -- I think to -- I think
12   to dismiss the UCL claim --
13         THE COURT:  I take for granted that you don't think I
14   should dismiss the UCL claims.
15         MR. GUBERNICK:  Oh, no, no.
16         THE COURT:  Assume --
17         MR. GUBERNICK:  I understand, Judge.
18         THE COURT:  Okay.
19         MR. GUBERNICK:  I guess what I'm saying, Your Honor,
20   is I don't -- I don't think that the -- I'm trying to figure
21   out if the UCL unlawful claim could even be dismissed without
22   dealing with the preemption issue, is, I guess, where I'm
23   struggling with it.
24         I think the answer is probably "no" on that because,
25   again, it doesn't use the reasonable consumer standard that the
```

1   other two prongs employ.

2       So I think the Court would have to -- would have to

3   address the preemption issue to dispose of defendant's motion

4   on the UCL unlawful claim one way or the other.

5       **THE COURT:** I appreciate that.

6       Mr. Orr, do you share that opinion?

7       **MR. ORR:** It might come as a surprise, but I do not

8   share that opinion. I think that Your Honor does not need to

9   reach the preemption issue if you dismiss the unfair

10  competition law claim. And there are a couple of grounds that

11  you can use to do so.

12      Number one, we obviously -- we won't reiterate, but we

13  disagree that the reasonable consumer standard does not apply

14  to the UCL unlawful claim. We believe it does because the

15  underlying claim is for equitable restitution. So it's the

16  same operative facts and requires fraud, misleading statement.

17      Again, you can also dismiss their unlawful claim on

18  grounds of failure to plead inadequate remedies at law.

19      And so if you were to dismiss the unfair competition law

20  unlawful claim, it's an equitable claim; and to the extent that

21  you were to dismiss that, you don't need to address preemption.

22      **THE COURT:** Counsel, those are my questions for you

23  all. If you all would like a few minutes just to sort of wrap

24  up and give me anything else you think I should hear before we

25  close today.

1   I'm realizing that, because I've gone back and forth

2 between you all so much, I have no idea to ask who to go first.

3 So would anyone like to volunteer to go first?

4   **MR. ORR:** Your Honor, it's my motion. Usually, I've

5 got the burden of going first. And I'm going to be brief.

6   Look, I really do appreciate the opportunity to actually

7 argue. It's been a while. So it's fun. I enjoy it.

8   The only other aspect or issue that I would raise just

9 briefly would have to do with the Article III standing,

10 Your Honor. And we -- I guess it's a note to self and a good

11 point moving forward.

12   We kind of drafted the motion to the judge as opposed to

13 the Court. We knew that we were dealing with Judge Gilliam,

14 and we've certainly litigated and respect him. He's a great

15 judge. I've tried cases in front of him. We know where he

16 stood on the substantial similarity and Article III standing to

17 pursue claims over products that have not been purchased.

18   I'll just make sure that I reiterate that our view is that

19 we respectfully disagree with the majority in that respect,

20 that if you did not purchase the product, if a consumer did not

21 purchase the product, they do not have an actual injury,

22 imminent injury as a result of the purchase of that product.

23   And so that's really the standard that we think is

24 consistent with Article III and Supreme Court precedent.

25   To the extent that you follow or carve out your own view

1  and reach your conclusion that the substantial similarity

2  approach applies here, I think it's really easy to look at

3  these products and say:  They're all cereals; the plaintiff

4  relied upon something; and they're all similar.

5      I think you really need to take a close look at the

6  specific products and the theory of plaintiffs' claims, which

7  is, plaintiff relied on a very specific set of claims and

8  vignettes.

9      I mean, the plaintiff specifically says:  I looked at the

10 product.  I saw the language on the front of the package, and

11 it's accompanied by certain things, certain pictures of fruits

12 or otherwise.  And because of that, I was injured.

13     And plaintiff specifically says:  I relied on the

14 Chocolate Banana and the Honey Graham.

15     And those -- and so while I might concede, for purposes of

16 today, that the products themselves are probably pretty

17 similar, there's a world of difference in the actual

18 misrepresentation -- the alleged misrepresentation or the

19 claim.

20     Most of the substantial similarity cases involve identical

21 or near-identical claims.  So the products might differ a

22 little bit, and it may be all natural or 100 percent natural,

23 but generally, the claims are the same.

24     And so I could see, under a substantial similarity

25 analysis, if you've got a product that's very similar and they

1   all say "All Natural," even though, you know, maybe the fruit

2   or the characterizing ingredient might be slightly different, I

3   could see that that could be substantially similar.

4       But here, Chocolate Banana, especially in the context of

5   plaintiffs' claims and especially in the context of a

6   keto-friendly cereal, is completely different from Apple Cider

7   Donut or Chocolate Mint even.

8       I'll just rest with that, Your Honor.

9           **THE COURT:**  Thank you, Mr. Orr.

10          **MR. ORR:**  Thank you.

11          **THE COURT:**  Okay.  Go ahead, Mr. Gubernick.

12          **MR. GUBERNICK:**  Thank you, Judge.

13      So a couple of things, first, Your Honor, just on this

14  substantial similarity issue.  This issue is fully briefed, and

15  as defendant acknowledges, under the majority position, this

16  is -- to the extent this is -- this would be a grounds for

17  challenging -- or representing the class as to the unpurchased

18  products, that's a question to deal with on class

19  certification.

20      I mean, the *ipse dixit* statement that "Well, Apple Cider

21  is very different than Chocolate Banana," how are they

22  different?  The packaging looks the same.  The colors are

23  different because it's -- they're, you know, colored to

24  represent different ingredients.  But otherwise, the bags are

25  basically identical.  Even the ingredients in these products

1 are basically identical, which really actually just underscores
2 how misleading this is.  This is like the same stuff, just with
3 a different version of arti- -- of natural flavors added.  So
4 that's substantial similarity.
5      I do want to say, though, a few words on just reasonable
6 consumer.  Your Honor, most of defendant's motion is -- tiptoes
7 around the elephant in the room here, which is that a bunch of
8 courts, including a bunch of courts in this building, have been
9 presented with this exact type of claim, essentially the same
10 violation, and have reached the conclusion that this -- that
11 the plaintiff has stated a probable -- a probable claim, that a
12 reasonable consumer could be misled by this.
13      Just recently, Judge Chhabria, presented with some fruit
14 snacks that didn't have any fruit in them, that was his
15 conclusion.  And it follows.  This regulatory regime has been
16 around for a long time.
17      When consumers see a product that's labeled, let's say,
18 again, Cherry Coke versus Cherry-Flavored Coke, people infer
19 from that:  What is in this product?
20      And defendant insists that this is a flavor case.  This is
21 not a flavor case.  This has never been a flavor case.  For
22 purposes of plaintiffs' claims, it is entirely irrelevant what
23 these cereals taste like.  What matters is people think they're
24 getting a healthy product, and one of the reasons they think
25 it's healthy is because it has these premium ingredients in it

1   that they associate with health.

2       And, obviously, that's the intent -- right? -- with

3   Catalina Crunch.  Why put a bunch of banana slices on the bag

4   if you don't want people to think there's banana in this?

5   Right?  The same thing with mint and all of these others.

6   Right?

7       And they try to cast this as:  Well, these are just flavor

8   notes.  If they're flavor notes, just put the word "flavored"

9   on the front, like all of your competitors do.  That really is

10  all this case comes down to at bottom.

11      So, Your Honor, I would just ask that the Court follow the

12  overwhelming precedent in this Circuit and deny defendant's

13  motion.

14      Thank you.

15      **THE COURT:**  Counsel, thank you both.  You have one --

16  you can have one --

17      **MR. ORR:**  Fruit snacks are very different than cereals

18  and what a consumer might expect from a fruit snack -- and,

19  again, *Gerber* goes into this -- in terms of -- I don't know

20  that there's any allegation that the products are not healthy.

21      I just want to make sure -- if my client is viewing this

22  or seeing this, I want to make sure.  These are very healthy

23  products.  Obesity is an epidemic.  Sugar is a viral problem.

24  And these products are much, much more healthy than, frankly,

25  the garbage that my children eat, unfortunately, but that's the

30

1  fact.

2      In terms of why you put "banana" on a product, it's

3  probably to give the consumer an idea of what they're buying,

4  the flavor that they're buying.

5      It's notable that there is no "honey" on the label of the

6  Honey Graham.  I'm not sure what graham is, other than it

7  potentially being a flavor.  But there's also vignettes of

8  coconut, raspberries on the product labels as well, for serving

9  suggestions.

10      Thank you, Your Honor.

11          THE COURT:  Counsel, thank you both.  I'll take it

12  under submission.

13          MR. ORR:  Appreciate it.

14          THE COURT:  I appreciate you all coming in person

15  today.

16          MR. ORR:  Thank you.

17          THE COURT:  We're adjourned.

18              (Proceedings adjourned at 2:50 p.m.)

19                      ---o0o---

20

21

22

23

24

25

1

2                    **CERTIFICATE OF REPORTER**

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6    DATE:  Friday, April 26, 2024

7

8

9

10   _____

11          Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
          CSR No. 7445, Official United States Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  Benjamin Gubernick (SBN 321883)
   **GUBERNICK LAW P.L.L.C.**
2  10720 W. Indian School Rd.,
   Suite 19, PMB 12
3  Phoenix, AZ 85037
   623-252-6961
4  ben@gubernicklaw.com

5  *Attorneys for Plaintiff*

6

7                    **UNITED STATES DISTRICT COURT**

8                   **NORTHERN DISTRICT OF CALIFORNIA**

9

10 KAREN COLLYER, an individual;          CASE NO.:  4:23-cv-00296-HSG

11              Plaintiff,
                                          **PLAINTIFF'S OPPOSITION TO**
12        v.                              **DEFENDANT CATALINA SNACKS**
                                          **INC.'S MOTION TO DISMISS**
13 CATALINA SNACKS INC., a Delaware       **PLAINTIFF'S COMPLAINT**
   Corporation;
14                                         Date: June 29, 2023
                Defendant.                 Time: 2:00 p.m.
15                                         Place: Courtroom 2

16                                         Hon. Haywood S. Gilliam, Jr.

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................... 1

II.     FACTUAL BACKGROUND ........................................ 2

III.    LEGAL STANDARD ................................................ 2

IV.    ARGUMENT ......................................................... 3

    A.    Plaintiff Has Standing To Represent Purchasers Of The "Apple Cider Donut" and "Mint Chocolate" Products................................. 3

        1.    The Substantially Similar Test Applies. .............................. 3

        2.    The Unpurchased And Purchased Products Are Substantially Similar. ............................................ 4

    B.    Plaintiff May Pursue Her Equitable And Legal Claims................. 5

        1.    Plaintiff's Equitable Claims Are Not Subject To A Heightened Pleading Standard. ................................... 5

        2.    Plaintiff's UCL Unlawful Claim Is Based On A Distinct Legal Theory. ................................................ 7

    C.    Plaintiff Plausibly Alleges Claims Under The UCL, FAL, and CLRA. ............................................................. 7

        1.    The Reasonable Consumer Standard Does Not Apply To Plaintiff's UCL Unlawful Claims. .................................. 7

        2.    Plaintiff Has Plausibly Alleged That Reasonable Consumers Would Be Misled. ................................... 8

    D.    Defendant's Preemption Arguments Fail. ......................... 14

        1.    Federal Law Does Not Impliedly Preempt Plaintiff's UCL "Unlawful" Claim. ........................................ 14

        2.    The Court of Appeals' *Nexus* Decision Is Inapplicable To Consumer Protection Claims. ................................. 16

        3.    Plaintiff's Claims Are Not Expressly Preempted. ................. 17

    E.    Plaintiff Adequately Pled A Claim of Breach Of Implied Warranty Of Merchantability................................................ 18

        1.    Plaintiff's Implied Warranty Claim Survives For The Same Reasons As Her UCL, FAL, And CLRA Claims. .................. 18

        2.    Privity Is Not Required. ....................................... 18

V.     LEAVE TO AMEND. ................................................ 20

VI.    CONCLUSION....................................................... 20

## **TABLE OF AUTHORITIES**

**Cases**

*Ang v. Bimbo Bakeries USA, Inc.*,
No. 13-CV-01196-WHO, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014)..............................4

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ...........................................................................................4

*Ashton v. J.M. Smucker Co.*,
No. EDCV20992JGBSHKX, 2020 WL 8575140 (C.D. Cal. Dec. 16, 2020) ...............18, 19

*Brown v. Food for Life Baking Co., Inc.*,
No. 21-CV-10054-TLT, 2023 WL 2637407 (N.D. Cal. Feb. 28, 2023)........................15, 17

*Brown v. Natures Path Foods, Inc.*,
No. 21-CV-05132-HSG, 2022 WL 717816, n.15 (N.D. Cal. Mar. 10, 2022) .....................7

*Brown v. Van's Int'l Foods, Inc.*,
No. 22-CV-00001-WHO, 2022 WL 1471454 (N.D. Cal. May 10, 2022)................7, 15, 16

*Bruton v. Gerber Prods. Co.*,
703 Fed. App'x 468 (9th Cir. 2017) ..................................................................................8

*Buckman Co. v. Plaintiffs' Legal Committee*,
531 U.S. 341 (2001)..........................................................................................................14

*Budhani v. Monster Energy Co.*,
527 F. Supp. 3d 667 (S.D.N.Y. 2021)..........................................................................13, 14

*Burr v. Sherwin Williams Co.*,
42 Cal.2d 682 (1954) ...................................................................................................18, 19

*Cabrera v. Bayer Healthcare, LLC*,
No. LACV1708525JAKJPRX, 2019 WL 1146828 (C.D. Cal. Mar. 6, 2019) .............18, 19

*Carroll v. Myriad Genetics, Inc.*,
No. 4:22-CV-00739-YGR, 2022 WL 16860013 (N.D. Cal. Nov. 9, 2022) ....................6, 7

*Chong v. Kind LLC*,
585 F.Supp.3d 1215 (N.D. Cal. 2022) ............................................................................16

*City of Almaty v. Khrapunov*,
956 F.3d 1129 (9th Cir. 2020) .........................................................................................3

*Cosgrove v. Blue Diamond Growers*,
No. 10 Civ. 8993 (VM), 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) .............................13

*Cruz v. D.F. Stauffer Biscuit Co.*, 2021 WL 5119395 (S.D.N.Y. Nov. 4, 2021)....................................13

*Delacruz v. Cytosport, Inc.*, No. C,

    11-3532 CW, 2012 WL 2563857 (N.D. Cal. June 28, 2012) ........................................8

*Earth Island Institute v. Wheeler*,

    464 F.Supp.3d 1138 (N.D. Cal. 2020) ........................................................................3

*Effinger v. Ancient Organics*, LLC,

    No. 22-cv-03596-RS, 2023 WL 2214168 ...................................................................16

*Ernst and Haas Management Company, Inc. v. Hiscox, Inc.*,

    23 F.4th 1195 (9th Cir. 2022) .....................................................................................2

*Figy v. Frito-Lay N. Am., Inc.*,

    67 F. Supp. 3d 1075 (N.D. Cal. 2014) ......................................................................20

*Fink v. Time Warner Cable*,

    714 F.3d 739 (2d Cir. 2013)......................................................................................13

*Fitzhenry-Russell v. Coca-Cola Co.*,

    No. 5:17-CV-00603-EJD, 2017 WL 4680073 (N.D. Cal. Oct. 18, 2017) ...............12

*Foman v. Davis*,

    371 U.S. 178 (1962)..................................................................................................20

*Guzman v. Polaris Industries Inc.*,

    49 F.4th 1308 (9th Cir. 2022) .....................................................................................6

*Henderson v. Gruma Corp.*,

    2011 WL 1362188 (C.D. Cal., Apr. 11, 2011) .........................................................10

*Jeong v. Nexo Fin. LLC*,

    No. 21-CV-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ......................6

*Johnson v. California*,

    543 U.S. 499 (2005)....................................................................................................4

*Johnson v. Trumpet Behav. Health, LLC*,

    No. 3:21-CV-03221-WHO, 2022 WL 74163 (N.D. Cal. Jan. 7, 2022) .....................6

*Lavie v. Procter & Gamble Co.*,

    105 Cal. App. 4th 496 (Ct. App. 2003)......................................................................8

*Linear Tech. Corp. v. Applied Materials, Inc.*,

    152 Cal.App.4th 115 (2007) ....................................................................................11

*Lopez v. Smith*,

    203 F.3d 1122 (9th Cir. 2000) ...................................................................................3

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Lorentzen v. Kroger Co.*,

    532 F. Supp. 3d 901 (C.D. Cal. 2021) ................................................................4

*Marino v. YummyEarth, Inc.*,

    No. 22-CV-02739-VC, 2022 WL 16912389 (N.D. Cal. Nov. 3, 2022) ..........................9, 17

*Martinez v. Metabolife Internat., Inc.*,

    113 Cal. App. 4th 181, 6 Cal. Rptr. 3d 494 (2003) ............................................19

*McDougal v. Cnty. of Imperial*,

    942 F.2d 668 (9th Cir. 1991) ............................................................................3

*Mendiondo v. Centinela Hosp. Med. Ctr.*,

    521 F.3d 1097 (9th Cir. 2008) ..........................................................................3

*Mexicali Rose v. Super. Ct.*,

    1 Cal. 4th 617 (1992) ......................................................................................18

*Miller v. Ghirardelli Chocolate Co.*,

    912 F. Supp. 2d 861 (N.D. Cal. 2012) ..............................................................4

*Nacarino v. Chobani, LLC*,

    No. 20-CV-07437-EMC, 2022 WL 344966 (N.D. Cal. Feb. 4, 2022) ................6

*Nexus Pharmaceuticals Inc., v. Central Admixture Pharmacy Services, Inc.*,

    48 F.4th 1040 (9th Cir. 2022) ..........................................................................16

*Organic Consumers Association v. Sanderson Farms, Inc.*,

    284 F.Supp.3d 1005 (N.D. Cal. 2018) ..............................................................3

*Perez v. Nidek Co.*,

    711 F.3d 1109 (9th Cir. 2013) ..........................................................................14

*Pino v. Birch Benders*, LLC,

    No. 22-CV-02194-TSH, 2022 WL 4913320 (N.D. Cal. Oct. 3, 2022)................15

*Quiroz v. Sabatino Truffles New York, LLC*, No.,

    SACV170783DOCKES, 2017 WL 8223648 (C.D. Cal. Sept. 18, 2017)................19

*Roffman v. Rebbl*, Inc.,

    No. 22-CV-05290-JSW, 2023 WL 1420724 (N.D. Cal. Jan. 31, 2023) ................15

*Ruiz v. Celsius Holdings, Inc.*,

    No. 321CV00128GPCKSC, 2021 WL 5811264 (S.D. Cal. July 28, 2021) ................5, 10, 12

*Sagastume v. Psychemedics Corp.*,

    No. CV206624DSFGJSX, 2020 WL 8175597 (C.D. Cal. Nov. 30, 2020) ................6

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Saidian v. Krispy Kreme Doughnut Corp.*,
No. 216CV08338SVWAFMX, 2017 WL 945083 (C.D. Cal. Feb. 27, 2017)....................................10

*Schwartz v. Bai Brands, LLC*,
No. CV196249FMORAOX, 2020 WL 5875019 (C.D. Cal. July 31, 2020) ................................10, 17

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........................................................................................................6

*Starratt v. Fermented Scis., Inc.*,
No. 22-CV-03895-HSG, 2023 WL 359500 (N.D. Cal. Jan. 23, 2023)...........................................6, 7

*Steele v. Wegmans Food Markets, Inc.*,
472 F.Supp.3d 47 (S.D.N.Y. 2020) ..............................................................................................13

*Trazo v. Nestle USA, Inc.*,
No. 5:12-CV-2272 PSG, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013), on reconsideration 113 F.
Supp. 3d 1047 (N.D. Cal. 2015) ....................................................................................................8

*Vassigh v. Bai Brands LLC*,
No. 14-CV-05127-HSG, 2015 WL 4238886 (N.D. Cal. July 13, 2015) .........................................14

*Williams v. Gerber Prod. Co.*,
552 F.3d 934 (9th Cir. 2008) .................................................................................................passim

*Wilson v. Frito-Lay North America, Inc.*,
961 F.Supp.2d 1134 (N.D. Cal. 2013) ............................................................................................4

*Wright v. Costco Wholesale Corp.*,
No. 22-CV-04343-WHO, 2023 WL 210936 (N.D. Cal. Jan. 17, 2023) .........................................11

*Yamasaki v. Zicam LLC*,
No. 21-CV-02596-HSG, 2021 WL 4951435 (N.D. Cal. Oct. 25, 2021) ...........................................4

*Young v. Neurobrands*, LLC,
No. C 18-05907 JSW, 2019 WL 13247942 (N.D. Cal. Feb. 19, 2019) ...........................................19

**Statutes**

21 U.S.C. § 343-1(a) ........................................................................................................................17

Cal. Com. Code § 2314(2)(f) ..........................................................................................................18

Cal. Health & Safety Code § 110670................................................................................................14

**Rules**

Fed. R. Civ. P. 15(a)(2) ...................................................................................................20

Federal Rule of Civil Procedure 8; and (2) ......................................................................7

Rule 15(a) .........................................................................................................................20

**Regulations**

21 C.F.R. §101.22 ......................................................................................................8, 17

21 C.F.R. §101.22 (i) .......................................................................................................1

**Other Authorities**

38 Fed. Reg. 33,285 (December 3, 1973) ..........................................................................1

38 Fed. Reg. 33286 (December 3, 1973) ...........................................................................9

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Karen Collyer ("Plaintiff") through undersigned counsel, files this response in opposition to Defendant Catalina Snacks Inc.'s ("Defendant") Motion to Dismiss Plaintiff's Complaint (Dkt. No. 16, "Def. Br." or "Defendant's Motion"). As explained below, Defendant's Motion lacks merit and warrants denial.

## I.  INTRODUCTION

This is a straightforward case. Defendant sells high-priced cereals characterized by premium, healthy ingredients (e.g., bananas and apples). The ingredients are prominently featured on the principal display panel, leading consumers to believe the cereals contain those ingredients. However, Defendant's cereals do not contain the characterizing ingredients. Instead, they merely taste like they do thanks to scientist-concocted "natural flavors." Thus, reasonable consumers, including Plaintiff, are deceived by Defendant's labeling.

The law is clear and intended to prevent these shenanigans. Where a food's label "makes any direct or indirect representations with respect to the primary recognizable flavor(s)" but contains only "natural flavor .... the name of the characterizing flavor … *shall* be immediately followed by the word 'flavored[.]'" 21 C.F.R. §101.22 (i) (emphasis added). These uniform labeling requirements exist because "[t]he difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient … is very important to the value of the product and thus to the consuming public." 38 Fed. Reg. 33,285 (December 3, 1973).

As alleged in Plaintiff's Complaint (Dkt. No. 1, "Compl."), Defendant has flouted the rules to deceive customers and gain an unearned advantage over its law-abiding competitors. Notably, Defendant's motion barely even attempts to argue that Defendant's conduct was lawful. Instead, at bottom, Defendant offers little beyond victim blaming: the contention that no reasonable consumer would fall victim to its scheme.

Courts throughout this Circuit and District have rejected Defendant's arguments in indistinguishable cases. This Court should follow suit and deny Defendant's Motion.[1]

---

[1] Plaintiff opposes Defendant's Motion except as to section IV(F) of Defendant's brief, as Plaintiff acknowledges punitive damages are unavailable under the FAL.

## II.   FACTUAL BACKGROUND

Defendant sells "keto friendly" cereals that it claims are "healthier" than other products and made with "real ingredients." Compl. at ¶ 26. The cereals are sold in several varieties under the "Catalina Crunch" brand for around $7 to $10 a bag. *Id*. at ¶ 27. This case challenges the labeling for the "Chocolate Banana", "Honey Graham", "Mint Chocolate" and "Apple Cider Donut" varieties ("the Products" or "Defendant's Products"), because they contain no banana, honey, mint, or apple or apple cider, respectively. *Id*. at ¶¶ 30-36. Instead, they merely simulate the presence of those ingredients using "natural flavors", (*Id*.), a catchall that often functions as a trojan horse for undesirable solvents, modifiers, and additives, such as propylene glycol. *Id*. at ¶¶ 14-15.

The principal display panel of Catalina Crunch cereal (i.e., the fronts of the bag) states the name of the characterizing ingredient in large letters. *Id*. at ¶¶ 30-36. The front of the "Chocolate Banana" bag showcases banana slices mixed with the cereal in a bowl, the "Apple Cider Donut" bag features an apple, and the "Mint Chocolate" bag shows a mint leaf amongst the cereal in a bowl. *Id*. at ¶¶ 31, 34-35. The color scheme of the "Honey Graham" bag invokes honey. *Id*. at ¶ 36.

Catalina Crunch's principal display panels do not say that the Products are flavored. Rather, that information is relegated to the small-print ingredient list on the back of the bag. *Id*. at ¶¶ 33-36. That stands in stark contrast with the cereal brands that compete with Catalina Crunch on grocery store shelves, such as Simple Truth Keto cereals, which include the phrase "naturally flavored" on the front of the bag in large letters. *Id*. at ¶ 44.

Defendant has been sued before for mislabeling its cereal. *Id*. at ¶ 46. However, instead of fixing labeling to comply with federal and state law, Defendant opted to stay the course on noncompliance, and even launched a new, mislabeled Catalina Crunch variety, the "Apple Cider Donut." *Id*.

Plaintiff purchased the "Chocolate Banana" and "Honey Graham" varieties during 2022. *Id*. at ¶ 49. At the time of purchase, she believed from the representations on the principal display panel that the Products contained banana and honey, respectively. *Id*. at ¶ 50. She would not have purchased the Products, or would have only been willing to pay less, had she known the truth. *Id*. at ¶ 52.

## III.   LEGAL STANDARD

"It is axiomatic that the motion to dismiss is viewed with disfavor and is rarely granted." *Ernst*

*and Haas Management Company, Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citing *McDougal v. Cnty. of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991)) (quotations and ellipses omitted). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Such motions should thus be denied unless "it appears beyond doubt that [the] plaintiff can prove no set of facts in support of its claims which would entitle it to relief." *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1131 (9th Cir. 2020). "In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff." *Earth Island Institute v. Wheeler*, 464 F.Supp.3d 1138, 1141 (N.D. Cal. 2020).

Whether a business practice is deceptive under California consumer protection laws generally requires the "weighing of evidence" from both sides and is "usually a question of fact that is inappropriate for decision on demurrer or a motion to dismiss." *Organic Consumers Association v. Sanderson Farms, Inc.* 284 F.Supp.3d 1005, 1014 (N.D. Cal. 2018) (quoting *Williams v. Gerber Prod. Co.*, 552 F.3d 934 (9th Cir. 2008).

If a motion to dismiss is granted, a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted).

## IV.  ARGUMENT

### A.    Plaintiff Has Standing To Represent Purchasers Of The "Apple Cider Donut" and "Mint Chocolate" Products.

Defendant first asks the Court to narrow the scope of the putative class to exclude purchasers of the "Apple Cider Donut" and "Mint Chocolate" varieties of Catalina Crunch. According to Defendant, that drastic relief is appropriate at the motion to dismiss stage because Plaintiff did not purchase those products. Def. Br. at 7. Defendant's arguments lack merit.

#### 1.    The Substantially Similar Test Applies.

"The majority of the courts that have carefully analyzed the question hold that a plaintiff may have

standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). As Defendant acknowledges, that was also the conclusion reached recently by this Court. *See Yamasaki v. Zicam LLC*, No. 21-CV-02596-HSG, 2021 WL 4951435, at *2 (N.D. Cal. Oct. 25, 2021) ("The Court agrees with Judge Orrick of this district that 'the best approach is one which focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products.'" (quoting *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *4-8 (N.D. Cal. Mar. 13, 2014))).

Admittedly, a handful of courts in this Circuit have reached a different conclusion. *See, e.g.*, *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908 (C.D. Cal. 2021). However, Plaintiff submits that the majority approach is more closely aligned with case law from the Court of Appeals on class action standing. *See Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001) ("We must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too finely, and consider instead the context of the inquiry.") (abrogated on other grounds by *Johnson v. California*, 543 U.S. 499, 504-05 (2005)).

### 2. The Unpurchased And Purchased Products Are Substantially Similar.

Applying the substantially similar test, Plaintiff has standing to champion the rights of consumers who purchased the "Mint Chocolate" and "Apple Cider Donut" varieties. To determine whether products are substantially similar, "[f]actors … courts have considered include whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Wilson v. Frito-Lay North America, Inc.*, 961 F.Supp.2d 1134, 1141 (N.D. Cal. 2013). Along those lines, "[c]ourts have found substantial similarity … where (1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer are the same; and (3) both the products and the legal claims and injury are similar." *Yamasaki*, 2021 WL 4951435 at *2 (citing *Ang*, 2014 WL 1024182 at *4-8).

Here, the Products are all varieties of Catalina Crunch cereal. The bags are almost identical—they

claim to have the same sugar, protein, and fiber content and use the same overall design layout. Moreover, they have largely the same ingredients. *See* Compl. at ¶¶ 33-36. For example, two of the cereals, the "Chocolate Banana" (which Plaintiff did purchase) and the "Mint Chocolate" appear to have identical ingredient lists. *Compare id*. at ¶ 33 *with id*. at ¶ 35. Likewise, the ingredient list for "Apple Cider Donut" differs from "Chocolate Banana" and "Mint Chocolate" by one ingredient as it contains cinnamon in lieu of cocoa powder. *Compare id*. at ¶¶ 33, 35 *with id*. at ¶ 34.

Likewise, the Products suffer from the same mislabeling, and liability hinges on the same legal theories. The "Mint Chocolate" and "Apple Cider Donut" prominently showcase an ingredient by name and vignette that they do not contain, just like the "Chocolate Banana" variety does. The central questions in this litigation boil down to: (1) for Plaintiff's fraud-based claims, whether a reasonable consumer would think they are purchasing a product that contains that ingredient (as Plaintiff alleges), or just a product that contains that ingredient's flavor (as Defendant argues); and (2) for Plaintiff's UCL unlawful prong claims, whether Defendant's labeling complied with the Sherman Law.

Notably, a Southern District court recently found the test satisfied where the plaintiffs "allege[d] substantially the same 'labeling infirmity' on all of Defendant's 'fruit' beverages." In *Ruiz v. Celsius Holdings, Inc*., No. 321CV00128GPCKSC, 2021 WL 5811264, at *4 (S.D. Cal. July 28, 2021). The infirmity alleged there is the same one Plaintiff alleges here: a naturally flavored product with a principal display panel that omits the word flavored. In contrast to *Ruiz*'s persuasive reasoning, Defendant offers little beyond the *ipse dixit* assertion that the Products are "obviously not substantially similar[.]" Def. Br. at 2. Likewise lacking in elaboration is Defendant's claim that "[w]hat a consumer may or may not expect in a cereal labeled 'Apple Cider Donut' is not the same issue as what a consumer may or may not expect in a cereal labeled 'Chocolate Banana.'" *Id*. at 8. As discussed above, the core misrepresentation is identical across the challenged products. Defendant's motion should be denied.

**B.    Plaintiff May Pursue Her Equitable And Legal Claims.**

**1.    Plaintiff's Equitable Claims Are Not Subject To A Heightened Pleading Standard.**

Defendant contends that Plaintiff's equitable claims must be dismissed because the Complaint does not "*plead* facts establishing legal remedies are inadequate." Def. Br. at 9 (emphasis original).

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS          ER_64 of 141

However, as discussed below, that is not required at this stage in the case.

Defendant basis its argument primarily on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). There, "[o]n the brink of trial after more than four years of litigation, [the plaintiff] voluntarily dismissed her sole state law damages claim and chose to proceed with only state law equitable claims for restitution and injunctive relief. A singular and strategic purpose drove this maneuver: to try the class action as a bench trial rather than to a jury." *Id*. at 837. "The district court rejected this ploy, and dismissed the plaintiff's claims for restitution because damages had been available." *Starratt v. Fermented Scis., Inc*., No. 22-CV-03895-HSG, 2023 WL 359500, at *3 (N.D. Cal. Jan. 23, 2023).

As this Court noted, "*Sonner* repeatedly highlights the odd procedural posture of that case." *Id*. Since it was decided, "[c]ourts in the Ninth Circuit are divided on how exacting of a standard *Sonner* imposes on plaintiffs who plead claims for equitable and legal remedies at the pleading stage." *Jeong v. Nexo Fin. LLC*, No. 21-CV-02392-BLF, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022). "Some courts have read *Sonner* to create heightened pleading requirements for equitable claims. Others have found that plaintiffs need only allege that they lack an adequate legal remedy or that they plead their claims in the alternative." *Carroll v. Myriad Genetics, Inc*., No. 4:22-CV-00739-YGR, 2022 WL 16860013, at *6 (N.D. Cal. Nov. 9, 2022).

Plaintiff respectfully suggests that this Court follow *Carroll* and hold that "the latter approach [is] more persuasive." *Id. See also*, *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) ("because *Sonner* was decided at a later posture ... if a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case"); *Jeong*, 2022 WL 174236 at *27 ("The Court finds that *Sonner* has limited applicability to the pleading stage because it pertained to circumstances in which a plaintiff dropped all damages claims on the eve of trial."); *Sagastume v. Psychemedics Corp*., No. CV206624DSFGJSX, 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) ("*Sonner* does not hold that plaintiffs may not seek alternative remedies at the pleading stage."); *Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2022 WL 344966, at *9-10 (N.D. Cal. Feb. 4, 2022), motion to certify appeal denied, No. 20-CV-07437-EMC, 2022 WL 833328 (N.D. Cal. Mar. 21, 2022) (collecting cases that agree with limiting *Sonner*'s application at the pleading stage).

Defendant argues that the Ninth Circuit's decision in *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308 (9th Cir. 2022) "rejected the idea that *Sonner*'s outcome somehow depended on its procedural posture." Def. Br. at 10. But as Judge Rogers recently held, "*Guzman*, which addresses a motion for summary judgment, does not require that this Court dismiss plaintiff's equitable claims" at the pleadings stage. *Carroll*, 2022 WL 16860013 at *6.

Plaintiff acknowledges that a simple complaint amendment may be appropriate to: (1) clarify that Plaintiff's claims are pled in the alternative as allowed by Federal Rule of Civil Procedure 8; and (2) allege that her legal remedies are inadequate.[2] *See, e.g., Brown v. Van's Int'l Foods, Inc.*, No. 22-CV-00001-WHO, 2022 WL 1471454, at *13 (N.D. Cal. May 10, 2022) ("It will suffice at the pleading stage for plaintiff to plead that her legal remedies are inadequate or plead equitable claims in the alternative because her legal remedies are inadequate."). However, to the extent Defendant invites the Court to impose a heightened pleading standard on Plaintiff's claims for equitable relief, that invitation should be declined.

### 2.      Plaintiff's UCL Unlawful Claim Is Based On A Distinct Legal Theory.

Defendant's request for dismissal also fails as to Plaintiff's UCL unlawful prong claim, as that claim is predicated in part on Defendant's violation of California's Sherman Law. "[A]s this Court has previously explained, *Sonner* 'did not purport to disturb the well-established rule that equitable and damages claims may coexist when they are based on different theories.'" *Starratt*, 2023 WL 359500 at *3, citing *Brown v. Natures Path Foods, Inc*., No. 21-CV-05132-HSG, 2022 WL 717816, at *6, n.15 (N.D. Cal. Mar. 10, 2022).

### C.      Plaintiff Plausibly Alleges Claims Under The UCL, FAL, and CLRA.

The central thesis of Defendant's Motion is that a reasonable consumer would understand that the names of its cereals "refer to a *flavor*, not an ingredient." Def. Br. at 13 (emphasis original). Defendant is incorrect for several reasons.

### 1.      The Reasonable Consumer Standard Does Not Apply To Plaintiff's UCL Unlawful Claims.

---

[2] Plaintiff notes that such an amendment could have been accomplished without the Court's involvement, had Defendant met and conferred with Plaintiff prior to filing its motion.

According to Defendant, Plaintiff cannot "state a claim under the CLRA, UCL or FAL," as under those statutes "Plaintiff must allege facts establishing that the challenged statements or other representations on the Product label are likely to deceive a reasonable consumer." Def. Br. at 11.

Defendant paints with too broad a brush. The reasonable consumer standard argument does not apply to Plaintiff's UCL unlawful claims. The only element for a UCL unlawful prong claim is the violation of a predicate law or regulation. The reasonable consumer standard is not an element of 21 C.F.R. §101.22, and is not an element Sherman Act, which adopted the FDCA in its entirety. Accordingly, the reasonable consumer standard does not apply to Plaintiffs' claim under the unlawful prong of the UCL. *Bruton v. Gerber Prods. Co.*, 703 Fed. App'x 468, 471-72 (9th Cir. 2017) ("The best reading of California precedent is that the reasonable consumer test is a requirement under the UCL's unlawful prong only when it is an element of the predicate violation").

### 2. Plaintiff Has Plausibly Alleged That Reasonable Consumers Would Be Misled.

For the causes of action where the reasonable consumer standard does apply, all that is required is a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 495 (Ct. App. 2003). As discussed below, the allegations in the Complaint meet that threshold.

#### a. Defendant's Mislabeling Is Relevant.

Defendant first attempts to downplay its habitual noncompliance with the FDCA and Sherman Law as irrelevant to whether its labels are deceptive. Def. Br. at 12. Defendant's argument is wrong on its own terms. *See, e.g., Trazo v. Nestle USA, Inc.*, No. 5:12-CV-2272 PSG, 2013 WL 4083218, at *10 (N.D. Cal. Aug. 9, 2013), *on reconsideration*, 113 F. Supp. 3d 1047 (N.D. Cal. 2015) (while insufficient by themselves, "regulatory violations might suggest that these statements might be misleading[.]"); *Delacruz v. Cytosport, Inc.*, No. C 11-3532 CW, 2012 WL 2563857, at *7 (N.D. Cal. June 28, 2012) ("The FDA regulations may lend objective criteria by which to determine whether certain words and phrases used on the labels are misleading."). And more fundamentally, Defendant misses the point. As alleged in the Complaint:

> The uniform labeling system imposed by the FDA has been in place for decades, and almost all products on grocery store shelves comply with it. The consuming public is

familiar with viewing, and differentiating, food products based on the product's principal display panel. ***The reasonable consumer understands that a food product marked "flavored" refers to the flavor of the food. Likewise, when the word "flavored" is not present, reasonable consumers believe that the ingredients referred to on the principal display panel are contained in the product***.

Compl. at ¶ 39 (emphasis added). In other words, Plaintiff alleges that the FDA's uniform labeling requirements have shaped consumer expectations. Indeed, that was why they were enacted 50 years ago. *See* 38 Fed. Reg. 33286 (December 3, 1973) ("it is necessary to establish a uniform system of flavor designation to dispel any confusion or misrepresentation."). Defendant is not committing a technical violation of an obscure regulation. Rather, Defendant deviates from a standard that consumers are exposed to every time they visit a grocery store, and that Defendant's competitors abide by. Defendant's labeling misleads not because it violates a regulation, but because it violates a norm.

### b. The Product Labels Could Mislead Reasonable Consumers.

Plaintiff has pleaded facts establishing that Defendant's Products mislead a reasonable consumer. The Products' principal display panels showcase ingredients the cereals do not contain. They do that by name (in large capital letters), color, and (for all but the "Honey Graham" variety), photorealistic vignette. Additionally, the Complaint alleges that the missing ingredients are especially desirable to the consumers who Defendant targets with its purportedly healthful products. *See* Compl. at ¶¶ 27, 38. Plaintiff has further alleged that the Products that compete with Catalina Crunch identify themselves as "flavored." *Id.* at ¶¶ 42-44. Courts throughout this Circuit have consistently denied motions to dismiss when presented with analogous or less egregious facts.

In *Williams*, the Court of Appeals held that the reasonable consumer test was satisfied because:

> [T]here are a number of features of the packaging Gerber used for its Fruit Juice Snacks product which could likely deceive a reasonable consumer. The product is called "fruit juice snacks" and the packaging pictures a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product.

552 F.3d at 939. Notably, the "Fruit Juice Snacks" in *Williams* were *less* misleading than Defendant's Products, as they included the phrase "naturally flavored" on the principal display panel. *Id*. at 936. *Williams* is binding precedent, and Defendant's Motion does not even acknowledge its existence, much less attempt to distinguish it. Since *Williams* was decided, a litany of district courts in this Circuit have denied motions to dismiss based on facts that mirror the present matter:

- In *Marino v. YummyEarth, Inc*., No. 22-CV-02739-VC, 2022 WL 16912389, at *1 (N.D. Cal. Nov. 3, 2022), Judge Chhabria held that it was plausible that reasonable consumers would be misled where "the product name includes the term 'fruit,' and the packaging depicts a number of different fruits, potentially suggesting (falsely) that those fruits or their juices are contained in the product[.]" (quotation marks omitted));

- In *Ruiz*, 2021 WL 5811264, the court found dismissal inappropriate where "[t]he front labels on the beverages feature a name, such as 'Sparkling Orange,' and an image (or vignette) of the fruit identified by the name. ... However, the beverages do not contain the ingredient reflected in the name and vignette, but rather 'natural flavor.' *Id*. at *1. The court noted that the plaintiffs "alleged facts suggesting that consumers rely on front-of-package representations to make their purchasing decisions, that some seek out products that contain "real" ingredients, and that competing products specifically identify if they are fruit "flavored," … bolstering their allegation that a reasonable consumer would be deceived." *Id*. *6.;

- In *Schwartz v. Bai Brands, LLC*, No. CV196249FMORAOX, 2020 WL 5875019 (C.D. Cal. July 31, 2020), the court was presented with "Cocofusion beverages" that did "not contain the actual fruit ingredient of the second identified characterizing flavor, i.e., lime, pineapple, raspberry, and mango." *Id*. at *2. Those flavors were depicted by "words", "vignettes", and "color images". *Id*. at *5. The court ruled that the "plaintiff ha[d] plausibly alleged that consumers [were] likely to be deceived by the labels on the Cocofusion beverages[.]" *Id*.;

- In *Saidian v. Krispy Kreme Doughnut Corp*., No. 216CV08338SVWAFMX, 2017 WL 945083 (C.D. Cal. Feb. 27, 2017), the court found it "plausible that Plaintiff will be able to show that reasonable consumers believe that "Raspberry-Filled" doughnuts are filled with raspberries, "Maple Iced Glazed" and "Maple Bar" doughnuts contain maple syrup or maple sugar, and "Glazed Blueberry Cake" doughnuts contain actual blueberries." *Id*. at *3;

- Finally, in *Henderson v. Gruma Corp*., 2011 WL 1362188 (C.D. Cal., Apr. 11, 2011), a manufacturer argued that a guacamole dip's label was not misleading because "the ingredients on the nutrition label combine to produce a basic guacamole flavor." *Id*. at *12 (quotation marks omitted). The court rejected that argument because the manufacturer "labeled its product

'GUACAMOLE' in large capital letters" and "prominently display[ed] large pictures of avocados on the front of the jar." *Id*.

The above cases are well-reasoned. Whether or not a jury ultimately finds that Defendant's Products were misleadingly labeled, "[t]he facts of this case … do not amount to the rare situation in which granting a motion to dismiss is appropriate." *Williams*, 552 F.3d at 939. *See also*, *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 134-35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on [a motion to dismiss]." (internal quotation marks omitted)).

### c.    Defendant's Arguments Lack Merit.

As just discussed, Plaintiff's consumer protection claims survive under the reasonable consumer standard. The arguments advanced in Defendant's Motion misconstrue the Complaint and are contradicted by Ninth Circuit precedent.

*First*, Defendant points out that "[t]here is no allegation that the cereals do not taste as described" and that Plaintiff "does not claim any dissatisfaction with their taste." Def. Br. at 13. But how the Products taste is irrelevant to the injury this case seeks to redress. Plaintiff purchased the Products because she believed they "*contained* the fruits and the premium ingredients represented on the package[.]" Compl. at ¶ 50 (emphasis added). Had Plaintiff known the truth, she "would not have bought it, and certainly would not have paid a 'premium' for such a valued perceived benefit." *Wright v. Costco Wholesale Corp.*, No. 22-CV-04343-WHO, 2023 WL 210936, at *4 (N.D. Cal. Jan. 17, 2023) (quotation marks omitted).

*Second*, Defendant insists that consumers would know the Products do not contain the promised ingredients because "the pieces of cereal depicted on the front of the packages are small, flat, slightly concave squares." Def. Br. at 15. But that makes no sense—ingredients like bananas, mint, honey, and apples or apple cider can be ground up, mashed, or otherwise blended with the concave square batter.[3]

---

[3] Defendant's argument is predicated on incorrect statements in the factual allegations section of its brief. Defendant says: "[b]y 'banana,' 'apple,' 'mint,' and 'honey,' [Plaintiff] means *whole* pieces of banana, apple (or apple cider), mint and honey, as opposed to the flavoring of banana, apple, mint or honey." Def. Br. at 6 (emphasis original). Defendant repeats this claim about "whole" ingredients later in the page, stating "Plaintiff alleges that, had she known that the Chocolate Banana and Honey Graham cereals did not contain *whole* banana and honey, respectively, she 'would not have purchased the Defendant's cereals, or only been willing to pay less.'" *Id*. (emphasis added). But neither the paragraphs in the Complaint Defendant cites nor any other paragraphs make mention of "whole" ingredients.

***Third***, Defendant blames the victim with its contention that reasonable consumers would know that "cereals containing 0g sugar" would not contain banana, apple, or honey, because those ingredients "contain sugar." Def. Br. at 15. "But this is a factual assertion that depends on whether it is commonly known that it is not possible to make a sugar-free… [food] that includes any amount of fruit." *Ruiz*, 2021 WL 5811264 at *6. *See also*, *Fitzhenry-Russell v. Coca-Cola Co*., No. 5:17-CV-00603-EJD, 2017 WL 4680073, at *3 (N.D. Cal. Oct. 18, 2017) ("Defendant contends that … a reasonable consumer would 'understand that it is not physically possible to incorporate ginger root into a soft drink without first reducing it to 'oils' or 'essences.' … Whether a reasonable consumer would be deceived, however, is generally a question of fact not amenable to determination on a motion to dismiss."). Moreover, the Ninth Circuit has made clear it does not expect consumers to engage in detective work:

> We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Williams*, 552 F.3d at 939-40.

***Fourth and finally***, Defendant suggests that "consumer[s] [who] want[] to know more about the cereal's flavoring … can view the ingredient list, which will inform [them] the cereal is naturally flavored." Def. Br. at 15. But that argument is foreclosed by *Williams*, as just discussed.

### d.     The Cases Defendant Cites Are Inapposite.

Defendant contends that "dozens" of courts have dismissed this "type" of case over the "last several years." Def. Br. at 1. But close inspection of Defendant's mountain of precedent reveals, at best, a molehill.

To start with, nearly all the cases Defendant cite are from New York federal courts. Defendant's reliance on a single circuit's cases should be the canary in the coalmine, alerting this Court that something is amiss. And indeed, the Second Circuit—unlike the Ninth—considers the totality of a product's packaging, not just the information presented on the principal display panel. For example, consider *Cruz v. D.F. Stauffer Biscuit Co.*, a case Defendant calls "instructive" (Def. Br. at 14):

Plaintiffs argue that the nutritional label is insufficient to cure the front label claim due to its smaller font and non-concise disclosure. ... However, because courts consider the packaging as a whole, "the presence of a disclaimer or similar clarifying language may defeat a claim of deception" in certain circumstances.

No. 20CV2402PGGJLC, 2021 WL 5119395, at *6 (S.D.N.Y. Nov. 4, 2021), report and recommendation adopted, No. 20CIV2402PGGJLC, 2022 WL 4592616 (S.D.N.Y. Sept. 29, 2022 (citing *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). Under *Williams*, 552 F.3d at 939-40, it would be reversible error for a court to consider information in the nutritional label. Defendant's invocation of *Cruz* (as well as other New York cases) carries little weight in this District.

Even if the Court were to consider Second Circuit cases, they are unhelpful to Defendant. First, Defendant spills much ink discussing *Steele v. Wegmans Food Markets, Inc*., 472 F.Supp.3d 47 (S.D.N.Y. 2020). But the product at issue there was "VANILLA ICE CREAM Made with Milk, Creak and *Natural Vanilla Flavor*." *Id*. at 49 (emphasis added). Contrary to the label in *Steele*, Defendant's Products do not have "flavored" on their principal display panels—as a matter of language, "Chocolate Banana" cereal, for example, is not the same as "Chocolate Banana Flavored" cereal. Moreover, the Plaintiffs in *Steele* conceded that the product did contain some vanilla. *Id*. at 50. Here, by contrast, Plaintiff alleges that Catalina Crunch "do[es] not contain the promised ingredients." Compl. at ¶ 3. *Steele* does not support Defendant's argument.

*Cosgrove v. Blue Diamond Growers*, No. 10 Civ. 8993 (VM), 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020), is likewise distinguishable and unhelpful to Defendant. There, the plaintiffs complained that a vanilla almond milk product was "not *flavored* by 'authentic' vanilla." *Cosgrove v. Blue Diamond Growers*, No. 19 CIV. 8993 (VM), 2020 WL 7211218, at *1 (S.D.N.Y. Dec. 7, 2020) (emphasis added). In other words, the *Cosgrove* plaintiffs understood that they were buying a vanilla flavored product. The present matter, however, arises because Plaintiff believed that premium ingredients were present in Defendant's Products. As already discussed, Defendant is simply wrong in its claim that this is a "'flavor'" case[.]" Def. Br. at 1.

Tellingly, the most analogous Second Circuit case to the present matter is one Defendant does not discuss at all. In *Budhani v. Monster Energy Co*., 527 F. Supp. 3d 667, 679 (S.D.N.Y. 2021), the court found that a reasonable consumer could believe the defendant's "vanilla cream" espresso drinks

"contain[ed] some non-negligible amount of extract derived from a vanilla bean." It reached that conclusion because:

> [U]nlike in the vanilla cases cited above where courts have dismissed claims on the pleadings, Defendant does not use the mere unadorned word "vanilla" without any accompanying language or message. Rather, it uses the image of a vanilla flower. The flower is conveyed prominently, next to the image of a coffee bean, and alongside the use of the word "vanilla."

*Id*. The same is true here. Defendant color-codes its product packaging to the absent characterizing ingredients, and (in all but the "Honey Graham" variety) uses photorealistic vignettes to convey a message to consumers: these are not mere flavors, but rather ingredients contained in the cereals.

### D. Defendant's Preemption Arguments Fail.

#### 1. Federal Law Does Not Impliedly Preempt Plaintiff's UCL "Unlawful" Claim.

Defendant argues that Plaintiff attempts to enforce the FDCA through her UCL claim, which is impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001). Def. Br. at 17). As explained below, Defendant is incorrect.

In *Buckman*, the plaintiffs' brought a state tort claim against a medical device manufacturer that made fraudulent representations to the FDA. *Id*. at 343-45. The Court held that the plaintiffs' state-law "fraud-on-the-FDA" claim conflicted with federal law because the FDA is empowered with the ability to punish and deter fraud perpetrated against it. *Id*. at 348. The Court determined that the plaintiffs' claims were entirely based on the FDCA requirements and allowing the claims to proceed would "exert an extraneous pull on the scheme established by Congress." *Id*. at 352-53. Thus, the Court held the claims were based entirely on the FDCA and were therefore impliedly preempted by federal law. *Id*. at 348, 352-53. Thus, *Buckman* stands for the proposition that private claims that seek to enforce the FDCA are impliedly preempted. *Id*. 348, 352-53. "The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted []), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman* )." *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013).

The FDCA preemption provision preserves parallel state law claims, and the Sherman Law adopts the FDCA in whole, thus, claims based upon the Sherman Law avoid preemption. *Vassigh v. Bai Brands*

*LLC*, No. 14-CV-05127-HSG, 2015 WL 4238886, at *5 (N.D. Cal. July 13, 2015) ("The Sherman Law expressly adopts the requirements of the FDCA as obligations under California law, *see* Cal. Health & Safety Code § 110670, and California law further provides a mechanism for private parties to enforce those obligations through the 'unlawful' prong of the UCL[.]"). As explained by Judge Orrick in *Brown v. Van's Int'l Foods, Inc.*, the proposition that *Buckman* applied to implied preemption claims under the UCL's unlawful prong failed because:

> [W]hen Congress passed the FDCA and its subsequent amendments creating national uniform nutrition labeling, it expressly preempted state law that was inconsistent with its requirements. But Congress did not attempt to completely preempt state laws regarding the marketing of food products. It specifically anticipated states enacting their own identical laws. State laws are only preempted if they are not equal to, or substantially identical to, requirements imposed by or under the [FDCA]. California complied with this requirement in passing the Sherman Law, which expressly adopts the federal labeling requirement.

2022 WL 1471454, at *7 (citations and quotation marks omitted). The court noted that the plaintiff was not seeking to enforce the FDCA, but rather, relied on the FDCA and FDA regulations only to the extent that those laws were enacted under state laws like the Sherman Law, UCL, FAL, and CLRA. *Id.* *7. Other courts in this District agree. *See Brown v. Food for Life Baking Co., Inc.*, No. 21-CV-10054-TLT, 2023 WL 2637407 (N.D. Cal. Feb. 28, 2023) (finding that the plaintiff's claims were not impliedly preempted because the Sherman Law mirrors the FDCA and because plaintiffs disclaimed brining any claim under the FDCA.); *Roffman v. Rebbl, Inc.*, No. 22-CV-05290-JSW, 2023 WL 1420724, at *5 (N.D. Cal. Jan. 31, 2023) (concluding that the plaintiff's claims were not impliedly preempted because "she disclaims causes of action under the FDCA and regulations promulgated by the FDA and relies on them only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability for her enumerated claims for relief" and because her claim paralleled federal requirements) (internal quotation marks omitted); *Pino v. Birch Benders*, LLC, No. 22-CV-02194-TSH, 2022 WL 4913320, at *4 (N.D. Cal. Oct. 3, 2022) (finding that the plaintiff's claims were not barred by implied preemption because the plaintiffs relied "on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws.").

Here, Plaintiff's claims do not seek to impose any labeling requirement different from those under federal law. The Sherman Law adopts the FDCA and its regulations, which require Defendant's Products to disclose that they are flavored. Defendant's failure to do so was unlawful and violated the Sherman Law. Thus, Plaintiff's UCL claim is not preempted under *Buckman*.

### 2. The Court of Appeals' *Nexus* Decision Is Inapplicable To Consumer Protection Claims.

Defendant argues that *Nexus Pharmaceuticals Inc., v. Central Admixture Pharmacy Services, Inc.*, 48 F.4th 1040 (9th Cir. 2022) overruled the majority approach to implied preemption discussed above, and mandated the outlier view advanced by Judge Seeborg in *Chong v. Kind LLC*, 585 F.Supp.3d 1215 (N.D. Cal. 2022). But *Nexus* did no such thing.

*Chong* held that, to avoid preemption, a traditional state tort law had to predate the FDCA. *Chong*, 585 F.Supp.3d at 1219. And as the Sherman Law post-dated the FDCA, it was *a fortiori* preempted. 585 F. Supp. 3d at 1219. But as Judge Orrick has explained:

> Neither *Buckman* nor *Stengel* held that state statutory claims must predate the FDCA to avoid preemption; *Chong* cites language from the *Stengel* concurrence to find otherwise. *Stengel* actually held that the FDCA does not preempt a state-law claim for violating a state-law duty that parallels a federal-law duty under the [FDCA].

*Brown*, 2022 WL 1471454, at *8 (citation and quotation marks omitted). Thus, *Chong* is inapplicable to claims of implied preemption. Indeed, in *Effinger v. Ancient Organics*, LLC, No. 22-cv-03596-RS, 2023 WL 2214168, at *3, Judge Seeborg acknowledges his departure from other courts in this District on the issue of preemption.

In *Nexus*, the Ninth Circuit addressed preemption in the context of pharmaceutical compounding. The plaintiff trademarked and obtained FDA approval for a drug. 48 F.4th at 1042. The defendant operated compounding pharmacies that compounded its own version of that drug without FDA approval. *Id*. The plaintiff sued, alleging that the defendant's drug was "essentially a copy" of its own and that it was harmed economically based on the defendant's violation of the FDCA. *Id*. at 1043, 1049. The Ninth Circuit held that the plaintiff's claims required proof that the defendant's drug lacked FDA approval and violated a provision of the FDCA "essentially a copy" provision. *Id*. at 1048-49. In this instance, implied preemption applied because the plaintiff's claims rested on its interpretation of the "essentially a copy" provision—"a task reserved for the FDA." *Id*. at 1050-51.

*Nexus* applies *Buckman* and does not discuss *Chong*. Moreover, there is no indication that it applies to the consumer protection statutes at issue here. Consequently, its rationales do not apply to the claims alleged by Plaintiff. Indeed, Plaintiff's claims do not seek to enforce the FDCA. Rather, Plaintiff relies on the FDCA and FDA regulations only to the extent that the laws were enacted or incorporated into the Sherman Law. *See* Compl. at ¶ 68. Thus, Plaintiff's claims are not preempted under *Nexus*.

### 3.    Plaintiff's Claims Are Not Expressly Preempted.

Finally, Defendant baldly asserts that its conduct somehow complied with 21 C.F.R. § 101.22, and that Plaintiff's state law claims are thus preempted. Defendant is correct that insofar as state law claims are expressly preempted if they are not identical to the FDCA. 21 U.S.C. § 343-1(a); *Brown*, No. 2023 WL 2637407, at *3 ("State claims that are not identical to the Food, Drug, and Cosmetic Act ("FDCA") are expressly preempted. 21 U.S.C. § 343-1(a)."). However, Defendant has failed to show that its packaging complies with the FDCA. And as discussed above, Defendant cannot show compliance with the FDCA because the word "flavored" is lacking on the Products packaging.

The fundamental problem with Defendant's argument is it asks the wrong question. Defendant frames the inquiry as whether consumers "commonly expect rectangular squares of keto-friendly, zero sugar, cold cereal to contain the food ingredient banana, apple, mint or honey." Def. Br. at 19. But as the court explained in *Schwartz*:

> [While] plain shortcake may not commonly be expected to contain strawberries or any other fruit ingredient, strawberry shortcake is expected to contain strawberries. … Likewise, while bottled water may not commonly be expected to contain fruit, bottled water labeled "Antioxidant Cocofusion Andes Coconut Lime" could be expected to contain coconut and lime.

2020 WL 5875019, at *4 (emphasis original). Here too, a cereal labeled "Chocolate Banana" could be expected to contain banana. The same applies for apple or apple cider in "Apple Cider Donut", mint for "Mint Chocolate", and honey for "Honey Graham." A reasonable consumer expects that the product contains banana, apple or apple cider, mint and honey, respectively.

Plaintiff plausibly alleged that the name of Defendant's Products (as well as the vignettes and the packaging color scheme) leads reasonable consumers to believe that banana, apple or apple cider, honey and actual ingredients in the Products, as opposed to mere flavor notes. Defendant's failure to label these cereals as flavored violated FDCA requirements. Thus, Plaintiff's claims are not expressly preempted.

*Marino*, 2022 WL 16912389, at *1 (declining to find express preemption where the plaintiff plausibly alleged facts to support that the food labels did not comply with FDA requirements because the food label did not say "flavored").

### E. Plaintiff Adequately Pled A Claim of Breach Of Implied Warranty Of Merchantability.

#### 1. Plaintiff's Implied Warranty Claim Survives For The Same Reasons As Her UCL, FAL, And CLRA Claims.

Defendant argues that Plaintiff's breach of implied warranty claim fails because she failed to plausibly allege a misrepresentation. Def. Br. 16. Defendant is wrong. The implied warranty of merchantability requires goods to "[c]onform to the promises or affirmations of fact made on the container or label." Cal. Com. Code § 2314(2)(f). Plaintiff plausibly alleged that Defendant's Products are misleadingly labeled. *See* discussion supra IV. Argument.C.2; Comp. Compl. at ¶¶ 86-88. Accordingly, Plaintiff's implied warranty claim survives.

#### 2. Privity Is Not Required.

Defendant wrongly claims privity is required for Plaintiff to sustain a claim for breach of implied warranty. Def. Br. 19-20. Plaintiff is not required to be in vertical privity with Defendant because California law recognizes a foodstuffs exception to the privity requirement. *See Mexicali Rose v. Super. Ct.*, 1 Cal. 4th 617, 621 (1992) ("foodstuffs do not fall within the general rule of privity between the manufacturer and the consumer, even though the purchase is made through a retailer") (citation omitted). Therefore, "privity of contract is not required when an implied warranty claim relates to substances intended for human consumption." *Cabrera v. Bayer Healthcare, LLC*, No. LACV1708525JAKJPRX, 2019 WL 1146828, at *10 (C.D. Cal. Mar. 6, 2019); *Ashton v. J.M. Smucker Co.*, No. EDCV20992JGBSHKX, 2020 WL 8575140, at *12 (C.D. Cal. Dec. 16, 2020) ("As the consumers who purchased the [ground coffee] products, Plaintiffs need not show vertical privity with Defendants, as they are the intended beneficiaries of the warranties.").

Here, the Products are cereals meant for human consumption. Hence, Plaintiff's claims are squarely exempt from the privity requirement.

Defendant muddies the waters by arguing that the foodstuffs exception does not apply because Plaintiff does not allege that the Products are unfit for human consumption. Def. Br. 20. Defendant rests

its argument on *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682 (1954). But in *Burr*, the California Supreme Court stated that "an exception to the requirement of privity has been made in cases involving foodstuffs, where it is held that an implied warranty of fitness for human consumption runs from the manufacturer to the ultimate consumer regardless of privity of contract." *Id.* at 695. Thus, the foodstuffs exception requires that a product just be meant or intended for human consumption. *See Ashton*, 2020 WL 8575140, at *12 (stating that "because the Products are foodstuffs meant for human consumption, Plaintiffs are further exempt from the privity requirement" on a breach of implied warranty claim); *Cabrera*, 2019 WL 1146828, at *11 (C.D. Cal. Mar. 6, 2019) ("Privity is not required when the claim relates to food or other substances intended for consumption by consumers.").

In Defendant's last attempt to show why Plaintiff's claim of breach of implied warranty cannot survive, it argues that a consumer's reliance on labels and advertising applies to only express warranty claims. Def. Br. 20. Again, Defendant advances an argument already rejected by this District.

In *Young v. Neurobrands*, LLC, No. C 18-05907 JSW, 2019 WL 13247942, at *6 (N.D. Cal. Feb. 19, 2019), the plaintiffs alleged that defendant's "label representations created implied warranties that the product was …an exclusively naturally-flavored beverage product containing no artificial flavors." The defendant argued that that the breach of implied warranty required the plaintiffs to establish that the product was not reasonably fit for human consumption. *Id*. The court determined that defendant's argument was based "upon the implied warranty of merchantability, not the actual claim pled by [the p]laintiffs based upon the implied warranty that a product is suitable for a particular purpose." *Id*.

Other courts have also determined that the implied warrant of merchantability is breached when products fail to conform to the promises or affirmations contained on packaging or label. *Martinez v. Metabolife Internat., Inc.*, 113 Cal. App. 4th 181, 189, 6 Cal. Rptr. 3d 494, 500 (2003) ("the implied warranty of merchantability, which arises by operation of law, is breached when the goods do not conform to the promises or affirmations contained on the container or label or are not fit for the ordinary purposes for which the goods are used."); *Quiroz v. Sabatino Truffles New York, LLC*, No. SACV170783DOCKES, 2017 WL 8223648, at *11 (C.D. Cal. Sept. 18, 2017) (holding that a breach of implied warranty of merchantability claim was adequate where the plaintiffs alleged that the product did not conform to its

labels' promise or affirmation that it contained an ingredient, because testing revealed the oil in fact does not contain that ingredient).

Plaintiff has alleged that Defendant's Products do not conform to the promises or affirmation of fact advertised on the label. Defendant's product label representations created implied warranties that the product contained premium ingredients such as banana, apple or apple cider, mint, or honey as indicated on the product label. Compl. at ¶ 88. Defendant's Products fail to include any such ingredients, but rather, use "natural flavors." Accordingly, Defendant's Products fail to conform to the affirmations it makes on its labels. Plaintiff's claim of breach of implied warranty therefore survives.

## V.  LEAVE TO AMEND

In the event the Court grants any aspect of Defendant's Motion opposed by Plaintiff, leave to file a First Amended Complaint is respectfully requested.

Fed. R. Civ. P. 15(a)(2) states that a court should "freely give leave" to a party seeking to amend its pleading "when justice so requires."  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). In compliance with this mandate, the "the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted." *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1081 (N.D. Cal. 2014).

A court may deny leave to amend where there is "undue delay, bad faith or dilatory motive [], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman*, 371 U.S. at 182. But none of those circumstances exist here, and thus, Plaintiff's request for leave to file a First Amended Complaint should be granted.

## VI.  CONCLUSION

For the foregoing reasons, Defendant's Motion warrants denial.

Respectfully submitted,

Date: April 4, 2023                    By: /s/ Benjamin Gubernick
                                       Benjamin Gubernick (SBN 321883)

**GUBERNICK LAW P.L.L.C.**
10720 W. Indian School Rd.,
Suite 19, PMB 12
Phoenix, AZ 85037
623-252-6961
ben@gubernicklaw.com

### CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing was served to the following via

the CM/ECF system on April 4, 2023:

AMIN TALATI WASSERMAN, LLP
William P. Cole
Matthew R. Orr
Richard L. Hyde
515 South Flower St., 18th Floor
Los Angeles, CA 90071

Attorneys for Defendant

By: /s/ Benjamin Gubernick
Benjamin Gubernick

AMIN TALATI WASSERMAN, LLP
William P. Cole, Bar No. 186772
Matthew R. Orr, Bar No. 211097
Richard L. Hyde, Bar No. 286023
515 South Flower St., 18th Floor
Los Angeles, CA  90071
Tel:    (213) 933-2330
Fax:    (312) 884-7352
william@amintalati.com
matt@amintalati.com
richard@amintalati.com

Attorneys for Defendant Catalina Snacks Inc.,

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN COLLYER, individual, | Case No.:  4:23-cv-00296-HSG |
| Plaintiff, | **DEFENDANT CATALINA SNACKS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | |
| CATALINA SNACKS INC. | Date: June 15, 2023 |
| Defendant. | Time: 2:00 p.m. |
| | Place: Courtroom 2 |
| | Hon. Haywood S. Gilliam, Jr. |

**NOTICE OF MOTION AND MOTION DISMISS PLAINTIFF'S COMPLAINT**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on June 15, 2023, at 2:00 p.m., or as soon thereafter as may be heard by the Honorable Haywood S. Gilliam, Jr., Defendant Catalina Snacks Inc. will, and hereby does, move the Court for an order dismissing Plaintiff's Complaint and each claim asserted therein.

This motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and on the grounds that Plaintiff fails to state a valid claim upon which relief can be granted and she lacks standing bring claims as to the products she did not purchase. The grounds for the motion are more fully set forth in the accompanying Memorandum of Points and Authorities.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Krishna Kaliannan, the pleadings and files in this action, and such other matters as may be presented at or before any hearing on this motion.


Dated:  March 21, 2023          AMIN TALATI WASSERMAN, LLP
                                William P. Cole
                                Matthew R. Orr
                                Richard L. Hyde

                                /s/ *William P. Cole*
                                William P. Cole

                                Attorneys for Defendant Catalina Snacks Inc.

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L.R. 7-4(A)(3) ............................ - 1 -

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ - 1 -

I.      INTRODUCTION ................................................................................................... - 1 -

II.     PLAINTIFF'S ALLEGATIONS ............................................................................. - 3 -

III.    LEGAL STANDARDS .......................................................................................... - 6 -

IV.     ARGUMENT .......................................................................................................... - 7 -

        A.      Plaintiff Does Not Have Article III Standing to Assert Claims Regarding
                the "Apple Cider Donut" and "Mint Chocolate" Cereal Products ..................... - 7 -

        B.      Plaintiff Fails to State Any Equitable Claims Because She Fails to Plead
                Facts Establishing Her Legal Remedies are Inadequate. .................................. - 8 -

                1.      Plaintiff fails to plausibly allege the label would lead reasonable
                        consumers to believe the cereals contain banana, apple, mint or
                        honey, as opposed to natural flavor extracted from those and other
                        sources ................................................................................................. - 13 -

                2.      Plaintiff's implied warranty claim fails for the same reasons as the
                        CLRA, UCL, and FAL claims. ............................................................ - 16 -

V.      CONCLUSION ...................................................................................................... - 21 -

**TABLE OF AUTHORITIES**

**State Cases**

*Bank of the West v. Sup. Ct. (Industrial Indem. Co.)*, 2 Cal.4th 1254 (1992)............................. 9

*Burr v. Sherwin Williams Co.*, 42 Cal.2d 682 (1954) ............................................................... 20

*Chapman v. Skype*, 220 Cal.App.4th 217 (2013)...................................................................... 11

*Hill v. Roll Int'l Corp.*, 195 Cal.App.4th 1295 (2011).......................................................... 11, 12

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003) ....................................... 8

*Osborne v. Subaru of America, Inc.*, 198 Cal.App.3d 646 (1988)............................................. 20

*Rubenstein v. The Gap, Inc.*, 14 Cal.App.5th 870 (2017)........................................................ 12

**Federal Cases**

*Adams v. I-Flow Corp.*, No. CV09-09550, 2010 WL 1339948 (C.D. Cal. Mar. 30, 2010) ....... 9-

*American Legion v. American Humanist Assn.*, 139 S.Ct. 2067, 204 L.Ed.2d 452 (2019)......... 7

*Anderson v. Jamba Juice Co.*, 888 F.Supp.2d 1000 (N.D. Cal. 2012) ........................................ 8

*Angiano v. Anheuser-Busch Inbev Worldwide, Inc.*, 532 F.Supp.3d 911 (C.D. Cal. 2021) ...... 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 6, 12

*Bates v. United Parcel Service, Inc.*, 511 F.3d 974 (9th Cir. 2007) ........................................... 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 6

*Borchenko v. L'Oreal USA, Inc.*, 389 F.Supp.3d 769 (C.D. Cal. 2019).................................... 17

*Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001)................................... 17, 18

*Chong v. Kind LLC*, 585 F.Supp.3d 1215 (N.D. Cal. 2022) ..................................................... 17

*Cosgrove v. Blue Diamond Growers*, No. 10 Civ. 8993 (VM), 2020 WL 7211218 (S.D.N.Y.
      Dec. 7, 2020) ................................................................................................. 14, 15

*Cruz v. D.F. Stauffer Biscuit Co., Inc.,* No. 20-CV-2402 (PGG), 2021 WL 5119395 (S.D.N.Y.
      2021)................................................................................................... 14, 15, 16

*Dashnau v. Unilever Manufacturing (US), Inc.*, 529 F.Supp.3d 235 (S.D.N.Y. 2021)............. 13

*Davis v. Fed. Election Comm'n*, 554 U.S. 724, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) ..... 7, 8

*Duttweiler v. Triumph Motorcycles (America) Ltd.*, No. 14-cv-04809-HSG, 2015 WL 4941780

(N.D. Cal. 2015) ................................................................................................ 10

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) ..................................... 11

*Effinger v. Ancient Organics LLC*, No. 22-cv-03596-RS, 2023 WL 2214168 (N.D. Cal. Feb. 24, 2023) ........................................................................................................ 18

*Fan v. Home Depot U.S.A., Inc.*, No. 1:21-cv-01355 WBS KJN, 2022 WL 16964099 (E.D. Cal. Nov. 15, 2022) ................................................................................................... 9

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ............................... 11, 12

*Freund v. HP, Inc.*, No.22-cv-03794-BLF, 2023 WL 187506 (N.D. Cal. Jan. 13, 2023) ........... 9

*Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945) .................................... 9

*Guzman v. Polaris Industries Inc.*, 49 F.4th 1308 (9th Cir. 2022) ........................................ 10

*Harris v. McDonald's Corp.*, No. 20-cv-06533-RS, 2021 WL 217833 (N.D. Cal. Mar. 24, 2021).................................................................................................. 12

*Hutchinson v. Deutsche Bank Sec. Inc.*, 647 F.3d 479 (2d Cir. 2011)........................................ 16

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F.Supp.3d 1113 (N.D. Cal. 2018) .. 20

*In re: Macbook Keyboard Litigation*, No. 5:18-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)................................................................................................ 9

*Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889 (N.D. Cal. 2012) ........................................ 7

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)......................................... 7

*Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)................................... 7

*Lorentzen v. Kroger Co.*, 532 F.Supp.3d 901 (C.D. Cal. 2021) ................................................. 8

*Miller v. Ghirardelli Chocolate Co.*, 912 F.Supp.2d 861 (N.D. Cal. 2012) ............................... 8

*Nacarino v. KSF Acquisition Corp.*, --- F.Supp.3d ---, No. 22-cv-04021-MMC, 2022 WL 17178688 (N.D. Cal. Nov. 23, 2022) ................................................................................ 10

*Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmaceuticals, Inc.*, 48 F.4th 1040 (9th Cir. 2022) ............................................................................................. 1, 3, 17, 18

*O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).............................. 9, 10

*Perez v. Nidek Co., Ltd.*, 711 F.3d 1109 (9th Cir. 2013) ....................................................... 17

*Pichardo v. Only What You Need, Inc.*, No. 20-CV493 (VEC), 2020 WL 6323775 (S.D.N.Y.

Oct. 27, 2020) ............................................................................................ 12

*Puterbaugh v. Oorah, Inc.*, No. SACV 21-01593-CJC (DFMx), 2022 WL 2046102 (C.D. Cal.

Jan. 27, 2022) ............................................................................................ 20

*Rhynes v. Stryker Corp.*, No. 10-cv-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011).... 9

*Roper v. Big Heart Pet Brands, Inc.*, 510 F.Supp.3d 903 (E.D. Cal. 2020) ............................. 20

*Shaker v. Nature's Path Foods, Inc.*, No. EDCV 13-1138-GW, 2013 WL 6729802 (C.D. Cal.

Dec. 16, 2013) ............................................................................... 7, 11, 12

*Sonner v. Premier Nutrition Corp.,* 971 F.3d 834 (9th Cir. 2020). ...................................... 9, 10

*Starratt v. Fermented Sciences, Inc.*, No. 22-cv-03895-HSG, 2023 WL 359500 (N.D. Cal. Jan.

23, 2023) .................................................................................................... 11

*Steele v. Wegmans Food Markets, Inc.*, 472 F.Supp.3d 47 (S.D.N.Y. 2020) .......... 12, 13, 14, 15

*Stengel v. Medtronic Inc.*, 704 F.3d 1224 (9th Cir. 2013) ...................................................... 18

*Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.*, No. 14-CV-00362-BLF, 2014 WL

3705350 (N.D. Cal. July 24, 2014) ........................................................................... 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007) ................. 7

*Varela v. Walmart, Inc.*, No. CV 20-448-GW-KSx, 2021 WL 2172827 (C.D. Cal. May 25,

2021) ............................................................................................................. 16

*Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877 (C.D. Cal. 2013) ................................ 7

*Wach v. Prairie Farms Dairy, Inc.*, No. 21 C 2191, 2022 WL 1591715 (N.D. Ill. May 19,

2022) ............................................................................................................. 12

*Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 WL 4951435

(N.D. Cal. Oct. 25, 2021) ....................................................................................... 8

*Zahora v. Orgain LLC*, No. 21 C 705, 2021 WL 5140504 (N.D. Ill. Nov. 4, 2021)................ 13

**Statutes**

21 U.S.C. § 337 ................................................................................................ 17

21 U.S.C. § 343 ......................................................................................... 17, 18

21 C.F.R. § 101.22 ........................................................................................... 19

Cal. Bus. & Prof. Code § 17200 ............................................................................ 6

Cal Bus. & Prof. Code § 17500 ................................................................ 6, 8

Cal. Civ. Code § 1750 ............................................................................... 6

Cal. Civ. Code § 1781 ............................................................................... 9

Cal. Civ. Code § 1782 ............................................................................... 9

Cal. Health & Safety Code § 110390 ....................................................... 17

Cal. Health & Safety Code § 110665 ....................................................... 18

Cal. Health & Safety Code § 110740 ....................................................... 17

Fed. R. Civ. P. 8 ....................................................................................... 6

**STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L.R. 7-4(A)(3)**

1.      ***Standing***. Whether Plaintiff has alleged facts establishing standing to bring claims as to varieties of cereal she did not purchase, where the challenged label representations are not the same.

2.      ***Equitable Relief.*** Whether Plaintiff has stated any claim for equitable relief (restitution), where the Complaint does not make any allegation that her legal remedies are inadequate and does not seek any injunctive relief.

3.      ***Reasonable Consumer Standard (Claims Based on Deception Theory)***. Defendant's Keto-Friendly, zero-sugar cold cereals come in a variety of flavors, including Chocolate Banana, Apple Cider Donut, Mint Chocolate, and Honey Graham. Has Plaintiff failed to allege facts plausibly establishing that a significant portion of reasonable consumers would misunderstand these descriptions to represent the cereal contains the *food* banana, apple, mint or honey, rather than the *flavor* of banana, apple, mint or honey?

4.      ***Implied Preemption***. Whether, under the Ninth Circuit's decision in *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmaceuticals, Inc.*, 48 F.4th 1040 (9th Cir. 2022), and the cases cited therein, Plaintiff's UCL "unlawful" prong claim predicated on alleged violations of FDA regulations incorporated by the Sherman Law is impliedly preempted and violates the prohibition on private enforcement.

5.      ***Breach of Implied Warranty (No Privity)***. Whether Plaintiff's breach of implied warrant claim fails for the additional reason that Plaintiff does not allege privity with Defendant.

6.      ***Punitive Damages.*** Whether the Court should dismiss Plaintiff's claim for punitive damages on her False Advertising Law ("FAL") claim in light of the fact the FAL does not provide for punitive damages.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

This is another "flavor" case of the type dismissed by courts dozens of times over the last several years. This time the product is cold cereal—the type you pour in a bowl and enjoy while perusing some baseball box scores or movie reviews. Specifically, Plaintiff attacks the "Chocolate

Banana," "Apple Cider Donut," "Mint Chocolate," and "Honey Graham" varieties of Defendant's
Catalina Crunch Keto Friendly Cereal line. Plaintiff's theory is that the labels' respective
references to those flavors would mislead consumers to believe that the cereal contains pieces of
the *food* banana, apple (or apple cider), mint, or honey, respectively, and not just the flavor of
those foods.

Plaintiff does not allege that any of the cereals fail to taste as described on the packaging.
Nonetheless, she makes the implausible claim that the label is false or misleading. On behalf of a
proposed class of California consumers, she brings false advertising and breach of warranty
claims. For several reasons, she fails to state any claim.

First, Plaintiff does not have Article III standing to bring claims as to the products she did
not purchase. While Plaintiff alleges that she purchased the "Chocolate Banana" and "Honey
Graham" varieties of Defendant's cereals, she does not claim to have ever purchased the "Apple
Cider Donut" or "Mint Chocolate" products. Even under a "substantially similar" theory of
standing, she has no standing because the label statements "Apple Cider Donut" and "Mint
Chocolate" are obviously not substantially similar to "Chocolate Banana" and "Honey Graham."

Second, Plaintiff cannot pursue any equitable claims for restitution because she has failed
to plead any facts establishing her legal remedies are inadequate. Plaintiff does not seek injunctive
relief and her claims for restitution are based on the same theory as her claims for money damages.

Third, Plaintiff fails to allege facts plausibly establishing that reasonable consumers would
be misled. Courts have repeatedly held that reasonable consumers would understand this type of
reference to a product's flavor describes how the product tastes, not what it contains. Plaintiff
does not claim the products fail to taste like the flavors stated on their respective labels. She fails
to state any UCL, FAL, CLRA or implied warranty claim.

Fourth, to the extent Plaintiff's Unfair Competition Law claim is based on alleged
violations of FDA regulations (or the Sherman Law via incorporation of the FDA regulations), it
is impliedly preempted. The Ninth Circuit has recently affirmed that implied preemption applies
where "[t]he purported state law violation is of a law that says in substance 'comply with the
FDCA,' not a traditional common law tort." *Nexus Pharmaceuticals, Inc. v. Central Admixture*

*Pharmacy Services, Inc.*, 48 F.4th 1040, 1050 (9th Cir. 2022).

Fifth, the implied warranty of merchantability claim also fails for lack of privity. Plaintiff is not in privity with Defendant because she alleges she made her purchases from grocery stores, not from Defendant.

Sixth, Plaintiff purports to seek punitive damages under her FAL claim, even though punitive damages are not available under the FAL.

## II.   PLAINTIFF'S ALLEGATIONS

Defendant Catalina Snacks Inc. sells Catalina Crunch Keto Friendly Cereals in numerous varieties, including Chocolate Banana, Honey Graham, Mint Chocolate, and Apple Cider Donut. (*See* Complaint, Doc. 1, ¶ 2.) As stated on the front labels, the Keto Friendly Cereals contain 0g sugar per serving. (*Id.* ¶¶ 31, 33-36.)

Plaintiff alleges that, in 2022, she purchased the Chocolate Banana and Honey Graham flavors of the Catalina Crunch Keto Friendly cereals from grocery stores in Monterey County, California. (Doc. 1, ¶ 49.) In making her purchases, she does not claim to have relied on anything other than the cereals' packaging. (*Id.* ¶ 50.) The front of the Chocolate Banana packaging is depicted below:



(*See* Decl. of Krishna Kaliannan ("Kaliannan Decl."), Ex. 1; Doc. 1, ¶ 31.)

Here is the ingredient list on the backside of the Chocolate Banana cereal packaging, as set forth in the Complaint:

> **INGREDIENTS: CATALINA FLOUR (PEA PROTEIN, POTATO FIBER, NON-GMO CORN FIBER, CHICORY ROOT FIBER, GUAR GUM), TAPIOCA FLOUR, HIGH OLEIC SUNFLOWER OIL, COCOA POWDER, BAKING POWDER, NATURAL FLAVORS, SEA SALT, CALCIUM CARBONATE, STEVIA EXTRACT, MONK FRUIT EXTRACT.**

(*Id.* ¶ 33; *see also* Kaliannan Decl., Ex. 1.)

The front label of the Honey Graham cereal is depicted below, followed by its ingredient list:



(*See* Kaliannan Decl., Ex. 2; Doc. 1, ¶ 36.)

Plaintiff does not allege to have ever purchased the Appel Cider Donut or Mint Chocolate flavors of Defendant's Keto Friendly Cereals. But she includes those products' front labels and ingredient lists in the Complaint as well. (*Id.* ¶ 34-35.)

Plaintiff alleges that the statements "Chocolate Banana," "Apple Cider Donut," "Mint Chocolate" and "Honey Graham" lead reasonable consumers to believe that the cereals contain

banana, apple, mint and honey as an ingredient (respectively). (Doc. 1, ¶ 3.) By "banana," "apple,"
"mint," and "honey," she means *whole* pieces of banana, apple (or apple cider), mint and honey,
as opposed to the flavoring of banana, apple, mint or honey. (*See id.* ¶ 12.)

      The cereals' ingredient lists state the products include "Natural Flavors." (*Id.* ¶¶ 33-36.)
Plaintiff does not allege that the products contain any artificial flavors. As noted, she also does
not allege that any of the products fail to taste as described.

      Plaintiff alleges that, had she known that the Chocolate Banana and Honey Graham cereals
did not contain whole banana and honey, respectively, she "would not have purchased the
Defendant's cereals, or only been willing to pay less[.]" (*Id.* ¶¶ 50-52.) On behalf of herself and
a proposed class of California consumers, she asserts the following claims: (1) violation of
California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (2)
violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (3)
violation of California's False Advertising Law ("FAL"), Cal Bus. & Prof. Code §§ 17500, et
seq.; and (4) breach of implied warranty. She simultaneously seeks damages and equitable
restitution. (*Id.*, ¶¶ 71, 76.) The Complaint does not seek any injunctive relief.

## III.   LEGAL STANDARDS

      The court must dismiss a claim if it fails to state a claim upon which relief can be granted.
Fed. R. Civ. P. 8. Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-
me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). The
complaint must state sufficient factual matter, accepted as true, to state a claim for relief that is
plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial
plausibility only if the plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

      The court does not accept as true "legal conclusions," "labels and conclusions" or a
"formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678. A "naked
assertion" devoid of "further factual enhancement" does not suffice. *Id.* (citation omitted).

      The label images for the products at issue are properly considered by this Court under the
doctrine of incorporation by reference. When ruling on a Rule 12 motion, a court may look beyond

the pleadings at "documents incorporated by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499 (2007). A document is incorporated by reference into the complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (internal quotations and citation omitted). Here, the product labels are the basis of all of Plaintiff's claims and her Complaint references them extensively. *See Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 903 n.7 (N.D. Cal. 2012) (product label properly considered "because it is referenced in the complaint"); *Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877, 882-83 (C.D. Cal. 2013) (taking notice of product labels and packaging referenced in the complaint); *Shaker v. Nature's Path Foods, Inc.*, No. EDCV 13-1138-GW, 2013 WL 6729802, at *5 n.7 (C.D. Cal. Dec. 16, 2013).

## IV.   ARGUMENT

### A.   Plaintiff Does Not Have Article III Standing to Assert Claims Regarding the "Apple Cider Donut" and "Mint Chocolate" Cereal Products.

Because standing is a threshold issue, Defendant addresses it first. *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Plaintiff does not have standing to bring any claims regarding the products she did not purchase.

Plaintiff does not claim to have ever purchased the "Apple Cider Donut" or "Mint Chocolate" products. She does not and cannot allege that she has suffered any injury traceable to the labeling of those two products. Furthermore, the statements "Apple Cider Donut" and "Mint Chocolate" are not even similar to each other, let alone to "Chocolate Banana" or "Honey Graham."

Under Article III, a federal court may resolve only "a real controversy with real impact on real persons." *American Legion v. American Humanist Assn.*, 139 S.Ct. 2067, 2013, 204 L.Ed.2d 452 (2019). Article III "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The standing requirement applies to each claim and each remedy sought. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008). That a suit may be a class action "adds nothing to the question of standing,

for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Id.* at 357 (internal citations omitted).

Defendant recognizes this Court has previously concluded that a named plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase " 'so long as the products and alleged misrepresentations are substantially similar.' " *Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 WL 4951435, at *2 (N.D. Cal. Oct. 25, 2021) (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F.Supp.2d 861, 869 (N.D. Cal. 2012)). Defendant respectfully submits this "substantial similarity" analysis is "inconsistent with the basic concept of standing." *Lorentzen v. Kroger Co.*, 532 F.Supp.3d 901, 908 (C.D. Cal. 2021). "The similarity of a product, by itself, says nothing about whether a party suffered an injury traceable to the allegedly wrongful conduct of another." *Id.* at 909. Plaintiff has not suffered any injury traceable to whether Defendant labeled any of its products "Apple Cider Donut" or "Mint Chocolate."

Regardless, however, even under a "substantial similarity" analysis, Plaintiff has failed to allege facts establishing standing with respect to the unpurchased products. The "substantial similarity" theory requires that "the *alleged misrepresentations* [be] substantially similar." *Yamasaki*, 2021 WL 4951435, at *2 (emphasis added). This is not a case, for example, where the different varieties of all the challenged products had labels bearing the same allegedly false "All Natural" representation or "No Preservatives" representation. *See, e.g., Anderson v. Jamba Juice Co.*, 888 F.Supp.2d 1000, 1006 (N.D. Cal. 2012) (finding substantial similarity where the same challenged marketing claim—"All Natural"—appeared on all of the at-home smoothie kits). What a consumer may or may not expect in a cereal labeled "Apple Cider Donut" is not the same issue as what a consumer may or may not expect in a cereal labeled "Chocolate Banana." Plaintiff has no standing to bring any claims as to the "Apple Cider Donut" and "Mint Chocolate" products.

**B.      Plaintiff Fails to State Any Equitable Claims Because She Fails to Plead Facts Establishing Her Legal Remedies are Inadequate.**

UCL and FAL claims are equitable claims providing for equitable relief only. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003) (the UCL and FAL provide

a private party with only two potential remedies: an injunction and restitution); *Bank of the West v. Sup. Ct. (Industrial Indem. Co.*), 2 Cal.4th 1254, 1266 (1992) (neither actual nor compensatory damages may be awarded under the UCL). The CLRA provides both legal remedies (money damages) and equitable remedies. Cal. Civ. Code §§ 1781, 1782.

Here, the Complaint does not seek any injunctive relief, but Plaintiff purports to seek restitution. (*See* Dkt. 1, ¶ 71.) Before she can avail herself of a federal court's equitable jurisdiction, she must demonstrate that she lacks an adequate remedy at law. *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 105-06 (1945); *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 842-44 (9th Cir. 2020). Both Supreme Court and Ninth Circuit case law require the plaintiff to *plead* facts establishing legal remedies are inadequate. *O'Shea v. Littleton*, 414 U.S. 488, 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)(holding that a complaint seeking equitable relief failed because it did not allege "the inadequacy of remedies at law"); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)("[T]he operative complaint does not allege that Sonner lacks an adequate legal remedy."); *accord See Freund v. HP, Inc.,* No.22-cv-03794-BLF, 2023 WL 187506, at *6 (N.D. Cal. Jan. 13, 2023) (the plaintiffs "must plead that they lack an adequate remedy at law").*A., Inc.*, No. 1:21-cv-01355 WBS KJN, 2022 WL 16964099, at *3 (E.D. Cal. Nov. 15, 2022) ("*Sonner* clearly requires the operative complaint to allege that the plaintiff lacks an adequate legal remedy."). "Where the claims pleaded by a plaintiff may entitle her to an adequate remedy at law, equitable relief is unavailable." *Rhynes v. Stryker Corp.*, No. 10-cv-5619 SC, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011).

In *Sonner*, another food-labeling class action, the court held that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." 971 F.3d at 843-44. There, the plaintiff brought claims for restitution under the UCL and CLRA, as well as a claim for money damages under the CLRA. *Id.* at 838. The plaintiff subsequently dropped her claim for damages under the CLRA but attempted to continue to pursue her claims for restitution under the CLRA and UCL. *Id.* The court dismissed the claims for restitution because plaintiff had an adequate legal remedy—namely, the CLRA damages claim that she had

voluntarily decided to drop. The Ninth Circuit affirmed, holding the plaintiff had failed to plead how an award of damages under the CLRA would be inadequate in any way compared to restitution. *Id.* at 844 (holding that the complaint failed to allege Sonner lacked an adequate remedy at law and citing *O'Shea*, 414 U.S. at 502).

The Ninth Circuit has rejected the idea that *Sonner*'s outcome somehow depended on its procedural posture. In *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308 (9th Cir. 2022), the court explained that "*Sonner*'s holding applies to equitable UCL claims where there is a viable CLRA damages claim regardless of whether the plaintiff has tried to avoid the bar to equitable jurisdiction through gamesmanship." *Id.* at 1313. "Nothing in *Sonner*'s reasoning suggested that its holding was limited to cases in which a party had voluntarily dismissed a damages claim to avoid a jury trial." *Id.*

Plaintiff seeks to recover damages under her CLRA claim. (Doc. 1, ¶¶ 76.) The CLRA claim is based on the same alleged conduct and theory as the equitable claims for restitution—namely, Plaintiff's allegations that Defendant misrepresented the Products' ingredients and, had she known, she either would not have purchased the Products or would have only been willing to pay less for them. (*Id.* ¶52.) Plaintiff does not plead any facts which, if true, would show that an award of damages would not be an adequate remedy. *See Sonner*, 971 F.3d at 844) ("the operative complaint does not allege that Sonner lacks an adequate legal remedy"); *Nacarino v. KSF Acquisition Corp.*, --- F.Supp.3d ---, No. 22-cv-04021-MMC, 2022 WL 17178688, at *5 (N.D. Cal. Nov. 23, 2022) (granting motion to dismiss equitable claims for restitution where the plaintiff's claims for damages were based on the same alleged theory—namely, that had plaintiff known the truth, she would not have purchased the products or would have paid less); *Duttweiler v. Triumph Motorcycles (America) Ltd.*, No. 14-cv-04809-HSG, 2015 WL 4941780, at *8 (N.D. Cal. 2015). In fact, the Complaint does not even discuss the adequacy of legal remedies; it does not include a single reference to the issue.

This Court has previously found that legal remedies may be inadequate where the plaintiff has adequately alleged that he or she faces prospective injury potentially warranting injunctive relief. *See Starratt v. Fermented Sciences, Inc.*, No. 22-cv-03895-HSG, 2023 WL 359500, at *3

(N.D. Cal. Jan. 23, 2023). Here, however, Plaintiff does not bring any claim for injunctive relief and does plead facts suggesting she faces any risk of future harm.

Because Plaintiff has failed to plead any facts establishing her legal remedies may be inadequate, she states no claim for equitable relief. The Court should dismiss the UCL and FAL claims and also should dismiss any claim for equitable relief under her remaining causes of action.

**C.     The Complaint States No Claim Because Plaintiff Does Not Plausibly Allege Deception.**

The "reasonable consumer" standard governs Plaintiff's claims under the CLRA, UCL, and FAL. *Chapman v. Skype*, 220 Cal.App.4th 217, 230 (2013); *Hill v. Roll Int'l Corp.*, 195 Cal.App.4th 1295, 1304 (2011); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).[1] To state a claim under the CLRA, UCL or FAL, Plaintiff must allege facts establishing that the challenged statements or other representations on the Product label are likely to deceive a reasonable consumer. *Chapman*, 220 Cal.App.4th at 226.

"Likely to deceive implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Id.* at 227. Instead, "the phase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*; *accord Hill*, 195 Cal.App.4th at 1301 (holding the standard is not a least sophisticated consumer, nor an unwary consumer, but rather the court looks to the ordinary, reasonable consumer within the larger population); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016); *Shaker v. Nature's Path Foods, Inc.*, No. EDCV 13-1138-GW, 2013 WL 6729802, at *3 (C.D. Cal. Dec. 16, 2013) (deception must be probable, not just possible). A plaintiff's allegation that she was *personally* deceived is insufficient to show that a reasonable consumer is likely to be deceived. *Hill*, 195 Cal.App.4th at 1303-04. In fact, a plaintiff's allegation that a Product label is "deceptive" is "plainly . . . a legal conclusion that is not deemed true even

---

[1] To the extent Plaintiff attempts to allege a UCL "unlawful" claim based on alleged violations of FDA regulations, Defendant addresses that claim in Section IV.D, *infra*.

on a motion to dismiss." *Harris v. McDonald's Corp.*, No. 20-cv-06533-RS, 2021 WL 217833, at *2 (N.D. Cal. Mar. 24, 2021) (dismissing claims that soft serve ice cream described on menu boards as "Vanilla" or "Vanilla Cone" would mislead reasonable consumers to believe the ice cream was flavored by real vanilla); *see also Wach v. Prairie Farms Dairy, Inc.*, No. 21 C 2191, 2022 WL 1591715, at *3 (N.D. Ill. May 19, 2022) (plaintiffs' allegations about what a reasonable consumer would supposedly expect "are conclusory statements that I need not accept").

At the pleading stage, courts dismiss CLRA, UCL and FAL claims "when the facts alleged fail as a matter of law to show such a likelihood [of deception]." *Rubenstein v. The Gap, Inc.*, 14 Cal.App.5th 870, 877 (2017) (affirming sustaining of demurrer); *accord Hill*, 195 Cal.App.4th at 1301 (affirming sustaining of demurrer); *Freeman v. Time, Inc.*, 68 F.3d 285, (9th Cir. 1995) (affirming granting of motion to dismiss). "[W]here a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Shaker*, 2013 6729802, at *3 (quotation and citation omitted). "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 669.

Here, Plaintiff's theory of deception is that the words "Chocolate Banana," "Apple Cider Donut," "Mint Chocolate" and "Honey Graham" would lead reasonable consumers to conclude the cereals specifically contain banana, apple, mint or honey (respectively), as opposed to oils, extracts or other natural flavoring components obtained from banana, apple, mint or honey or other natural sources. Before turning to the defects in Plaintiff's claims, Defendant notes that much of the Complaint is devoted to Plaintiff's arguments about FDA regulations, including numerous references to Chapter 21 of the Code of Federal Regulations. But Plaintiff's "claims regarding FDA regulations are not relevant to determining whether a label is deceptive or misleading" to reasonable consumers. *Pichardo v. Only What You Need, Inc.*, No. 20-CV493 (VEC), 2020 WL 6323775, at *3 n.6 (S.D.N.Y. Oct. 27, 2020) (granting motion to dismiss); *accord Steele v. Wegmans Food Markets, Inc.*, 472 F.Supp.3d 47, 50 (S.D.N.Y. 2020) (granting motion to dismiss, and observing that "[t]he point here is not conformity with this or that standard (which is left to authorities to regulate) but whether the marketing presentation was deceptive");

*Dashnau v. Unilever Manufacturing (US), Inc.*, 529 F.Supp.3d 235, 243 (S.D.N.Y. 2021) ("Plaintiffs' citation to various federal regulations do not establish that a reasonable consumer is likely to be misled by the words 'vanilla bean ice cream' on the Product's front label."); *Zahora v. Orgain LLC*, No. 21 C 705, 2021 WL 5140504, at *4 (N.D. Ill. Nov. 4, 2021) (same).

1. **Plaintiff fails to plausibly allege the label would lead reasonable consumers to believe the cereals contain banana, apple, mint or honey, as opposed to natural flavor extracted from those and other sources.**

There is no allegation that the cereals do not taste as described. Plaintiff alleges she purchased the Chocolate Banana and Honey Graham products but does not claim any dissatisfaction with their taste. She doesn't, for example, allege that the Chocolate Banana tasted like blueberry or that the Honey Graham tasted like peanut butter. There is also no allegation that the cereals' flavoring is not natural. The Complaint does not even take the position that the cereals' natural flavors were not derived from banana, apple, mint and honey. As has been repeatedly recognized by courts in similar cases involving other common natural flavors, reasonable consumers of cold cereal would understand that "Chocolate Banana," "Apple Cider Donut," "Mint Chocolate," and "Honey Graham" refer to a *flavor*, not an ingredient.

*Steele*, 472 F.Supp.3d 47, is on point. In *Steele*, the plaintiffs alleged they were deceived by Wegmans Vanilla Ice Cream package to believe the ice cream "got its vanilla flavor from vanilla beans or vanilla bean extract, when in fact the ice cream got most of its vanilla flavor from some non-vanilla source." *Id.* at 49. The district court granted a motion to dismiss without leave to amend, holding that, as a matter of law, the Wegmans packaging was not deceptive. The court explained:

> Although they are processed almost simultaneously by the buyer, to analyze the total effect of the messages on the container it is useful to consider them in sequence. The buyer's first desire is for ice cream, and when he is in the frozen food area he must select, from many choices (chocolate, lemon, mint, lime, etc.) the one he wants. Thus the large-type "Vanilla" is of immediate use. Of course he is not looking for a bowl of vanilla, and the next largest words confirm that the container holds ice cream. Those who prefer natural ingredients will note that it has natural vanilla flavor, and no artificial flavors. Evidently there are various natural substances which have a vanilla flavor. Those interested in the actual ingredients can read the list, which mentions neither vanilla beans

nor extracts, but they will not learn the components, amounts or proportions of the Natural Flavor.

That is where the container's disclosures start, and where they stop. Where is the deception? What is misleading, or misrepresented?

*Id.* at 50. Finding no deception, the court dismissed the complaint. *Id.* at 51.

Similarly, in *Cosgrove v. Blue Diamond Growers*, No. 10 Civ. 8993 (VM), 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020), the plaintiffs alleged that almond milk labeled "Vanilla" was misleading because the product was not flavored by "authentic vanilla" but instead derived its flavor from vanillin, a naturally occurring substance obtained from tree bark which simulates vanilla flavor. *Id.* at *1. The court dismissed the complaint, finding reasonable consumers would understand the almond milk's reference to "Vanilla" "to refer to a flavor and not to vanilla beans or vanilla extract as an ingredient." *Id.* at *3. The court explained:

That association, of "Vanilla" as a flavor and not an ingredient, is borne out by consumers' practical use of the representation. For example, here, the consumer in the grocery store is looking, first and foremost, for almond milk—not vanilla. The large font "Vanilla" on the front of the Product allows the consumer to quickly understand the flavor of the almond milk and differentiate between products. . . . The Product makes no additional representation about how that flavor is achieved. Thus, without more, the "Vanilla" representation would be misleading only if the Product did not actually taste like vanilla, but Plaintiffs concede it does. Accordingly, use of the "Vanilla" representation on the Product is not misleading.

*Id.* (citations omitted).

*Cruz v. D.F. Stauffer Biscuit Co., Inc.,* No. 20-CV-2402 (PGG), 2021 WL 5119395 (S.D.N.Y. 2021), also is instructive. There, the product at issue was Stauffer's Lemon Snap Cookies. *Id.* at *1. The package's front label stated "LEMON SNAPS" and included an image of three lemons (two whole and one cut in half). *Id.* The plaintiffs alleged the labeling was false and misleading because it would supposedly lead reasonable consumers to believe "that there was a substantive amount of real lemon in the Product." *Id.* at *4. The plaintiffs "point[ed] to the image of lemons on the packaging as creating a dispositive impression that the Product contains predominantly real lemons." Id. at *5. The court dismissed the complaint, finding the plaintiffs had "failed to plausibly allege that a reasonable consumer is likely to be misled by the Product's packaging." Id. at *6. The court noted the plaintiffs' allegations that "reasonable consumers

would 'expect [the Product] to be flavored exclusively' or predominantly with real lemons are 'conclusory statements that the Court is not required to accept.' " *Id.* (citation omitted). "Plaintiffs do not allege that the Product does not taste like lemons, and therefore a consumer reasonably expecting a lemon-flavored cookie as a result of the packaging is not misled." *Id.*

The same applies here. Plaintiff fails to plausibly allege that reasonable consumers—who buy a *breakfast cereal* called "Chocolate Banana," "Apple Cider Donut," "Mint Chocolate," or "Honey Graham""—would believe those descriptors refer to ingredients, as opposed to the distinguishing *flavors* of the different varieties. The buyer's desire is for cereal, and he or she must select a flavor variety. Thus, the front label statement "Chocolate Banana," for example, is of immediate use. Of course, the buyer is not looking for a chocolate-covered banana, so the front-label statements "Keto Friendly Cereal", "0G SUGAR" and "11G PROTEIN" confirm the package contains a keto-conscious breakfast cereal. Just as in *Steele, Cosgrove*, and *Cruz*, there is nothing deceptive. The message communicated is that the package contains a breakfast cereal with a chocolate banana taste. This is not complicated. And Plaintiff makes no allegation that the cereal fails to have a chocolate banana taste (or the other designated tastes, as the case may be). "Where is the deception? What is misleading, or misrepresented?" *Steele*, 472 F.Supp.3d at 50. Nothing. If a consumer wants to know more about the cereal's flavoring, she can view the ingredient list, which will inform her the cereal is naturally flavored. Again, there is no deception.

Furthermore, the pieces of cereal depicted on the front of the packages are small, flat, slightly concave squares. (Kaliannan Decl., Exs. 1 and 2; Doc. 1, ¶¶ 31, 34, 35, 36.) Across the different flavor varieties, those pieces of cereal all look the same except for their *color*. There is certainly nothing about the cereal pieces that remotely suggest they contain pieces of banana, apple, or mint. The packaging never states "made with" or "made from" banana, apple, mint or honey (much less donuts). *See Cruz*, 2021 WL 5119395, at *6 ("In addition, the product label contains no ingredient claim such as 'made with lemons' or 'made from lemons.'"). Also, the front labels state these are *keto*-friendly cereals containing 0g sugar. Reasonable consumers understand that banana, apple, and honey contain sugar. This renders only more implausible the notion that reasonable consumers would believe the cereal contains the *ingredients* banana, apple

or honey (and yet somehow 0g sugar).

In sum, Plaintiff has failed to plead facts plausibly establishing that the packaging is false or misleading to reasonable consumers. She therefore fails to state any CLRA or FAL claim, or any UCL claim based on a deception theory. As no amendment to the Complaint can change the products' labels, the Court should dismiss those claims without leave to amend. *See Hutchinson v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 491 (2d Cir. 2011) (court may dismiss without leave to amend when amendment would be futile).

### 2. Plaintiff's implied warranty claim fails for the same reasons as the CLRA, UCL, and FAL claims.

Plaintiff's breach of implied warranty claim is based on the same product labels and the same implausible theory of misrepresentation. For the reasons already explained, Plaintiff's fail to plausibly allege a misrepresentation. Therefore, the warranty cause of action also fails to state a claim. *See Cruz*, 2021 WL 5119395, at *7 (where plaintiffs failed to plausibly allege the product label was false or misleading under the consumer protection statutes, and where the warranty claims were based on the same allegations about the same product label, the warranty claims also "fail as a matter of law"); *Varela v. Walmart, Inc.*, No. CV 20-448-GW-KSx, 2021 WL 2172827, at *9 (C.D. Cal. May 25, 2021)(as "Plaintiff has not pled any plausible claims based on misrepresentations under the applicable consumer protection laws . . . [h]er warranty causes of action, which are based on the same 'Vitamin E Skin Oil' label, fail for the same reasons").

### D. To the Extent Based on Alleged Violation of FDA Regulations, Plaintiff's UCL "Unlawful" Claim is Impliedly Preempted.

Plaintiff's "fraudulent" and "unfair"-prong claims under the UCL fail for the reasons already discussed: she fails to plausibly allege that Defendant has misrepresented the products' ingredients. To the extent her UCL "unlawful"-prong claims is predicated on the same theory of deception (by incorporating the purported violations of the CLRA and FAL, or purported violations of Sherman Law provisions prohibiting "false or misleading" advertising generically,

*see* Doc. 1, ¶ 67), her UCL "unlawful" claim fails for the same reasons.[2]

However, to the extent Plaintiff's UCL "unlawful" claim is based on purported violations of FDA regulations (incorporated by the Sherman Law) (see Doc. 1, ¶ 67:13-15), the claim is impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001), as recently explained in *Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F.4th 1040, 1050 (9th Cir. 2022), and *Chong v. Kind LLC*, 585 F.Supp.3d 1215 (N.D. Cal. 2022). Implied preemption in this context rests on two principles: (1) a consumer may not impose labeling requirements under state law that are different from those imposed under federal law (21 U.S.C. § 343-1); and (2) a consumer has no ability to privately enforce federal labeling law (21 U.S.C. § 337(a)). The Federal Food, Drug, and Cosmetic Act ("FDCA") not only provides no private right of action but expressly provides that all enforcement is to be by the U.S. government (e.g., FDA) and state agencies. *Id.* The Ninth Circuit has explained that these two principles create only a "narrow gap" through which a private party's state-law claim must fit to escape preemption by the FDCA: "The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by [21 U.S.C. § 343-1], but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (quotation and citation omitted).

Here, Plaintiff's allegations of a purported regulatory violation fail to navigate this narrow gap. Put simply, Plaintiff's UCL "unlawful" claim is implied preempted by federal law because "Plaintiff is suing not only for conduct that [allegedly] violates the FDCA but 'because the conduct violates the FDCA.'" *Borchenko v. L'Oreal USA, Inc.*, 389 F.Supp.3d 769, 774 (C.D. Cal. 2019); *accord Chong*, 2022 WL 464149, at *4; *Stengel v. Medtronic Inc.*, 704 F.3d

---

[2] In paragraph 67 of the Complaint, Plaintiff cites several sections of the California Health & Safety Code, but many are merely sections prohibiting false or misleading advertising. *See* Cal. Health & Safety Code § 110390 (prohibiting "false or misleading" advertising), § 110395 (same); § 110400 (receiving or delivering falsely advertised products), § 110660 (same). Plaintiff also cites California Health & Safety Code § 110740, but that section concerns artificial flavoring. The Complaint does not allege that Defendant's cereals are artificially flavored.

1224, (9th Cir. 2013) (holding the FDCA impliedly preempts state law claim that "originates from, is governed by, and terminates according to federal law") (quotation omitted). While the Supreme Court noted in *Buckman* that "certain state-law causes of action that parallel federal [] requirements" may escape implied preemption, to make that escape the state-law claims must "be relying on *traditional state tort* law which had predated the federal enactments in question[.]" *Buckman*, 531 U.S. at 353 (emphasis added).

California's Sherman Law incorporates the FDA's food labeling requirements. Cal. Health & Safety Code § 110665 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulations adopted pursuant thereto."). The Ninth Circuit recently held that a claim for alleged violation of this type of state statutory adoption of FDA regulations is *not* a traditional state tort law theory and is implied preempted. *Nexus*, 48 F.4th at 1048, 1050. The court explained the plaintiff's claims were impliedly preempted because they were "based on state laws that incorporate federal law, rather than on traditional tort law." *Id.* at 1048. "[A] necessary element of [the plaintiff's] claim is the alleged violation of the FDCA." *Id.* "The purported state law violation is of a law that says in substance 'comply with the FDCA,' not a traditional common law tort." *Id.* at 1050. Therefore, "[t]he prohibition of private enforcement applies squarely, as does 'implied preemption.'" *Id.* at 1050-51.

Defendant recognizes that district courts have split over whether UCL "unlawful" claims are impliedly preempted where predicated on alleged violations of FDA regulations incorporated by the Sherman Law. *See Effinger v. Ancient Organics LLC*, No. 22-cv-03596-RS, 2023 WL 2214168, at *3 (N.D. Cal. Feb. 24, 2023) (discussing split). The Ninth Circuit's reasoning and holding in *Nexus* resolves that split and makes clear that preemption applies. The Ninth Circuit has "been protective of the FDA's statutory monopoly on enforcement authority." *Nexus*, 498 F.4th at 1048. Private causes of action predicated on violation of a state statute "that says in substance 'comply with the FDCA'" are preempted because they "may indeed 'stand as an obstacle' to FDA's enforcement discretion by enabling what the FDA regards as over-enforcement." *Id.* at 1048, 1050. Accordingly, the Court should dismiss the UCL claim to the

extent based on any alleged violation of Sherman Law provisions incorporating FDA regulations.

Finally, even apart from preemption, Plaintiff has failed to plead facts plausibly establishing a regulatory violation in any event. The regulations provide that if the food "contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla[.]'" 21 C.F.R. 101.22(i)(1). Plaintiff does not allege the cereals contain any artificial flavor simulating, resembling or reinforcing the characterizing flavors of "Chocolate Banana," "Apple Cider Donut," "Mint Chocolate" or "Honey Graham." Thus, the regulation permitted Defendant to use those names of the characterizing flavors (i.e., Chocolate Banana, Apple Cider Donut, Mint Chocolate, or Honey Graham). The exception is "[i]f the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in 'strawberry shortcake', and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient," the name of the characterizing flavor may be immediately preceded by the word "natural," and shall be immediately followed by the word "flavored," e.g., "natural strawberry flavored shortcake." 21 C.F.R. § 101.22(i)(1)(i). For the reasons already explained, the Complaint fails to allege facts plausibly establishing that consumers commonly expect rectangular squares of keto-friendly, zero sugar, cold cereal to contain the food ingredient banana, apple, mint or honey (as opposed to those flavors).[3] Thus, Plaintiff has failed even to plausibly allege a regulatory violation (which claim would be implied preempted anyway).

### E. The Breach of Implied Warranty Claim Also Fails for Lack of Privity.

The breach of implied warranty claim fails for another independent reason. There is no privity between Plaintiff and Defendant.

---

[3] Strawberry shortcake, of course, is commonly expected to include *sliced strawberries* in whipped cream between layers of shortcake. No such common expectation exists with respect to keto-friendly cold cereal pieces.

Under California law, an action for breach of an implied warranty requires that the plaintiff be in privity with the defendant. *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 695-96 (1954); *Angiano v. Anheuser-Busch Inbev Worldwide, Inc.*, 532 F.Supp.3d 911, 920 (C.D. Cal. 2021). A buyer and seller stand in privity if they are in adjoining links in the distribution chain; an end consumer who buys from a retailer is not in privity with a manufacturer. *Osborne v. Subaru of America, Inc.*, 198 Cal.App.3d 646, 656 n.6 (1988). Plaintiff does not allege she purchased the Products from Defendant. She alleges she purchased them from grocery stores in Monterey County. (Dkt. 1, ¶ 49.)

The "foodstuffs" exception to the privity requirement does not apply because that exception only applies to the implied warranty of fitness for human consumption. *Burr*, 42 Cal.2d at 695. Plaintiff does not allege Defendant's cereals are unfit for human consumption, but rather merely that they do not contain particular ingredients as opposed to flavors. Further, the exception to privity for cases where a purchaser of a product relied on representations made by the manufacturer in labels or advertising applies only to *express warranty* claims, not implied warranty claims. *Id.* at 696 (the exception for cases "where representations are made by means of labels or advertisements, it [sic] applicable only to express warranties"); *Angiano*, 532 F.Supp.3d at 920. Thus, Plaintiff fails to state a claim for breach of implied warranty.

### F.     The Court Should Dismiss Plaintiff's Claim for Punitive Damages.

Plaintiff seeks punitive damages on her FAL cause of action. (Doc. 1, ¶ 85.) She does not refer to punitive damages anywhere else in the Complaint. As already noted, the FAL provides only for equitable relief; punitive damages are not available. *See Puterbaugh v. Oorah, Inc.*, No. SACV 21-01593-CJC (DFMx), 2022 WL 2046102, at *3 (C.D. Cal. Jan. 27, 2022); *Roper v. Big Heart Pet Brands, Inc.*, 510 F.Supp.3d 903, 926 (E.D. Cal. 2020). The Court should dismiss the claim for punitive damages.[4]

---

[4] While the Complaint does not refer to any claim for punitive damages under the CLRA, any such claim would fail regardless because Plaintiff also has not alleged facts establishing that any officer, director, or managing agent of Defendant acted with fraud, oppression, or malice. *See Roper*, 510 F.Supp.3d at 925-926; *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F.Supp.3d 1113, 1148 (N.D. Cal. 2018); *Taiwan Semiconductor Mfg. Co. v. Tela Innovations,*

**V.      CONCLUSION**

For the foregoing reasons, the Court should grant the Motion to Dismiss in its entirety.


Dated:  March 21, 2023                    AMIN TALATI WASSERMAN, LLP
                                          Matthew R. Orr
                                          William P. Cole
                                          Richard L. Hyde


                                          /s/ *William P. Cole*
                                          William P. Cole

                                          Attorneys for Defendant Catalina Snacks, Inc.

*Inc.*, No. 14-CV-00362-BLF, 2014 WL 3705350, at *6 (N.D. Cal. July 24, 2014) ("[A] company simply cannot commit willful and malicious conduct—only an individual can.").

## CERTIFICATE OF SERVICE
(United States District Court)

I hereby certify that on the 21st day of March, 2023, I caused the electronic filing of the foregoing document, through the CM/ECF system. The aforementioned document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ *William P. Cole*
William P. Cole

Benjamin Gubernick (SBN 321883)
**GUBERNICK LAW P.L.L.C.**
10720 W. Indian School Rd.,
Suite 19, PMB 12
Phoenix, AZ 85037
623-252-6961
ben@gubernicklaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN COLLYER, an individual;<br><br>                    Plaintiff,<br><br>        v.<br><br>CATALINA SNACKS INC., a Delaware Corporation;<br><br>                    Defendant. | CASE NO.:<br><br>**COMPLAINT**<br><br>[CLASS ACTION]<br><br>1.  Violation of California's Unfair Competition Law;<br>2.  Violation of California's Consumers Legal Remedies Act;<br>3.  Violation of California's False Advertising law;<br>4.  Violation of California's Implied Warranty of Merchantability.<br><br>(Jury Trial Demanded) |

Karen Collyer ("Plaintiff") through undersigned counsel, on behalf of herself and all others similarly situated, brings this Class Action Complaint against Catalina Snacks Inc. ("Defendant" or "Catalina Snacks") and alleges upon personal knowledge as to her own actions, and upon information and belief and counsel's investigation and all other matters, as follows:

## NATURE OF ACTION

1.      This case seeks recovery for consumers who overpaid for misleadingly labeled Catalina Snacks products.

2.      Catalina Snacks manufactures "keto friendly" cereals that are sold under the brand name "Catalina Crunch" at grocery stores throughout California and online to California consumers. Catalina Crunch cereals come in varieties including "Chocolate Banana", "Honey Graham", "Mint Chocolate", and "Apple Cider Donut" (collectively, the "Products").

3.      The labels on the Products lure in California consumers who wish to purchase foods made from actual fruits and premium ingredients. However, as described below, the Products do not contain the promised ingredients. The Chocolate Banana contains no banana, the Apple Cider Donut contains no apple, the Honey Graham contains no honey, and the Mint Chocolate does not have mint.

4.      Defendant's actions are misleading and in direct violation of California law. Plaintiff and all other similarly situated California consumers are entitled to damages and all other remedies the Court deems appropriate.

## PARTIES

5.      Plaintiff Karen Collyer ("Plaintiff") is an individual who, at all relevant times, has resided in Monterrey County, California.

6.      Defendant Catalina Snacks Inc. is a Delaware corporation. Its principal place of business is 6101 North Keystone, Suite 100 #1104, Indianapolis, Indiana, 46220, USA.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction pursuant to the Class Action Fairness Act, 23 U.S.C. § 1332(d), because: (1) there are at least one hundred members of the proposed class; (2) the aggregated claims of the individual Class Members exceed the sum value of $5,000,000 exclusive of interest and costs; and (3) Defendant and more than two-thirds of the proposed class are citizens of different states.

8.     The Court has personal jurisdiction over Defendant because Defendant has sufficient minimal contacts with the State of California and has intentionally availed itself of stores and markets in the State of California such as to make the exercise of jurisdiction by this Court permissible under traditional standards of fair play and substantial justice.

9.     Venue is proper in this district because Plaintiff resides in the Northern District of California and purchased the subject products in the Northern District of California.

10.     In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files an affidavit establishing that, at various times throughout the class period, she purchased the products at issue in this case at retail stores in this District. Plaintiff's affidavit is attached as Exhibit A.

## DIVISIONAL ASSIGNMENT

11.     Pursuant to Civil Local Rule 3-2(c-d), this action should be assigned to the San Jose Division, as a substantial part of the events giving rise to the claims arose in Monterey County.

## GENERAL ALLEGATIONS

### Consumers demand real ingredients as opposed to "natural flavor."

12.     Consumers are increasingly willing to pay a premium to purchase foods that contain real fruits and vegetables. Such ingredients are perceived as healthful, in stark contrast to products that merely attempt simulate their presence using "natural flavor", a term defined by the Food and Drug Administration ("FDA") as:

> [E]ssential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.[1]

For nonorganic foods, "dozens of other ingredients like preservatives and solvents … can go into a so-called natural flavor. … While food processors must list all of the ingredients on a food label, flavor manufacturers do not have to disclose their ingredients. They can add synthetic solvents, preservatives,

---
[1] 21 C.F.R. § 101.22(a)(3).

emulsifiers, carriers and other additives to a flavor that qualifies as natural under current regulations."[2]

13.     Natural flavor is used to flavor food to create enhanced flavor and addictive foods.[3] Natural flavors are made by scientists, who extract chemicals responsible for a flavor from a natural source.[4] Natural flavors can be highly processed and be comprised of chemical additives.[5]

14.     Indeed, "[o]n an ingredient label, 'natural flavor' can be a sort of black box, enclosing dozens of components, including flavor chemicals, flavor modifiers, and solvents, none of which have to be individually disclosed. Many companies will use additives like propylene glycol when they can disguise them under the benign sounding catchall 'natural flavors'—even if they would reject them as individually listed ingredients."[6]

15.     Unsurprisingly then, "lab-created artificial and natural flavors are not in demand; consumers want real ingredients from nature."[7]

**The statutory scheme governing food labeling.**

16.     The federal government and California legislatures recognize that consumers rely on the front label of food packaging to understand the nutritional value of a product and to make educated purchasing decisions. These regulatory schemes have been enacted to prevent unscrupulous market participants from passing off their products as something they are not. A manufacturer's compliance with food labeling laws is imperative to prevent consumers from being deceived or misled.

17.     The Federal Food, Drug, and Cosmetic Act ("FDCA") "promote[s] honesty and fair

---

[2] *Are 'Natural Flavors' Really Natural?*, The New York Times, Feb. 1, 2019, available at https://www.nytimes.com/2019/02/01/well/eat/are-natural-flavors-really-natural.html.

[3] *Is There Really Anything Natural About Natural Flavors?*, Journal of Health & Biomedical Law, April 4, 2019, available at https://sites.suffolk.edu/jhbl/2019/04/04/is-there-really-anything-natural-about-natural-flavors/.

[4] *Is 'Natural Flavor' Healthier Than 'Artificial Flavor'?* NPR, November 3, 2017, available at https://www.npr.org/sections/thesalt/2017/11/03/560048780/is-natural-flavor-healthier-than-artificial-flavor.

[5] Food Revolution Network, October 25, 2019, available at https://foodrevolution.org/blog/natural-flavors/.

[6] *Clean label's dirty little secret*, The Counter, February 1, 2018, available at https://thecounter.org/clean-label-dirty-little-secret/.

[7] *Top Trends Driving Change In The Food Industry*, Forbes, February 16, 2019, available at https://www.forbes.com/sites/juliabolayanju/2019/02/16/top-trendsdriving-change-in-the-food-industry/?sh=302c9e636063.

dealing in the interest of consumers[.]"[8]

18.     California has adopted the FDCA in the Sherman Food, Drug, and Cosmetic Law ("Sherman Law").[9]

19.     Misbranded foods are prohibited to enter interstate commerce under the FDCA.[10]

20.     A food is misbranded if its label is "false or misleading".[11]

21.     The FDCA lists specific rules governing the content of food labels. Pursuant to the authority granted by the FDCA, the FDA promulgated regulations that apply to the labeling of food.

22.     The front label of a food product (the "principal display panel") must comply with federal and California food labeling laws when natural flavor is used as the primary flavoring agent to give a food its characterizing flavor as depicted by words or vignette on the principal display panel.

23.     As required by the FDA:

(i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:

(1) If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that:

(i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake".

(ii) If none of the natural flavor used in the food is derived from the product whose flavor is simulated, the food in which the flavor is used shall be labeled either with the flavor of the product from which the flavor is derived or as "artificially

---

[8] 21 U.S.C. § 341.

[9] Cal. Health & Safety Code § 110100 (a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.").

[10] 21 U.S.C. § 331.

[11] 21 U.S.C. § 343(a).

flavored."

        (iii) If the food contains both a characterizing flavor from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor, the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor" in letters not less than one-half the height of the letters used in the name of the characterizing flavor.[12]

24.    The FDA has stated that compliance with labeling regulations is necessary to prevent consumer deception. Thus:

[Although] it is not possible to set out all the circumstances under which a flavor representation is or is not implied[,] [a]ny use of a vignette showing a fruit or vegetable clearly constitutes such a representation…. [and] use of a specific fruit flavor in the food name, such as 'orange soda,' does constitute such a representation and requires compliance with §1.12(i).[13]

25.    The FDA has also stated that where flavor representations are made on the principal display panel "it is necessary to establish a uniform system of flavor designation to dispel any confusion or misrepresentation."[14] That is because "*[t]he difference between a product that contains a characterizing food ingredient and a product that contains no such ingredient … is not at all subtle, and is very important to the value of the product and thus to the consuming public*."[15]

### **Defendant Catalina Snacks.**

26.    Catalina Snacks develops, markets, sells, and distributes "keto friendly" cereals, cookies, and snacks. According to its website, Catalina Snacks has "[c]ombin[ed] nutritional science with culinary arts" to "create[] delicious, healthier products that help you achieve a better life."[16] The website further claims that "[e]ach one" of the company's products is "made with protein, fiber, good fats, *real ingredients*, and very little to no sugar."[17]

27.    The purported benefits of Defendant's products do not come cheap. Consumers can expect

---

[12] 21 C.F.R. § 101.22(i)(1)(i)-(iii).

[13] 38 Fed. Reg. 33285 (December 3, 1973).

[14] *Id*. at 33286.

[15] *Id*. at 33285 (emphasis added).

[16] Catalina Crunch, About, available at https://us.catalinacrunch.com/pages/about-us (last accessed January 18, 2023).

[17] Catalina Crunch, About, "Our Mission" available at https://us.catalinacrunch.com/pages/about-us (last accessed January 18, 2023).

to pay around $7 to $10 for a nine ounce bag of Catalina Crunch cereal.

28.     Defendant operates in a crowded space. Catalina Crunch cereals compete directly with brands including WonderWorks Keto Friendly Cereal, Simple Truth Keto, HighKey Low Carb Keto Cereal, and NuTrail Keto Granola.

29.     Despite the plethora of competing products on grocery store shelves, Defendant has managed to sell over 11 million bags of cereal.[18] As explained below, Defendant owes at least some of that success to its willingness to flout the laws that its competitors abide by.

**Catalina Snacks Misleading Packaging.**

30.     Four varieties of Catalina Crunch cereal are "Chocolate Banana", "Honey Graham", "Mint Chocolate" and "Apple Cider Donut", all of which come in similar packaging and utilize substantially similar misrepresentations to induce consumer overpayment.

31.     As displayed on Defendant's website, the front side packaging of the "Chocolate Banana" cereal is color-coordinated in brown and yellow.[19] The front packaging showcases pictures of real banana slices and states "Chocolate Banana" in prominent lettering.



---

[18] Catalina Crunch, About, "Our Mission" available at https://us.catalinacrunch.com/pages/about-us (last accessed January 18, 2023) (declaring "11 Million Pouches Of Cereal Sold In 2021").

[19] Catalina Crunch available at https://us.catalinacrunch.com/products/cereal/product-handle?variant=42528015974622 (last accessed January 19, 2023).

32.     The "Chocolate Banana" cereal indicates its characterizing flavors as chocolate and banana by name, vignette, and packaging color scheme. But contrary to Defendant's representations on the label, the "Chocolate Banana" cereal contains no banana.

33.     The backside packaging of the "Chocolate Banana" cereal lists its ingredients, none of which contain banana. Instead, the product's banana taste appears to come from "natural flavors[.]"[20]



34.     Similarly, the "Apple Cider Donut" variety contains no apple or apple cider. Instead, it contains natural flavors.[21]



---

[20] *Id.*

[21] Catalina Crunch available at https://us.catalinacrunch.com/products/apple-cider-donut-cereal (last accessed January 16, 2023).

35.     Likewise, the "Mint Chocolate" variety has no mint, but rather natural flavors.[22]



36.     And finally, the "Honey Graham" variety lacks honey. Again, only "natural flavors" are mentioned in the ingredients list.[23]



37.     All four of the absent characterizing ingredients listed above—bananas, mint, honey, and apples—are premium ingredients and are substantially more expensive than the laboratory-created

---

[22] Catalina Crunch, Mint Chocolate 8-Pack, available at https://us.catalinacrunch.com/products/single-serve-cereal?variant=42874622116062 (last accessed January 19, 2023).

[23] Catalina Crunch, Cereal, available at https://us.catalinacrunch.com/products/cereal?variant=42528015876318 (last accessed January 19, 2023).

"natural flavors" included in the Products.

38.     The absent characterizing ingredients are also commonly perceived by consumers as healthful. Bananas are known as "an excellent choice for anyone interested in eating healthy."[24] Honey offers cardiovascular, gastrointestinal, and neurologic benefits.[25] Mint is rich in nutrients and "is also a potent source of antioxidants, especially when compared to other herbs and spices."[26] Likewise apples and apple cider offer "amazing health benefits."[27] A reasonable consumers looking at the Products' principal display panel would believe that the Products contain these premium, healthful ingredients.

39.     The uniform labeling system imposed by the FDA has been in place for decades, and almost all products on grocery store shelves comply with it. The consuming public is familiar with viewing, and differentiating, food products based on the product's principal display panel. The reasonable consumer understands that a food product marked "flavored" refers to the flavor of the food. Likewise, when the word "flavored" is not present, reasonable consumers believe that the ingredients referred to on the principal display panel are contained in the product.

40.     Defendant's misbranded cereals deceive and mislead reasonable consumers, who pay a price premium for the Products, under the belief that the characterizing ingredients depicted on the principal display panel are contained in the cereal.

41.     If consumers knew the truth about the Products, they would either purchase a different product, or only be willing to pay substantially less.

**Competing cereals.**

42.     Defendant competes with other keto friendly cereals. Unlike the Products, however, competing cereals have front labels that contain accurate information about the product's ingredients.

---

[24] *11 Evidence-Based Health Benefits of Bananas*, Healthline, October 29, 2021, available at https://www.healthline.com/nutrition/11-proven-benefits-of-bananas.

[25] *Honey*, May Clinic, available at https://www.mayoclinic.org/drugs-supplements-honey/art-20363819#:~:text=Studies%20suggest%20that%20honey%20might,wound%20healing%2C%20particularly%20in%20burns.

[26] *8 Health Benefits of Mint*, Healthline, December 13, 2017, available at https://www.healthline.com/nutrition/mint-benefits#TOC_TITLE_HDR_2.

[27] *Apple Cider: Are There Health Benefits?*, WebMD, available at https://www.webmd.com/diet/health-benefits-apple-cider.

43. By way of example, the "Chocolate" WonderWorks Keto Friendly Cereal accurately states that the cereal is flavored, and the "Peanut Butter" variety contains the characterizing ingredient as depicted on the box, so no flavoring language is required on the front label.



**INGREDIENTS**

Milk Protein Concentrate, Erythritol, Allulose, Whey Protein Isolate, Inulin, Palm Kernel Oil, Cocoa Processed With Alkali, Palm Oil, Soluble Corn Fiber, Canola Oil, Rice Starch, Natural Flavor, soy Lecithin, Salt, Stevia Extract. Vitamin E (mixed tocopherols) Added to Retain Freshness.



**INGREDIENTS**

Milk Protein Concentrate, Allulose, Peanut Flour, Erythritol, Peanut Butter (peanuts, salt), Whey Protein Isolate, Inulin, Palm Kernel Oil, Palm Oil, Canola Oil, Rice Starch, Soy Lecithin, Natural Flavor, Stevia Extract. Vitamin E (mixed tocopherols) Added to Retain Freshness.

44. Defendant also competes with Simple Truth Keto cereals. Simple Truth Keto cereals are sold in varieties such as "Blueberry Naturally Flavored" and "Cinnamon Naturally Flavored" thus alerting consumers to the fact that they do not contain actual blueberries or cinnamon. Unlike the Products, Simple Truth Keto cereals properly inform consumers that its cereals are "naturally flavored".

 

45.     Defendant recognizes that consumers make decisions on which product to purchase based on the front label of a food. Defendant misleads and deceives consumers by failing to denote which of its cereals are flavored, and by doing so gains an unfair competitive advantage over competing products adjacent to Catalina Crunch on grocery store shelves.

46.     Defendant's conduct is especially egregious because Defendant is fully aware of its obligations under federal and California labeling laws, and willfully chooses to ignore them. On December 6, 2021, Defendant was sued in the Central District of California for failing to include cinnamon in "Cinnamon Toast" Catalina Crunch cereal. *Majak v. Catalina Snacks*, No. 2:21-cv-09445-SB-MAR (C.D. Cal. Dec. 6, 2021). The plaintiff's alleged a violation under California's Unfair Competition Law's "unlawful" prong, based on Defendant's failure to comply with the Sherman Law and FDCA. The case was voluntarily dismissed several months later.

47.     Since the filing of the 2021 case, Defendant not only continued to sell misbranded cereal, but also launched a new variety—the Apple Cider Donut—that failed to comply with the Sherman Law

and FDCA.

48.     Notably, after Plaintiff sent a written demand to Catalina Snacks in December of 2022, new varieties of Defendant's cereals started appearing on shelves, such as "Honey Graham Flavored Cereal" and "Mint Chocolate Flavored Cereal":

 

**Plaintiff Karen Collyer.**

49.     During 2022, Plaintiff purchased the Chocolate Banana and Honey Graham varieties of Catalina Crunch cereal at grocery stores in Monterey County, California.

50.     At the time of the purchases, Plaintiff believed that Defendant's representations on the front label were true. She believed that she was purchasing cereals that contained the fruits and the premium ingredients represented on the package by name, vignette, and color scheme.

51.     Plaintiff was misled and deceived by Defendant's labeling of its cereals.

52.     Plaintiff would not have purchased the Defendant's cereals, or only been willing to pay less, had she known the truth about Defendant's cereals.

53.     Plaintiff was injured in fact and lost money because of Defendant's conduct.

**CLASS ALLEGATIONS**

54.     Plaintiff brings this action on behalf of herself and all others similarly situated as a class

action pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent the following class of persons:

**The Class**: All persons in California who, during the Class Period, purchased the Products. The Class Period starts at the earliest date allowed under the applicable statute of limitations and continues to the date of judgment.

55.     Specifically excluded from the Class are: (a) any officers, directors or employees of Defendant; (b) any judge assigned to hear this case (or spouse or immediate family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and (e) any attorneys of record and their employees.

56.     Plaintiff reserves the right to amend or modify the class definition with greater specificity, by further division into subclasses, or by limitation to particular issues.

57.     **Numerosity**. Class members are so numerous that joinder of each individual class member would be impracticable and unfeasible, and the disposition of their claims as a class will benefit the parties, the Court, and the interests of justice.

58.     **Ascertainability**. The proposed Class is ascertainable from objective criteria.

59.     **Commonality and Predominance**. There is a well-defined community of interest among the Class's members and common questions of law and fact predominate over questions affecting individual members. These common questions include whether: (1) the Product's labeling violated California's Sherman Act; (2) whether the Product's labeling would mislead a reasonable person; and (3) whether the Products conform to the promises or affirmations of fact made on the label.

60.     **Typicality**. Plaintiff's claims are typical of those of all Class members in that they arise out of the same course of conduct by Defendant and enable her to seek the same relief under the same theories of recovery. The effort Plaintiff undertakes to pursue her claims will significantly benefit Class members because of the identical nature of the issues across the Class.

61.     **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff shares a common interest with Class members. Plaintiff has suffered an injury-in-fact because of Defendant's conduct. Plaintiff has retained counsel who are competent and experienced in complex class action litigation, and have the financial and other resources

necessary to vigorously prosecute this matter. Plaintiff and her counsel will prosecute this action vigorously and faithfully for the benefit of the Class. Plaintiff has no interests contrary to the Class and will fairly and adequately protect the interests of the Class.

62. **Community of Interest.** The proposed Class has a well-defined community of interest in the questions of fact and law to be litigated. These common questions of law and fact predominate. The named Plaintiff's claims are typical of those of Class members.

63. **Superiority**. Class certification is superior to the litigation of a multitude of cases. Class adjudication will conserve judicial resources and avoid the possibility of inconsistent rulings. Moreover, there are members of the Class who are unlikely to join or bring an action due to, among other reasons, their reluctance to spend large sums of time and money to recover a relatively modest individual recovery. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among Class members in relation to the benefits received. The damages and other potential recovery for each individual member of the Class are modest relative to the burden and expense of individual prosecution of these claims. Few, if any, Class members could or would seek legal redress individually. Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

64. In the alternative, the above-referenced Class may be certified because:

(a) The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members' claims which would establish incompatible standards of conduct for Defendant;

(b) The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the Class who are not parties to the adjudications, or which would substantially impair or impede the ability of other members to protect their interests.

**FIRST CAUSE OF ACTION**
**Violation of the Unfair Competition Law ("UCL")**
**(Cal. Bus. & Prof Code §§ 17200, et seq.)**
**(Class Claim)**

65.     Plaintiff incorporates all preceding and succeeding allegations as if fully set forth in this paragraph.

66.     Defendant has violated and continues to violate California's UCL (Cal. Bus. & Prof. Code § 17200, *et seq*.), which prohibits unlawful, unfair, and fraudulent business acts or practices.

67.     Defendant's business acts and practices are unlawful in that they violate: (1) the Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq*. for the reasons set forth below; (2) the False Advertising Law, Cal. Bus. Prof.  Code § 1750, *et seq*. for the reasons set forth below; (3) the advertising provisions of the Sherman Law (Article 3), including California Health & Safety Code §§ 110390, 110395 and 110400; (4) the misbranded food provisions of the Sherman Law (Article 6), including California Health & Safety Code §§ 110660, 110665, 110705, 110740, 1100760 110765, and 110770; and (5) FDA regulations incorporated into the Sherman Law, including 21 C.F.R. 101.3, 101.4, 101.13, 101.14, and 101.22.

68.     Defendant's acts also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. In particular, Defendant misrepresents that the Products contain fruits or premium ingredients that they do not have.

69.     Defendant's conduct also constitutes unfair business practices in that, by mislabeling the Products, Defendant gains an unearned competitive advantage over products that do not misrepresent the ingredients they contain.

70.     As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class suffered a foreseeable injury-in-fact, in that they either would not have purchased the Products or would have only been willing to pay significantly less.

71.     Plaintiffs and Class members are entitled to equitable relief, including an order requiring Defendant to pay restitution to Plaintiff and the Class of amounts obtained because of its unfair, deceptive, and fraudulent practice.

**SECOND CAUSE OF ACTION**
**Violation of the Consumers Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(Class Claim)**

72.    Plaintiff incorporates all preceding and succeeding allegations as if fully set forth in this paragraph.

73.    Defendant is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770 and has provided "goods" within the meaning of Cal. Civ. Code §§ 1761 (b) and 1770.

74.    Plaintiff and members of the Class are "consumers" within the meaning of Cal. Civ. Code §§ 1761(d) and 1770 and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761 and 1770.

75.    Through its false representations about the ingredients contained in the Products, Defendant has violated at least the following CLRA provisions:

a.    Defendant has made improper representations related to the source, sponsorship, approval, or certification of the Products, in violation of Cal. Civil Code § 1770(a)(2);

b.    Defendant has made improper representations related to the sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have, in violation of Cal. Civil Code § 1770(a)(5);

c.    Defendant has improperly represented that its goods are of a particular standard, quality, or grade, when they are not, in violation of Cal. Civil Code § 1770(a)(7);

d.    Defendant have advertised the Products with intent to not sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

76.    On December 6, 2022, Defendant received a letter that complied with Section 1782(d) of the CLRA, which was prepared by Plaintiff's counsel on behalf of Plaintiff and the Class. Copies of the letter were also sent via certified mail, return receipt requested, to the stores where the transactions occurred. The letter gave Defendant notice of the allegations in this Complaint. Defendant failed to take corrective action. As a result, Plaintiff requests monetary damages and all other applicable relief available under the CLRA.

77.    Plaintiff also requests that the Court award her costs and reasonable attorney's fees.

78.     A CLRA affidavit signed by Karen Collyer is attached as Exhibit A.

### THIRD CAUSE OF ACTION
### Violation of the False Advertising Law ("FAL")
### (Cal. Bus. & Prof. Code §§ 17500, *et seq*.)
### (Class Claim)

79.     Plaintiff incorporates all preceding and succeeding allegations as if fully set forth in this paragraph.

80.     The FAL, codified at Cal. Bus. & Prof. Code section 17500, *et seq*., prohibits "unfair, deceptive, untrue or misleading advertising[.]"

81.     Defendant violated the FAL by making representations and statements (by commission and omission) that led reasonable consumers to believe that the Products contained ingredients they did not have.

82.     In making and disseminating the representations alleged in this Complaint, Defendant knew or should have known that the representations were untrue or misleading.

83.     Defendant's misrepresentations were specifically designed to induce reasonable consumers, like Plaintiff and Class members, to purchase the Products.

84.     As a foreseeable and proximate result of Defendant's deceptive advertising, Plaintiff and Class members were duped into purchasing or overpaying for the Products.

85.     Plaintiff and Class members are entitled to all damages available under the FAL, including punitive damages, as well as reasonable attorney's fees and costs of suit.

### FOURTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (Class Claim)

86.     Plaintiff incorporates all preceding and succeeding allegations as if fully set forth in this paragraph.

87.     By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and label.

88.     As alleged in this Complaint, the Products do not conform to the promises or affirmation of fact made on the label. Accordingly, Defendant has breached the implied warranty of merchantability.

*See* Cal. Com. Code § 2314(2)(f).

89.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Class have been denied the benefit of the bargain and have suffered damages in the form of overpayment. Accordingly, Plaintiff seeks damages, restitution, or disgorgement of ill-gotten gains to compensate Plaintiff and the Class.

90.     On December 6, 2022, Defendant received a letter prepared by Plaintiff's counsel notifying Defendant of its breach of implied warranty. Defendant has not addressed the issues which gave rise to this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly aggrieved persons, pray for judgment against Defendant as follows:

1.     For an order certifying this matter as a class action and appointing Plaintiff and her undersigned counsel to represent the Class in this litigation;

2.     A judgment requiring Defendant to pay damages as required by law, as well as reasonable attorneys' fees and costs of suit;

3.     Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

Date: January 20, 2023

By:_____
Benjamin Gubernick (SBN 321883)
**GUBERNICK LAW P.L.L.C.**
10720 W. Indian School Rd.,
Suite 19, PMB 12
Phoenix, AZ 85037
623-252-6961
ben@gubernicklaw.com

# UNITED STATES DISTRICT COURT

**FOR THE DISTRICT OF** Northern District of California

### Form 1. Notice of Appeal from a Judgment or Order of a
### United States District Court

U.S. District Court case number: 3:23-cv-00296-AMO

Notice is hereby given that the appellant(s) listed below hereby appeal(s) to the United States Court of Appeals for the Ninth Circuit.

Date case was first filed in U.S. District Court: 1-20-23

Date of judgment or order you are appealing: 2-23-24

Docket entry number of judgment or order you are appealing: 40

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

◉ Yes   ○ No   ○ IFP was granted by U.S. District Court

**List all Appellants** *(List **each** party filing the appeal. Do not use "et al." or other abbreviations.)*

Karen Collyer

Is this a cross-appeal?  ○ Yes   ◉ No

If yes, what is the first appeal case number?

Was there a previous appeal in this case?  ○ Yes   ◉ No

If yes, what is the prior appeal case number?

Your mailing address (if pro se):

City:            State:        Zip Code:

Prisoner Inmate or A Number (if applicable):

**Signature** /s/ Benjamin Gubernick   **Date** 3-20-24

*Complete and file with the attached representation statement in the U.S. District Court*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

Form 1                                                      ER 129 of 141
Rev. 01/2021

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

Karen Collyer

Name(s) of counsel (if any):

Benjamin Gubernick of Waldo Gubernick Law Advocates LLP

Address: 717 Texas Ave., Houston, TX 77002, Ste. 1200

Telephone number(s): 734-678-5169

Email(s): ben@wglawllp.com

Is counsel registered for Electronic Filing in the 9th Circuit?   ◉ Yes    ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

Catalina Snacks Inc.

Name(s) of counsel (if any):

William P. Cole, Matthew R. Orr, and Richard L. Hyde of AMIN TALATI WASSERMAN, LLP

Address: 515 South Flower St., 18th Floor, Los Angeles, CA 90071

Telephone number(s): (213) 933-2330

Email(s): william@amintalati.com, matt@amintalati.com, richard@amintalati.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Continued list of parties and counsel: *(attach additional pages as necessary)*

## **Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?    ○ Yes    ○ No

## **Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 6**                                    *2*                                    *rev. 01/01/23*

ER 131 of 141

ADRMOP,APPEAL,CLOSED

# U.S. District Court
# California Northern District (San Francisco)
# CIVIL DOCKET FOR CASE #: 3:23-cv-00296-AMO

| | |
|---|---|
| Collyer v. Catalina Snacks Inc. | Date Filed: 01/20/2023 |
| Assigned to: Judge Araceli Martinez-Olguin | Date Terminated: 02/23/2024 |
| Demand: $5,000,000,000 | Jury Demand: Plaintiff |
| Cause: 28:1332 Diversity-Fraud | Nature of Suit: 370 Other Fraud |
| | Jurisdiction: Diversity |

**Plaintiff**

**Karen Collyer**                    represented by    **Benjamin Gubernick**
Gubernick Law PLLC
10720 W. Indian School Rd
Suite 19
PMB 12
Phoenix, AZ 85037
734-678-5169
Email: ben@gubernicklaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Catalina Snacks Inc.**              represented by    **Matthew Ryan Orr**
Amin Wasserman Gurnani, LLP
515 South Flower Street
Ste 18th and 19th Floors
Los Angeles, CA 90071
213-985-7206
Email: morr@awglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Paul Cole**
Amin Wasserman Gurnani, LLP
515 South Flower Street
18th Floor

Los Angeles, CA 90071
213-933-2330
Fax: 312-884-7352
Email: wcole@awglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/20/2023 | 1 | COMPLAINT against Catalina Snacks Inc. ( Filing fee $ 402, receipt number ACANDC-17914596.). Filed byKaren Collyer. (Attachments: # 1 Affidavit Exhibit A, # 2 Civil Cover Sheet Civil Cover Sheet) (Gubernick, Benjamin) (Filed on 1/20/2023) (Entered: 01/20/2023) |
| 01/20/2023 | 2 | Certificate of Interested Entities by Karen Collyer (Gubernick, Benjamin) (Filed on 1/20/2023) (Entered: 01/20/2023) |
| 01/20/2023 | 3 | Application for Refund, Receipt Number ACANDC-17914561 by Karen Collyer. (Gubernick, Benjamin) (Filed on 1/20/2023) (Entered: 01/20/2023) |
| 01/20/2023 | 4 | Case assigned to Magistrate Judge Virginia K. DeMarchi.<br><br>Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening.<br><br>Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 2/3/2023. (ark, COURT STAFF) (Filed on 1/20/2023) (Entered: 01/20/2023) |
| 01/20/2023 | 5 | WAIVER OF SERVICE Returned Executed filed by Karen Collyer. Service waived by Catalina Snacks Inc. waiver sent on 1/20/2023, answer due 3/21/2023. (Gubernick, Benjamin) (Filed on 1/20/2023) (Entered: 01/20/2023) |
| 01/23/2023 | 6 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 4/18/2023. Initial Case Management Conference set for 4/25/2023 01:30 PM in San Jose,** |

| | | **Courtroom 2, 5th Floor. (lsk, COURT STAFF) (Filed on 1/23/2023) Modified on 2/6/2023 (ecg, COURT STAFF). (Entered: 01/23/2023)** |
|---|---|---|
| 01/26/2023 | 7 | Refund Status re 3 Application for Refund Approved. (kep, COURT STAFF) (Filed on 1/26/2023) (Entered: 01/26/2023) |
| 01/31/2023 | 8 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Karen Collyer.. (Gubernick, Benjamin) (Filed on 1/31/2023) (Entered: 01/31/2023) |
| 01/31/2023 | 9 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because either (1) a party has not consented to the jurisdiction of a Magistrate Judge, or (2) time is of the essence in deciding a pending judicial action for which the necessary consents to Magistrate Judge jurisdiction have not been secured. You will be informed by separate notice of the district judge to whom this case is reassigned. *This is a text only docket entry; there is no document associated with this notice.* (amk, COURT STAFF) (Filed on 1/31/2023) (Entered: 01/31/2023) |
| 01/31/2023 | 10 | This case will be randomly reassigned to a District Judge outside the San Jose Division pursuant to the Caseload Rebalancing Pilot Program approved by the Court effective March 1, 2018. For information, visit our web page at https://cand.uscourts.gov/notices/northern-district-extends-caseload-rebalancing-pilot-program/. (bw, COURT STAFF) (Filed on 1/31/2023) (Entered: 01/31/2023) |
| 01/31/2023 | 11 | Case reassigned to Judge Haywood S Gilliam, Jr. for all further proceedings. Magistrate Judge Virginia K. DeMarchi no longer assigned to case. Reassignment Order signed by Clerk on 1/31/2023 (bw, COURT STAFF) (Filed on 1/31/2023) (bw, COURT STAFF). (Entered: 01/31/2023) |
| 01/31/2023 | 12 | CLERK'S NOTICE SETTING CASE MANAGEMENT CONFERENCE FOR REASSIGNED CIVIL CASE.Notice is hereby given that a Case Management Conference has been set for April 25, 2023, before Judge Haywood S. Gilliam, Jr., at 2:00 p.m. Case Management Statement due by April 18th. Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. All future filings should reflect the case number as 4:23-cv-00296-HSG.<br><br>The April 25th proceeding will be held by AT&T Conference Line. The parties are advised that in the event of an audio problem, counsel should |

be prepared to attend the hearing via Zoom conference at the Courts direction. The court circulates the following conference number to allow the equivalent of a public hearing by telephone.

For conference line information, see: https://apps.cand.uscourts.gov/telhrg/

All counsel, members of the public and press please use the following dial-in information below to access the conference line:

Dial In: 888-808-6929

Access Code: 6064255

The Court may be in session with proceedings in progress when you connect to the conference line. Therefore, mute your phone if possible and wait for the Court to address you before speaking on the line. For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. The parties are further advised to ensure that the Court can hear and understand them clearly before speaking at length.

PLEASE NOTE: Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited. See General Order 58 at Paragraph III.

*(This is a text-only entry generated by the court. There is no document associated with this entry.)*(ndr, COURT STAFF) (Filed on 1/31/2023) (Entered: 01/31/2023)

| 03/21/2023 | 13 | NOTICE of Appearance by William Paul Cole (Cole, William) (Filed on 3/21/2023) (Entered: 03/21/2023) |
| 03/21/2023 | 14 | Corporate Disclosure Statement by Catalina Snacks Inc. (Cole, William) (Filed on 3/21/2023) (Entered: 03/21/2023) |
| 03/21/2023 | 15 | Certificate of Interested Entities by Catalina Snacks Inc. (Cole, William) (Filed on 3/21/2023) (Entered: 03/21/2023) |
| 03/21/2023 | 16 | MOTION to Dismiss filed by Catalina Snacks Inc.. Motion Hearing set for 6/15/2023 02:00 PM in Oakland, Courtroom 2, 4th Floor before Judge Haywood S Gilliam Jr.. Responses due by 4/4/2023. Replies due |

4/30/24, 11:39 AM

CAND-ECF

| | | by 4/11/2023. (Attachments: # 1 Affidavit of K. Kaliannan)(Cole, William) (Filed on 3/21/2023) (Entered: 03/21/2023) |
|---|---|---|
| 03/21/2023 | 17 | NOTICE of Appearance by Matthew Ryan Orr (Orr, Matthew) (Filed on 3/21/2023) (Entered: 03/21/2023) |
| 03/22/2023 | 18 | CLERK'S NOTICE RE DOCKET NO. 16 . Notice is hereby given that counsel must re-notice not re-file the 16 motion to dismiss. Hearing date of June 15, 2023, is vacated. The briefing schedule remains in effect. Counsel is directed to check the Court's scheduling notes before re-noticing the motion for a new hearing date. June 15th was not the Court's next available hearing date when this motion was e-filed. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ndr, COURT STAFF) (Filed on 3/22/2023) (Entered: 03/22/2023) |
| 03/22/2023 | 19 | Renotice motion hearing re 16 MOTION to Dismiss filed byCatalina Snacks Inc.. (Related document(s) 16 ) (Cole, William) (Filed on 3/22/2023) (Entered: 03/22/2023) |
| 03/22/2023 | | Reset Hearing as to 16 MOTION to Dismiss , See Docket No. 19 : Motion Hearing set for 6/29/2023 02:00 PM in Oakland, Courtroom 2, 4th Floor before Judge Haywood S. Gilliam Jr. (ndr, COURT STAFF) (Filed on 3/22/2023) (Entered: 03/22/2023) |
| 04/04/2023 | 20 | OPPOSITION/RESPONSE (re 16 MOTION to Dismiss ) filed byKaren Collyer. (Gubernick, Benjamin) (Filed on 4/4/2023) (Entered: 04/04/2023) |
| 04/05/2023 | 21 | ADR Clerks Notice re: Non-Compliance with Court Order. The parties have failed to file an ADR Certification as required by the Initial Case Management Scheduling Order. Counsel shall comply promptly with the requirements of ADR L.R. 3-5(b) and shall file the ADR Certification. *(This is a text-only entry generated by the court. There is no document associated with this entry.)*(cmf, COURT STAFF) (Filed on 4/5/2023) (Entered: 04/05/2023) |
| 04/05/2023 | 22 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Orr, Matthew) (Filed on 4/5/2023) (Entered: 04/05/2023) |
| 04/06/2023 | 23 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Gubernick, Benjamin) (Filed on 4/6/2023) (Entered: 04/06/2023) |
| 04/11/2023 | 24 | REPLY (re 16 MOTION to Dismiss ) filed byCatalina Snacks Inc.. (Cole, William) (Filed on 4/11/2023) (Entered: 04/11/2023) |

| 04/14/2023 | 25 | Certificate of Interested Entities by Karen Collyer (Gubernick, Benjamin) (Filed on 4/14/2023) (Entered: 04/14/2023) |
|---|---|---|
| 04/18/2023 | 26 | JOINT CASE MANAGEMENT STATEMENT filed by Karen Collyer. (Gubernick, Benjamin) (Filed on 4/18/2023) (Entered: 04/18/2023) |
| 04/18/2023 | 27 | CERTIFICATE OF SERVICE by Karen Collyer (Gubernick, Benjamin) (Filed on 4/18/2023) (Entered: 04/18/2023) |
| 04/20/2023 | 28 | CLERK'S NOTICE. Notice is hereby given that the case management conference previously set for April 25, 2023 is continued in-person to June 29, 2023 at 2:00 P.M. in Oakland, Courtroom 2, 4th Floor. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (eac, COURT STAFF) (Filed on 4/20/2023) (Entered: 04/20/2023) |
| 05/10/2023 | 29 | **REVISED ORDER REASSIGNING CASE.**<br><br>IT IS ORDERED that this case is reassigned to the Honorable Araceli Martinez-Olguin in the San Francisco division for all further proceedings.<br><br>1. All future filings shall bear the initials AMO immediately after the case number.<br><br>2. All case management conference dates are vacated and will be reset by the Court.<br><br>3. All hearing dates presently scheduled are VACATED. However, existing briefing schedules for motions remain unchanged. Motions must be RENOTICED for hearing before Judge Martinez-Olguin by the moving party for a date consistent with the Courts law and motion calendar, but the renoticing of the hearing does not affect the prior briefing schedule.<br><br>4. Deadlines for ADR compliance and discovery cutoff remain unchanged.<br><br>5. All pretrial conference and trial dates currently set after August 18, 2023, and all other deadlines associated with the case, will remain in place unless otherwise ordered.<br><br>6. All pretrial conference and trial dates scheduled on or before August 18, 2023, are vacated. Other pretrial deadlines (e.g., motions in limine, pretrial statements, proposed joint trial exhibits, etc.) will remain in |

4/30/24, 11:39 AM                                        CAND-ECF

place. The Court will notify the parties when a status conference will be held to schedule a new pretrial conference and trial dates for affected cases.

7. Matters currently referred to a Magistrate Judge will remain before that Magistrate Judge absent further notice.

8. On or before May 31, 2023, the parties shall file a Joint Case Management Statement (separate statements are appropriate if either party is proceeding without counsel). The statement should not exceed ten pages in length and should address all issues outlined in the Standing Order for All Judges of the Northern District. The approved form for such statements can be accessed here. A Joint Case Management Statement is not required in prisoner cases in which the prisoner plaintiff/petitioner is not represented by counsel.

IT IS SO ORDERED.

Dated: 5/10/2023
FOR THE EXECUTIVE COMMITTEE
Mark B. Busby, Clerk of Court

(ecg-adi, COURT STAFF) (Filed on 5/10/2023) Modified on 5/10/2023 (ecg, COURT STAFF). (Entered: 05/10/2023)

| | | |
|---|---|---|
| 05/11/2023 | 30 | Case Reassigned to District Judge Araceli Martinez-Olguin. Judge Haywood S Gilliam, Jr no longer assigned to the case. Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras. (cjl, COURT STAFF) (Filed on 5/11/2023) (Entered: 05/11/2023) |
| 05/12/2023 | 31 | NOTICE by Catalina Snacks Inc. re 16 MOTION to Dismiss (Cole, William) (Filed on 5/12/2023) (Entered: 05/12/2023) |
| 05/16/2023 | | Set/Reset Deadlines as to 16 MOTION to Dismiss. Motion Hearing set for 7/6/2023 02:00 PM in San Francisco, Courtroom 10, 19th Floor before Judge Araceli Martinez-Olguin. (tmi, COURT STAFF) (Filed on 5/16/2023) (Entered: 05/16/2023) |
| 05/31/2023 | 32 | JOINT CASE MANAGEMENT STATEMENT filed by Karen Collyer. (Gubernick, Benjamin) (Filed on 5/31/2023) (Entered: 05/31/2023) |
| 06/07/2023 | 33 | Clerk's Notice Continuing 16 Motion Hearing. Motion Hearing reset for **9/14/2023 at 02:00 PM** in San Francisco, |

ER_138 of 141

https://ecf.cand.uscourts.gov/cgi-bin/DktRpt.pl?173417826501842-L_1_0-1                                    7/10

| | | |
|---|---|---|
| | | Courtroom 10, 19th Floor before Judge Araceli Martinez-Olguin. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ads, COURT STAFF) (Filed on 6/7/2023) Modified on 6/7/2023 (ads, COURT STAFF). (Entered: 06/07/2023) |
| 06/14/2023 | 34 | STATEMENT OF RECENT DECISION pursuant to Civil Local Rule 7-3.d filed byCatalina Snacks Inc.. (Related document(s) 16 ) (Cole, William) (Filed on 6/14/2023) (Entered: 06/14/2023) |
| 08/11/2023 | 35 | Clerk's Notice Modifying Hearing Location. 16 Motion Hearing set for 9/14/2023 at 02:00 PM in San Francisco, **Courtroom 08, 19th Floor** before Judge Araceli Martinez-Olguin. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ads, COURT STAFF) (Filed on 8/11/2023) (Entered: 08/11/2023) |
| 09/14/2023 | 36 | **Minute Entry for proceedings held before Judge Araceli Martinez-Olguin:** 16 **Motion to Dismiss Hearing held on 9/14/2023. Motion to dismiss hearing held; argument heard. Motion taken under submission by the Court.** <br><br> **Total Time in Court: 41 minutes.** <br> **Court Reporter: Ana Dub.** <br> **Plaintiff Attorney: Benjamin Gubernick.** <br> **Defendant Attorney: Matthew Orr.** <br> ***(This is a text-only entry generated by the court. There is no document associated with this entry.)*** (ads, COURT STAFF) (Date Filed: 9/14/2023) (Entered: 09/14/2023) |
| 01/18/2024 | 37 | **Order GRANTING in part and DENYING in part** 16 **Motion to Dismiss. Signed by Judge Araceli Martinez-Olguin on January 18, 2024. (amolc3, COURT STAFF) (Filed on 1/18/2024) (Entered: 01/18/2024)** |
| 02/22/2024 | 38 | NOTICE by Karen Collyer re 37 Order on Motion to Dismiss (Gubernick, Benjamin) (Filed on 2/22/2024) (Entered: 02/22/2024) |
| 02/23/2024 | 39 | **ORDER OF DISMISSAL WITH PREJUDICE. Signed by Judge Araceli Martinez-Olguin on February 23, 2024. (amolc3, COURT STAFF) (Filed on 2/23/2024) (Entered: 02/23/2024)** |
| 02/23/2024 | 40 | **JUDGMENT. Signed by Judge Araceli Martinez-Olguin on February 23, 2024. (amolc3, COURT STAFF) (Filed on 2/23/2024) (Entered: 02/23/2024)** |

| 03/20/2024 | 41 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Karen Collyer. Appeal of Judgment 40 (Appeal fee of $605 receipt number ACANDC-19242493 paid.) (Gubernick, Benjamin) (Filed on 3/20/2024) (Entered: 03/20/2024) |
| --- | --- | --- |
| 03/21/2024 | 42 | DOCKETING NOTICE as to 41 Notice of Appeal to the Ninth Circuit filed by Karen Collyer (lsk, COURT STAFF) (Filed on 3/21/2024) (Entered: 03/21/2024) |
| 03/29/2024 | 43 | Transcript Designation Form for proceedings held on 9-14-2023 before Judge Araceli Martnez-Olgun, re 42 USCA Order, 41 Notice of Appeal to the Ninth Circuit Transcript due by 4/19/2024. (Gubernick, Benjamin) (Filed on 3/29/2024) (Entered: 03/29/2024) |
| 04/24/2024 | 44 | TRANSCRIPT ORDER for proceedings held on 9-14-2023 before Judge Araceli Martinez-Olguin by Karen Collyer, for Court Reporter Ana Dub. (Gubernick, Benjamin) (Filed on 4/24/2024) (Entered: 04/24/2024) |
| 04/26/2024 | 45 | Transcript of Proceedings held on September 14, 2023, before Judge Araceli Martinez-Olguin. Court Reporter Ana Dub, CSR 7445, RDR, RMR, CRR, CCRR, CRG, CCG, telephone number 415-290-1651; ana_dub@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date, it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 44 Transcript Order ) Release of Transcript Restriction set for 7/25/2024. (Related documents(s) 44 ) (amd, COURT STAFF) (Filed on 4/26/2024) (Entered: 04/26/2024) |

| **PACER Service Center** | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 04/30/2024 09:39:12 | | | |
| **PACER Login:** | bgubernick | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:23-cv-00296-AMO |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |